**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| VICKY RODRÍGUEZ TORRES, LUIS RAFAEL MALDONADO VAILLANT, AND THEIR CONYUGAL PARTNERSHIP | CIVIL No. 09-1151 (JP) |
| Plaintiffs | TITLE VII VIOLATIONS, AGE & SEX DISCRIMINATION, TORTS |
| v. | PLAINTIFF DEMANDS A TRIAL BY JURY |
| GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO, JAVIER RAMOS LUIÑA, ENID LÓPEZ LÓPEZ, ÁNGEL PÉREZ RIVERA, JORGE IRRIZARY HERRANS, LUIS I. ALFARO MARTÍNEZ, MARINE COMAS TORRES, NAPHIS TORRES PADRÓ, EDGARDO RODRÍGUEZ NIEVES, AND ABC INSURANCE | |
| Defendants | |

**DEFENDANTS INITIAL SCHEDULING CONFERENCE MEMORANDUM**

**TO THE HONORABLE COURT:**

**COME NOW** defendants Government Development Bank ("GDB" or "the Bank"), Marine Comas Torres ("Comas"), Edgardo Rodríguez Nieves ("Rodríguez"), Javier Ramos Luiña ("Ramos"), Enid López López ("López"), Luis I. Alfaro Martínez ("Alfaro"), and Ángel Pérez Rivera ("Pérez"), (collectively referred as to "defendants"), through the undersigned counsel and in compliance with this Courts's Initial Scheduling Conference, state as follows:

## I.  PROPOSED UNCONTESTED FACTS

1.     Vicky Rodríguez ("Rodríguez") was born on August 4, 1949.

2.     Rodríguez was hired by the GDB on September 3, 1996, when she was forty seven (47) years old, to work as a Corporate Credit Officer in the Treasury and Investment Department.

3.      On September 12, 2002, she was transferred to the Private Financing Department as an Account Executive.

4.      From April 3, 2008 to December 15, 2008, Rodríguez was temporarily transferred to the Municipal Financing Department under Enid López López' supervision.

5.      On May 23, 2008, GDB posted an opening for the position of Specials Programs Director.  The position required close work with "Special Communities Program".

6.      This "Special Communities Program" is a government initiative to develop Puerto Rico's poorest sectors by substituting the traditional paternalistic model for one which involves the very community, empowering it as a change-agent towards a better quality of life.  In order to achieve this goal, Puerto Rico's stated public policy requires that public corporations, agencies and municipalities work in an integrated manner, employing systemic and interdisciplinary approach.

7.      On June 5, 2008, Rodríguez requested to be considered for the career position of Special Programs Director.  Several other employees made bids for the position, among them, Mrs. Madelyne Cajigas ("Cajigas").

8.      Luis I. Alfaro Martínez ("Alfaro") was the hiring director who would be interviewing the candidates and deciding who would be hired.

9.      Rodríguez' application was accidentally misplaced by the Human Resources evaluation committee.  When it was recovered, the application was submitted for Alfaro's consideration but Cajigas had already been selected for the position of Specials Programs Director.

10.     Although Rodríguez' was not interviewed by Alfaro before he made his selection, Cajigas was and continues to be better qualified than Rodríguez for the position of Special Programs Director.

11.     Cajigas joined the GDB on March 3, 2003 as President's Assistant.

12.     From May, 2000 to June 2008, Cajigas worked directly with the Special Communities Program in several positions.

13.     On August 19, 2008, GDB posted an opening for the position of Specials Projects Executive.   The position required close work with municipalities and their financial and socioeconomic projects.

14.     On August 29, 2008, Rodríguez requested to be considered for the career position of Special Projects Executive.  Several other employees made bids for the position, among them, Mr. Miguel A. Deynes Vargas ("Deynes").

15.     Enid López López ("López") was the hiring director who would be interviewing the candidates and deciding who would be hired.

16.     Rodríguez' was interviewed for the position but Deynes was more qualified because of his experience with complex socioeconomic studies and municipal finance.

17.     Deynes joined the GDB on June 1985 as an Economic Studies' Analyst.

18.     On August 6, 2008, GDB posted an opening for the position of Inspection and Control Specialist ("Especialista de Fiscalización y Control").

19.     On August 13, 2008 the Inspection and Control Specialist posting was taken out of effect because of issues with the GDB union.

20.     On August 18, 2008, Rodríguez requested to be considered for the career position of Inspection and Control Specialist.  On this same date she was informed that the opening was out of effect.

21.     On November 18, 2008, Rodríguez filed a discrimination charge with the Equal Employment Opportunity ("EEOC").

22.     On December 15, 2008, Rodríguez returned to the role of Account Executive, in the Private Financing Department.

23.     Rodríguez filed the present complaint on February 13, 2009.

24.     GDB has strong policies prohibiting discrimination in the workplace on the basis of sex, age and all other legally protected criteria.

25.     GDB supervisors have received training in the application of these policies to assist them in identifying, preventing and addressing employment discrimination.

26.     At times relevant to the Complaint, co-defendant Javier Ramos Luiña was GDB's Principal Financing Officer.

27.     At times relevant to the Complaint, co-defendant Enid López López was the GDB's Municipal Financing Director.

28.     At times relevant to the Complaint, co-defendant Ángel Pérez Rivera was the GDB's Private Financing Director.

29.     During the period of August 29, 2007 through December 31, 2008, co-defendant Jorge Irrizary Herrans was the GDB's President.

30.     During the period of December 18, 2007 through December 31, 2008, co-defendant Luis I. Alfaro Martínez was GDB's Financing Director.

31.     During the period of December 17, 2007 through June 30, 2008, Comas worked as Human Resources Director for the GDB.  On July 1, 2008 she returned to her position as Recruiting and Nominations Director for the GDB.

32.     Co-defendant Naphis Torres Padró was GDB's Human Resources Director from July 1, 2008 to December 31, 2008.

33.     At times relevant to the Complaint, co-defendant Edgardo Rodríguez Nieves was GDB's Human Resources Subdirector.

## II.  FACTUAL AND LEGAL CONTENTIONS

Rodríguez began working for the GDB on September 3, 1996 as a Corporate Credit Officer in the Treasury and Investment Department.  Currently, Rodríguez holds a position as an Account Executive, in the Private Financing Department.  On November 18, 2008, she filed a discrimination charge with the Equal Employment Opportunity ("EEOC") against the GDB, Jorge Irrizary, Luis J. Alfaro, Enid López López, Ángel Pérez Rivera, Javier A. Ramos Luiña, Marine Comas, Naphis Torres and Edgardo Rodríguez.  In essence, Rodríguez argues that she was denied several positions on account of her age and gender, and was submitted to a hostile environment.  She was subsequently granted a right to sue.

On February 13, 2009, Rodríguez, Luis R. Maldonado, and their conyugal partnership filed the present complaint alleging that Rodríguez suffered age discrimination under the Age Discrimination Act, 29 U.S.C. §621 *et seq.* ("ADEA"), and Puerto Rico's Act. No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29,  §151, (Act 100); sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5, Act 100, and Puerto Rico's Act. No. 69 of July 6, 1985, P.R. Laws Ann. tit. 29, §1321 *et seq.*(Act 69); discrimination under the Lilly Ledbetter Fair Pay Act of January

29, 2009 ("Lilly Ledbetter"); and deprivation of Rights under section 1983, 42 U.S.C. §1983, for employment discrimination and violations to the Due Process of Law.  Plaintiffs also claimed compensation for damages suffered under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141 and violation of Rodríguez' rights to privacy and dignity under the provisions of the Article II, sections 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico.

As stated above, the Complaint avers various statutory and constitutional violations.  The Complaint's allegations, however, are extremely general making it difficult to determine the exact nature and scope of plaintiffs' claims under each of the averred statutes.  To this effect, it is well established that "plaintiff must allege claims in a way that gives the defendants fair notice of what the claims are and the grounds for those claims.  The Complaint must at least set forth minimal facts as to who did what to whom, when, where and why." Ruiz Rosa v. Rullán, 485 F. 3d 150, (1st Cir. 2007) (citing Calvi v. Knox County, 470 F.3d 422, 430 (1st Cir. 2006) *quoting* Educadores Puertorriqueños en Asociación v. Hernández, 367 F.3d 61, 66 (1st Cir. 2004)).  See also Bell Atlantic Coporation v. Twombly, 550 U.S. 544 (2007).

Thus, we respectfully submit to the Court that the present Complaint fails to give defendants adequate notice of plaintiffs' claims.  Therefore, at this stage, our legal discussion is necessarily limited to defendants' interpretation of the Complaint's allegations and our investigation regarding same.

### *Federal Claims*

#### A.    Discrimination Claims - Disparate Treatment

Title VII makes it an unlawful employment practice for an employer to discriminate against any individual because of such individual's sex. See 42 U.S.C. §2000e 2(a)(1).  The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise

discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  Under Title VII and the ADEA, an employer is liable if sex or age was respectively the motivating factor in the employer's decision.  This means that, in order to prevail, the plaintiff must show that her sex or age "must have actually played a role in [the employer's decision making] process and had a determinative influence on the outcome." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 141 (2000) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).

Absent the existence of direct evidence of intentional discrimination, a typical Title VII or ADEA plaintiff alleging disparate treatment must employ the familiar burden shifting framework enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Mulero Rodríguez v. Ponte, Inc., 98 F.3d 670 (1st Cir.1996).  Given the fact that in the instant case Rodríguez has not alleged the existence of direct evidence of discrimination on the part of any of the defendants we will discuss the McDonnell Douglas' burden shifting framework as it applies to failure to promote discrimination claims under Title VII and the ADEA.

Under McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case of Title VII or ADEA discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. at 802. The specifications of the prima facie proof vary depending on the nature of the discrimination claim. With respect to failure to promote claims, the prima facie model requires that the plaintiff show: (1) that she is a member of protected class; (2) that she was qualified and applied for the promotion; (3) that she was rejected; and (4) that other similarly or less qualified employees who were not members of the protected class were promoted. See Jackson v. City of Chicago, 552 F. 3d 619, 622 (7th Cir. 2009); Jordan v. City of Gary, Ind., 396 F.3d 825 (7th Cir. 2005); Ramsay v. Broward County Sheriff's

-7-

Office, 2008 WL 5237162, (11th Cir. 2008); Wu v. Thomas, 847 F. 2d 1480, 1483 (11th Cir. 1988), cert. denied, 490 U.S. 1006, (1989); Gairola v. Commowealth of Virginia Department of General Services, 753 F. 2d 1281 (4th Cir. 1985); Perryman v. Johnson Products Co., Inc., 698 F. 2d 1138, 1142 n.7 (11th Cir. 1983). Also, as applied to age discrimination allegations, plaintiff must also show that the defendant filled the position with a substantially younger person with qualifications similar to plaintiff's. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996); Bush v. Dictaphone Corp., 161 F. 3d 363, 368 (6th Cir. 1999).

Once the prima facie elements have been met, defendant bears only the burden of articulating the nondiscriminatory reasons for its actions. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 248 (1981). After this, the plaintiff must have an opportunity to prove, by preponderance of the evidence, that the legitimate reasons offered by the defendant were not its true reasons, but, rather, a pretext for the discrimination. See id.

When an employee, files a claim because of an employer's failure to promote her, the burden is on the plaintiff to establish that she was the better qualified candidate. See Gairola v. Commonwealth of Virginia Department of General Services, 753 F. 2d 1281 (4th Cir. 1985). Should the employer articulate a legitimate, nondiscriminatory reason, under both Title VII and ADEA, for its failure to promote decision, in order to prevail, the plaintiff must show the employer's stated reasons for not promoting her were pretext for discrimination and that the real reason was plaintiff's age or sex. See Johnson v. Runyon, 928 F.Supp. 575 (D.Md.,1996), aff''d, 151 F. 3d 1029 (4th Cir. 1998). If the person who received the promotion was better qualified, the plaintiff's case necessarily fails. See Jackson, 552 F. 3d at 622.

In the instant case, Rodríguez will not be able to establish the prima facie elements of a claim for failure to promote. First, Rodríguez applied for the position of Special Programs Director. Cajigas, however, was better qualified and was selected for the same. Second, Rodríguez applied for the position of Special Projects Executive. Deynes, however, was better qualified and was the candidate selected. Third, Rodríguez applied for the position of Inspection and Control, but she was informed that the posting was taken out of effect before she applied and before any candidates were even certified as qualified.

To this effect, the evidence that will be presented by defendants will demonstrate that the persons selected for the two positions at issue, Cajigas and Deynes, were better qualified than Rodríguez due to their previous experience with the "Special Communities" Programs and municipal economic projects, respectively. Also, as to the oversight regarding plaintiff's interview with respect to the Special Programs Director position, it is well established than an employers' errors during the evaluation process are not enough to establish discrimination in violation of Title VII or the ADEA. See Baron v. City of Highland Park, 195 F.3d 333, (7th Cir. 1999); Russel v. Acme Evans Co., 51 F3d 64, 68-69 (7th Cir. 1995).

### B.    Hostile Work Environment Claim

Liability based on a hostile work environment exists when "the [plaintiff's] workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'. . . . " Harris v. Forklift Sys., Inc., 510 U.S. 12, 21 (1993). A hostile environment claim falls under the general rubric of harassment at the workplace, which can amount to prohibited discrimination in the terms and conditions of employment. In order to demonstrate harassment that rises to the level of a statutory violation, the plaintiff must prove that "his or her work environment

was both subjectively and objectively offensive; 'one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'"   Gentry v. Exp. Packaging Co., 238 F.3d 842, 850 (7th Cir.2001) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998)). See Cerros v. Steel Technologies, Inc., 288 F.3d 1040, 1045 (7th Cir. 2002); Jacob Mua v. Veneman, 289 F.3d 517, 522  23 (8th Cir. 2002) (establishing elements of the prima facie case).  To this end, Rodríguez "must prove more than a few isolated incidents of [discriminatory] enmity. Casual comments, or accidental or sporadic conversation, will not trigger equitable relief pursuant to the statute." Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir.1986).  Furthermore, the plaintiff must also show that the harassment was based on her membership in a protected class, that the conduct was severe or pervasive, and that there is a basis for employer liability. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 754, (1998);  Mason v. Southern Illinois Univ. at Carbondale, 233 F.3d 1036, 1043 (7th Cir.2000).

Based on the allegations included in the Complaint, Rodríguez' hostile work environment claim, essentially rests on her allegations that she was subject to insults, disparaging remarks and derogatory comments on the basis of her sex and age.  See Complaint at Section IV,   45, 46, 53, 55 and 72.  Notwithstanding, she did not identify the specific instances where she was subject to said comments, nor the individuals who allegedly made them.  Thus, at this stage, Rodríguez' allegations fail to establish that her work environment was both subjectively and objectively offensive—that is, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.  Rodríguez' allegations also fail to establish that the alleged harassment was because of her sex, age or for any other reason protected by law, or that it was  sufficiently severe and pervasive so as to alter the terms and conditions of her employment.  Defendants will demonstrate that Rodríguez

was not subject to a work environment actionable under Title VII or the ADEA.  A reasonable employee in Rodríguez' shoes would not find the claimed conduct to be abusive or pervasive so as to alter the conditions of Rodríguez' employment or create an environment permeated with hostility. Under these circumstances, the Court, in due course, should refuse to entertain Rodríguez' hostile work environment claim.

### C.    Individual Liability under the ADEA and Title VII

Also, Under the ADEA, there is no individual liability. Individual executives and officers cannot be held liable for age discrimination or retaliation under federal law. Plaintiff asserts her claim of age discrimination under ADEA, which makes it unlawful for "an employer to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). ADEA similarly prohibits  "an employer" from discriminating against an employee who has opposed any practice made unlawful by ADEA or has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under ADEA. 29 U.S.C. § 623(d). Although the First Circuit has to date declined to rule on the question, every other circuit that has considered the issue has held that individuals are not "employers" under ADEA and thus ADEA does not create individual liability. See Martin v. Chemical Bank, 1997 U.S. App. LEXIS 32022, at * 8-9 (2d Cir. Nov. 10, 1997); Csoka v. United States Gov't, 1996 U.S. App. LEXIS 20583, at *21-22 (7th Cir. Aug. 12, 1996), cert. denied, 519 U.S. 1080 (1997); Stults v. Conoco, Inc., 76 F.3d 651, 655 (5th Cir. 1996); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511 (4th Cir. 1994), cert. denied, 513 U.S. 1058; Miller v. Maxwell's Int'l, 991 F.2d 583, 587-588 (9th Cir. 1993).

With respect to plaintiffs' Title VII claims against individual co-defendants, section 701 of Title VII, 42 U.S.C.A. § 2000e, defines the term employer as "a person engaged in an industry

affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person … ." 42 U.S.C.A. § 2000e. To this effect, courts has concluded that no individual liability can attach agents or supervisors under the Title VII.  Fatini v. Salem State College, 557 F. 3d 22, 28-31 (1st Cir. 2009); See also, Bales v. Wal Mart Stores, 143 F. 3d 1103, (8th Cir. 1998); Tomka v. Seiler Corp., 66 F. 3d 1295, 1313-17 (2nd Cir. 1995) (holding that "individual defendants with supervisory control over a plaintiff may no be held personally liable under Title VII"); Miller v. Maxwell's International, Inc., 991 F. 2d 583, 587-88 (9th Cir.1993), cert. denied, 510 U.S. 1109 (1994) (holding that Congress did not intend that employees be held individually liable under either Title VII or the ADEA).

Therefore,  individual co-defendants, therefore, submits that plaintiffs claims against him under Title VII and ADEA should be dismissed as the statutes do not allow a cause of action against them in their individual capacity.

> **D.**   **Individual Defendants' Qualified Immunity Defense**

In their Answer to the Complaint, the individual defendants, in their personal capacities, raised the affirmative defense of qualified immunity.  As has been previously noted, the factual allegations in the Complaint are so vague that it is difficult to determine the nature of plaintiff's allegations against each of the defendants.  To this end, a more specific statement or discovery regarding the factual basis of plaintiff's contentions will be needed to refine this defense.

> **E.**   **The Lilly Ledbetter Fair Pay Act Claim**

In order to make out a wage discrimination claim, Rodríguez must show (1) that she is female, and (2) that the job she occupies is similar to higher paid jobs occupied by males or younger employees.  See Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1529 (11th Cir. 1992);

Gearhart v. Sears Roebuck & Co., Inc., 27 F. Supp.2d 1263, 1271 (1998); Farrell v. Planters Life Savers Co., 22 F. Supp.2d 372 (D.N.J. 1998); White v. Midwest Office Tech. Inc., 5 F. Supp.2d 936, 952 (1998); EEOC v. Sears, Roebuck and Co., 628 F. Supp. 1264, 1334 44. In  wage discrimination claim under Title VII and/or the Equal Pay Act ("EPA") defendant may avoid liability by establishing one of the following defenses: that the unequal wage payment is made pursuant to (1) a seniority system, (2) a merit system, (3) a system which measures earnings by quantity or quality of production, or (4) the differential is based on a factor other than sex.  See 29 U.S.C. § 206(d)(1).  If that is the case, the plaintiff must then show that the non discriminatory reason stated by defendant is a pretext for discrimination in order to prevail. See also, County of Washington v. Gunther, 452 U.S. 161 (1981) (holding that wage discriminations claims under Title VII and the Equal Pay Act ("EPA") should be analyzed similarly).

Recently, Congress approved The Lilly Ledbetter Fair Pay Act of 2009 ("Lilly Ledbetter"). This Act amended section 706(e) of the Title VII by adding the following:

 (A) For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

(B)  In addition to any relief authorized by section 1977A if the Revised Statutes (42 U.S.C.1981a), liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing charge.

Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009).

Also, The Lilly Ledbetter amended section 7(d) of the ADEA by adding the following:

in the first sentence--

> For purposes of this section, an unlawful practice occurs, with respect to discrimination in compensation in violation of this Act, when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009).

In the case at hand, it is unclear whether Rodríguez is in fact complaining of wage discrimination insofar the Complaint fails to identify a male or younger employee with similar skills, qualifications and responsibilities that was paid higher wages. Notwithstanding, even assuming arguendo, that Rodríguez has met her burden at the prima facie level, wage differentials at the GDB are not based on sex neither age factors. Thus, Rodríguez claims regarding the Lilly Ledbetter Pay Act should be dismissed.

### F.    Section 1983

Rodríguez also complains that she was deprived of her rights under §1983, 42 U.S.C. § 1983. Said statute provides, in relevant part as follows:

> Every person, who under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or others proceedings for redress.

42 U.S.C. § 1983.

Importantly, §1983 institutes no substantive rights, but, rather, provides a procedural medium for vindicating constitutional or statutory rights. Congress enacted §1983 to create a remedy in favor

-14-

of those who are deprived of the rights, privileges, or immunities granted to them by the Constitution or laws of the United States. See  Blessing v. Freestone, 520 U.S. 329 (1997). Albright v. Oliver, 510 U.S. 266, (1994). See also Davis v. Reenie, 264 F.3d 86, 97 (1st Cir. 2001);  Rodríguez García v. Municipality of Caguas, 354 F. 3d 91, 99 (1st Cir. 2004), citing Baker v. McCollan, 443 U.S. 137, 144 (1979). Therefore, it is plaintiff's burden to identify the specific constitutional or statutory right sought to be enforced via judicial proceedings. See Davis 264 F.3d at 97.

In order for a claim to be cognizable under §1983 a plaintiff must first prove that some person (within the meaning of the statute) has deprived him of a federal right and that the person acted under color of state law. See Parratt v. Taylor, 451 U.S. 527, 535 (1981); Hoffman v. Mercado, 392 F.Supp. 2d 148, 155 56 (D.P.R. 2005). Cruz Erazo v. Rivera Montanez, 212 F.3d 617, 621 (1st Cir. 2000); Gutiérrez  Rodríguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989). Second, plaintiff must establish that a particular defendant's conduct deprived him of rights, privileges or immunities guaranteed by the Constitution or laws of the United States. See Parratt, 451 U.S. at 535; Gutiérrez Rodríguez, 882 F.2d at 559. This second prong of the inquiry is two- tiered. The first tier requires that, as a matter of fact, a deprivation of rights, privileges or immunities occurred. The second tier requires plaintiff to demonstrate that defendant's conduct produced this deprivation. See id.  Plaintiff must establish, for each defendant, that his/her own actions or omissions deprived that plaintiff of federally vested rights. See Monell v. Depart. of Social Services, 436 U.S. 658, 694 (1978); Gutiérrez Rodríguez, 882 F.2d at 562.  Moreover, plaintiff is compelled to attest any personal act or omission by each defendant, within the scope of their responsibility or authority, that would make each defendant personally answerable to that plaintiff in damages under §1983. See Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984).  Finally, for liability to be imposed, defendants' actions must have been

intentional, grossly negligent, or must have "amounted to a reckless or callous indifference to the constitutional rights of others." Gutiérrez Rodríguez, 882 F.2d at 562, citing Germany v. Vance, 868 F.2d 9, 17 18) (1st Cir. 1989). See Simmons v. Dickhaut, 804 F.2d 182, 185) (1st Cir. 1986).

Also, it is important to remember that §1983 does not impose purely supervisory liability; it aims at persons who have actually abused their positions of authority, "and hence 'only persons who were directly involved in the wrongdoing may be held liable.'" Martínez Vélez, 506 F.3d at 41 (citing Dunham v. Crosby, 435 F.2d 1177, 1180 (1st Cir.1970) and Kostka v. Hogg, 560 F.2d 37, 39 (1st Cir.1977)).

In the instant case, plaintiff makes several allegations of discrimination, yet altogether fails to identify what each of the individuals did or failed to do which constitutes discriminatory treatment. In this respect, the Complaint fails to state a claim upon which relief can be granted.

With respect to Rodríguez' due process allegations she must establish that she: (1) had a life, liberty or property interest protected by the Due Process Clause; (2) that she was deprived of her protected interest within the meaning of the Due Process Clause; and (3) that the state did not afford her adequate procedural rights prior to depriving her of her protected interest. Hahn v. Star Bank, 190 F. 3d 708, 716 (6th Cir. 1999). To this effect, the U.S. Supreme Court established that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it" and that the person "must have more than a unilateral expectation of it." Bd. of Regents v. Roth, 408 U.S. 564, 577, (1972). Also "if an official has unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a 'unilateral expectation' to it." Med. Corp., Inc. v. City of Lima, 296 F. 3d 404, 409-410 (6th Cir. 2002).

The allegations included in the Complaint, similarly fail to identify the life, liberty, or property interest at issue.  Rodríguez' desire or unilateral expectations for a promotion does not create a property interest sufficient to give rise to a due process violation  under §1983.

***State Claims***

G.    **Rodríguez' claim under Act. No. 100 and Act. No. 69**

Act 100 is Puerto Rico's general anti-discrimination statute. Like the ADEA, it protects against discrimination on the basis of age providing as follows:

> [a]ny employer who discharges, lays off or discriminates against an employee regarding his salary, wage, pay or remuneration, terms, rank, conditions, or privileges of his work, or who fails or refuses to hire or rehire a person, or who limits or classifies his employees in any manner which tends to deprive a person of employment opportunities, or to affect his status as employee, on the basis of age ... of the employee or applicant for employment: (a) shall incur civil liability (1) for a sum equal to twice the amount of damages sustained by the employee or applicant for employment on account of such action.

P.R. Laws Ann. tit. 29, § 146.

Act 100 establishes that a rebuttable presumption of illegality will arise whenever any of the acts prohibited by the statute are performed without just cause. Act 100 does not define the term "just cause", for which it relies on the interpretations given to Act 80. See P.R. Laws Ann. tit. 29, § 185a; Báez García v. Cooper Laboratories, 120 P.R. Dec. 145 (1987).

A plaintiff establishes a *prima facie* case of age or sex discrimination under Act 100 by demonstrating that she suffered an adverse employment action, and alleging that the decision was discriminatory.  See Cardona Jiménez Bancomerico de Puerto Rico, 174 F.3d 36, 42 (1st 1999); Alvarez Fonseca v. Pepsi Cola of Puerto Rico Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998). If this minimal showing is made, the burden shifts to the employer to prove by a preponderance of the

evidence that it had "just cause" for its actions.  See <u>Cardona Jiménez</u>, 174 F. 3d at 42-43;  <u>Alvarez</u> <u>Fonseca</u>, 152 F.3d at 28.

As is the care of Act 100, Act 69 declares an unfair employment practice when an employer discriminates against a person with respect to his wages, terms of employment or working conditions, on account of his or her sex, or limits, divides or classifies his employees or the persons who apply for a job in any way that could deprive or tend to deprive that person of a job opportunity, or that in any other way may adversely affect the person's status as an employee, on account of his or her sex.  Inasmuch as Act 69 is a special statute designed for identical purposes as those provided by Act 100 against discrimination on the basis of sex, any interpretation of regarding Act. 100 is by necessity applicable to any cause of action under Act 69.

In the instant case, Rodríguez cannot establish that defendants engaged in any behavior which violates Act 100 or 69. To this effect, defendants' evidence will show that at no time did defendants discriminate against Rodríguez and/or took an adverse employment action against her on account of her age or sex.  In addition, defendants will show that any action taken as to Rodríguez was justified and made on the basis of legitimate non-discriminatory business reasons.

**H.    Rodríguez' claim under the Constitution of the Commonwealth of Puerto Rico and Article 1802 of the Puerto Rico Civil Code**

Rodríguez further alleges that defendants' actions against her violate her right to dignity under the Constitution of the Commonwealth of Puerto Rico and request compensatory damages under Article 1802 of the Puerto Rico Civil Code. See Complaint Section VI, ¶ 70 and Section VII, ¶ 73.

In <u>Arroyo v. Rattan Specialties, Inc.</u>, 117 P.R. Dec. 35 (1986), the Puerto Rico Supreme Court explained that the constitutional right to privacy operates *ex proprio vigore* and can be enforced against private persons. In that case, the Court considered an individual's right to privacy in the context of an employment relationship and held that requiring an employee to submit to a polygraph test or lose his job, constitutes a violation of his right to privacy.

This matter was revisited in <u>Segarra v. Royal Bank de Puerto Rico</u>, where the Puerto Rico Supreme Court explained that in order to make out a claim for constitutional violation of the right to privacy within the employment context, the plaintiff must present evidence of the employer's concrete actions which infringe upon his private life.  <u>See</u> 145 P.R. Dec. 178, 203 (1998).   A violation of an individual's right to privacy may be actionable under Puerto Rico's general tort statute, Article 1802 of the Civil Code, P.R. Laws Ann. tit. 31, § 5141. However, "a mere feeling of discomfort in the place of employment for a work related reason does not amount to a violation of the right to privacy attributable to the employer". <u>See</u> <u>Segarra</u>, 145 P.R. Dec.at 207 (translation ours).  On the other hand, the Court in  <u>Segarra</u> enunciated the magnitude and extent to which an employer's actions must rise in order for them to be actionable under the Constitution. According to the Puerto Rico Supreme Court, it is necessary that the actions be "arbitrary, unreasonable and willful; that they result in a hostile atmosphere for the employee that hampers his healthy stay on the job; that they are originated for a reason other than the legitimate interest of safeguarding the effective work performance or that they contain clearly defamatory or harmful expressions". <u>Segarra</u>, 145 P.R. Dec. at 209.

Based on the foregoing, Rodríguez' constitutional rights violation claim fails to state a claim upon which relief can be granted. To this effect, neither the facts of this case, nor the allegations

included in the Complaint do not present any concrete action on the part of defendants that would constitute an infringement upon Rodríguez' private life or human dignity.

### I.  Maldonado's Contingent Claim

Rodríguez' spouse claims is contingent upon a showing that Rodríguez was discriminated by defendants.  In light of defendants' non-discriminatory reasons for every employment decision at issued, it is clear that defendant's never acted with negligence or fault so as to entitle Rodríguez to damages.  Since she was no discriminated against pursuant to the provisions of any applicable employment statute, Rodríguez' spouse claim should also be dismissed.

### III. WITNESSES AND SUMMARY OF THEIR TESTIMONY

Defendants have identified the following persons as possible fact witnesses in the case. Defendants reserve the right to supplement their witness list pursuant to various pending discovery matters and to call at trial as its witnesses, for any purpose provided by the Federal Rules of Civil Procedure or the Federal Rules of Evidence, any of plaintiffs' witnesses.

1.    **Javier Ramos Luiña** - Principal Financing Officer during the relevant period. Knowledge and/or information regarding several areas including, but not limited to, GDB's employment practices and policies, Rodríguez' job and performance of same, his knowledge regarding the allegations included in the Complaint, Rodríguez' work-environment and other related matters without limitation.

2.    **Enid López López** - Director of Financing Department during the relevant period. Knowledge and/or information regarding several areas including, but not limited to, GDB's employment practices and policies, Rodríguez' job and performance of same, her knowledge

regarding the allegations included in the Complaint regarding Rodríguez' work-environment, the position of Special Projects Executive and other related matters without limitation.

3.      **Ángel Pérez Rivera** - Director of Private Financing during the relevant period. Knowledge and/or information regarding the allegations included in the Complaint and other related matters without limitation.

4.      **Luis I. Alfaro Martínez -** Financing Director during the relevant period. Knowledge and/or information regarding the allegations included in the Complaint regarding the position of Special Program Director and other related matters without limitation.

5.      **Marine Comas Torres -** Human Resources Director from December 18, 2007 to June 30, 2008 and Recruiting and Nominations Director since July 1, 2008.  Knowledge and/or information regarding several areas, including, but not limited to, GDB's employment practices and policies, Rodríguez' job and performance of same, her knowledge regarding the allegations included in the Complaint including posting for the positions of Special Program Director, Special Program Executive and Inspection and Control Specialist and other related matters without limitation.

6.      **Naphis Torres Padró -** Human Resources Director from July 1, 2008 to December 31, 2008.  Knowledge and/or information regarding several areas including, but not limited to, GDB's employment practices and policies, Rodríguez' job and performance of same, his knowledge regarding the allegations included in the Complaint and other related matters without limitation.

7.      **Edgardo Rodríguez Nieves** - Human Resources Sub-Director during the relevant period.  Knowledge and/or information regarding several areas including, but not limited to, GDB's employment practices and policies, Rodríguez' job and performance of same, his knowledge regarding the allegations included in the Complaint and other related matters without limitation.

-21-

8.      **Julitza Arroyo** - Recruitment Analyst - Knowledge and/or information regarding several areas, including, but not limited to, GDB's employment practices and policies, her knowledge regarding the allegations included in the Complaint as related to the job posting of Special Program Director and other related matters without limitation.

9.      **Elsy Alvarado Cabrera** - Recruitment Analyst - Knowledge and/or information regarding several areas, including, but not limited to, GDB's employment practices and policies, her knowledge regarding the allegations included in the Complaint as related to the job posting of the Special Projects Executive and other related matters without limitation.

10.     **Madelyne Cajigas** - Special Programs Director - Knowledge and/or information regarding the allegations included in the Complaint regarding the position of the Special Programs Director and her own qualification for the same.

11.     **Miguel A. Deynes Vargas** - Inspection and Control Specialist - Knowledge and/or information regarding the allegations included in the Complaint in connection to the position of Special Projects Executive and his own qualifications for the same.

## IV. DOCUMENTARY EVIDENCE

At this stage of the proceedings, GDB have identified the following documentary evidence.

1.      Rodríguez' personnel file.

2.      GDB's anti discrimination policies.

3.      Specials Programs Director Position's file.

4.      Specials Projects Executive Position's file.

4.      Inspection and Control Specialist Position's file.

     5.      GDB's recruitment process policies.

Defendants, however, reserve the right to announce further documentary evidence and/or amend its documentary evidence as it may become available through the discovery process. Furthermore, defendants reserve the right to utilize any documents announced by plaintiffs.

## V. DISCOVERY

1.      Rodríguez' deposition is scheduled for August 12, 2009

2.      Maldonado's deposition is scheduled for August 19, 2009

3.      Enid López López' deposition is schedule for August 20, 2009

4.      Ángel Pérez' deposition is schedule for August 26, 2009

5.      Defendants intend to depose all plaintiffs' announced witnesses. Thus, the parties have agreed to set aside the following dates for additional depositions.

        - August 27, 2009

        - September 4, 9, 11, 16, 17, 23 and 24, 2009

        - October 7 and 8, 2009

Once plaintiffs specify the knowledge and purpose of the individuals listed in their initial disclosures, defendants will be in a position to announce additional depositions which shall be taken during the aforementioned dates which have already been set-aside.

6.      Defendants intend to depose all of plaintiffs' expert witnesses and reserve the right to announce an expert of its own.

7.      On June 23, 2009, defendants will notify plaintiffs' written discovery, including interrogatories, requests for document production and requests for admissions.

## VI. INITIAL DISCLOSURES

Defendants will serve their initial disclosures, under Rule 26 (1) (1) of the Federal Rules of Civil Procedure, on June 23, 2009.

## VI. OTHER MATTERS

As previously noted, because of the vagueness of the factual allegations included in the Complaint, it is important that plaintiffs specify the capacity in which the individual defendants are being sued and, furthermore, that she set forth the minimal facts regarding who did what to whom, when, where and why, as required by the Supreme Court's holding in Bell Atlantic v. Trombly, 550 U.S. 544 (2007). Defendants, respectfully request that the Court grant plaintiff a specific term to so do in order to avoid the filing of a 12 (b)(6) motion to dismiss.

**Respectfully submitted.**

In San Juan, Puerto Rico, this 22nd day of June 2009.

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: **Miguel A. Cuadros Pesquera** and **Olga M. Benítez Quiñones**, Centro de Seguros Bldg., Suite 215, 701 Ponce de León Avenue, San Juan Puerto Rico 00907.

**SCHUSTER & AGUILÓ LLP**
Attorneys for Defendant
PO Box 363128
San Juan, Puerto Rico 00936-3128
Tel: (787) 765-4646; Fax: (787) 765-4611

**s/Mariela Rexach-Rexach**
**Mariela Rexach-Rexach**
USDC PR No. 214110
mrexach@salawpr.com