**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| VICKY RODRÍGUEZ TORRES, et al. | |
| Plaintiffs | CIVIL No. 09-1151 (JP) |
| v. | TITLE VII VIOLATIONS, AGE & SEX DISCRIMINATION, TORTS |
| GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO, et al. | PLAINTIFF DEMANDS A TRIAL BY JURY |
| Defendants | |

**OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER OF PRESERVATION
AND
REQUEST FOR SECOND PROTECTIVE ORDER**

TO THE HONORABLE COURT:

**COME NOW** defendant Government Development Bank ("GDB" or "the Bank"), through its

undersigned counsel and, pursuant to Rule 26(b)(2)(C), states, alleges and prays as follows:

**I.  Introduction**

1.      On August 18, 2009, Plaintiffs filed a motion requesting leave to notify electronic

discovery to Defendants, along with their "Supplemented Discovery Requests", for this Honorable

Court's consideration.  See Dkt. No. 114.   The Court granted this motion before Defendants had an

opportunity to respond.  See Dkt. No. 123.   On September 3, 2009, Plaintiffs filed a Motion in

Request for Order of Preservation and Litigation Hold also regarding electronic discovery and

suggesting, without foundation, that Defendants have been engaging in spoliation of evidence. See

Dkt. No. 135.

2.      At the outset, it should be noted that the electronic discovery sought is, in fact,

untimely.  Plaintiffs' feigned indignation in their first motion regarding electronic discovery was not

only misplaced, but intended to lead this Honorable Court astray.  This case does not involve a low-

level ex-employee, with no knowledge of the types of documents generated by the GDB.  Quite to the contrary, this case involves an executive of the GDB who not only has knowledge that documents are prepared through electronic means, such as word processing programs and electronic mail, but also has access to the Bank's electronic systems and uses them continuously in her work.[1]  Thus, for Plaintiffs to come now and allege, in an indignant tone, no less, that their "discovery efforts were hampered from the beginning of this litigation" is, quite simply, ludicrous.

3.    In light of this, Plaintiffs had full knowledge of the nature of the documentary evidence produced to them prior to issuing their first set of interrogatories and request for production of documents, and could have very well requested electronic discovery at that time.  They did not. Furthermore, Plaintiffs never mentioned any type of electronic discovery in the Rule 26(f) discovery conference, in their multiple versions of the ISC Memorandum nor in the ISC Conference. Moreover, they did not request any such discovery in their First Set of Interrogatories and Request for Production of Documents, even after receiving Defendants' initial disclosures, which consisted of hard copies of multiple electronically created documents.[2]  As a matter of fact, Plaintiffs' First Set of Interrogatories and Requests for Production of Documents does not include *a single solitary* reference to electronically stored information or meta data.  See Exhibit 1.  Rather, Plaintiffs waited until Defendants had completed their document search efforts and fully responded to Plaintiffs' written discovery requests, to conduct electronic discovery.

4.    It should also be noted that Plaintiffs' Motion for Leave to Serve Additional Discovery conveniently failed to inform this Honorable Court that, in addition to the Supplemented

---

[1]  In fact, one of the controversies in the case at bar stems, from Plaintiff's appropriation of GDB documents, without authorization, by extracting them from, among others, precisely, the electronic files in the Bank's computer system.

[2] Defendants' initial disclosures were served on Plaintiffs on June 23, 2009.  Plaintiffs served interrogatories and requests for production of documents on Defendants on  June 29, 2009.

Discovery Requests they attached to said August 18 motion Plaintiffs notified additional, and different, electronic discovery requests, which were not previously authorized by this Honorable Court, through informal means (i.e. a letter) to Defendants. <u>See</u> Exhibit 2. These informal requests are not limited to lists of programs and operating systems used at the GDB, as in the requests for which the Court granted leave, but also requests, for **all** the documents previously produced in paper form, that Defendants re-produce them in their "native" electronic format, "with all their original metadata." <u>See</u> Exhibit 2. As advanced to the Court yesterday, the Local Rule 26 conference with Plaintiffs' counsel regarding Defendants' objections was altogether unproductive insofar as Plaintiffs refused to articulate the relevance of their requests or even acknowledge any obligation to do so. <u>See</u> Dkt. No. 144.

5.    Which brings us to Plaintiffs' latest filing, which is but another example of their vexatiousness and unnecessary multiplication of proceedings in the instant case. At the outset, we take strong objection to Plaintiffs' suggestion that Defendants have incurred in spoliation of evidence in the instant case. We submit to the Court such statements are completely unfounded and in violation of Rule 11.

6.    Finally, the present motion details the numerous instances of non-compliance with discovery obligations and abuses of the discovery process in which Plaintiffs' engaged. As the saying goes, "people in glass houses should not throw stones." It is nothing short of outrageous that Plaintiffs presume to suggest to this Court, without any basis in fact, that Defendants and the undersigned have failed in their duty to disclose evidence when it is Plaintiff who has repeatedly lied under oath, failed to comply with this Court's August  7, 2009, Order Compelling Production,  <u>see</u>

Dkt. No. 102, and employed litigation tactics designed to evade, confuse and unnecessarily increase the cost of litigation.

## II. Discussion

**A.    Plaintiffs' Allegations of Spoliation of Evidence and Request for Preservation Order**

Spoliation is the failure to preserve evidence that is relevant to pending or potential litigation. See Jimenez-Sánchez v. Caribbean Rest., LLC, 483 F.Supp.2d 140, 143 (D.P.R. 2007); Mosaid Techs,. Inc. v. Samsung Electronics Co. Ltd., 348 F.Supp. 2d 332, 335 (D.N.J. 2004). Imputations of spoliation of evidence generally arise in the context of requests for instructions regarding negative inferences against the "spoiling" party.

> This permissive negative inference springs from the commonsense notion that a party who destroys a document (or permits it to be destroyed) when facing litigation, *knowing* the document's relevancy to issues in the case, may well do so out of a sense that the document's contents hurt his position. Consistent with this rationale, a suitable foundation must exist before such an inference can materialize. Thus, the sponsor of the inference must proffer evidence sufficient to permit the trier to find that the target *knew* of (a) the claim (that is, the litigation or the potential for litigation), and (b) the document's potential relevance to that claim.

Testa v. Wal-Mart Stores, Inc.,144 F.3d 173, 177 (1st Cir. 1998) (emphasis added) (citing Beil v. Lakewood Eng'g & Mfg. Co., 15 F.3d 546, 552 (6th Cir.1994)) and Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1159 (1st Cir.1996)).

While not  actually requesting sanctions for spoliation of evidence, in their Motion for Preservation of Evidence Plaintiffs directly accuse Defendants of destroying electronic evidence, request a preservation order and, furthermore, reserve their right to move for sanctions, default judgment and adverse inference instructions. Notable is the fact that Plaintiffs' motion nowhere identifies what was destroyed, its relevance to the case, or Defendants' knowledge regarding the relevance of this so-called evidence. Similarly, they fail to articulate any particular intent or bad faith

on the part of Defendants or prejudice to Plaintiffs. See Chapman v. Bernard's, Inc., 167 F.Supp.2d 406, 413 (D. Mass. 2001). This failure is terminal to Plaintiffs' contentions: spoliation of evidence cannot occur unless there is *relevant* evidence in the first place; unless it was actually destroyed or suppressed; and unless it was reasonably foreseeable that the evidence would later be discoverable. See Wong v. Thomas, Civil No. 05-26588, 2008 WL 4224923 at * 2 (D.N.J. Sept. 10, 2008) (unpublished); Jimenez-Sánchez v. Caribbean Rest., LLC, 483 F.Supp.2d 140, 143 (D.P.R 2007).

Rule 11(b) provides that

[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney on unrepresented party certifies that the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances:

(1)    is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2)    the claims defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law;

(3)    the factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

. . . .

Fed. R. Civ. P. 11(b).

Plaintiffs' representations to this Court regarding spoliation on the part of Defendants are unwarranted by the facts. Plaintiff altogether failed to conduct any kind of reasonable inquiry into the matter before presenting the Court with such serious accusations. To this effect, it is extremely telling that, as detailed in Defendants' Motion in Connection to Plaintiffs' Motion for Preservation Order, see Dkt. No. 136, opposing counsel's empty efforts at "attempting to confer" with the undersigned regarding the foregoing were not in good faith. Also telling is their lack of candor towards the Court in their certification regarding compliance with Local Rule 26(b).

As advanced by Defendants in their Motion in Connection to Plaintiffs' Motion for Preservation Order, also telling is the fact that the document upon which Plaintiffs' ground their accusation of spoliation is a document which Plaintiffs' themselves used in this case and hence is readily available in hard copy format, *was generated more than 6 months before Plaintiff filed her EEOC charge*, and that, even to this date, we fail to see the relevance to Rodriguez' allegations of discrimination, much less why a failure to obtain the e-mail in native format would be so prejudicial to Plaintiffs' case.  See Def's Motion in Connection to Request for Preservation Order, Exhibit C, Dkt. No. 136.   Enid López' testimony that in the normal course of business she must delete e-mails to ensure her in-box does not become full, does not *ipso facto* establish she has incurred in spoliation.  As noted above, nothing suggests that, *upon receiving knowledge of Plaintiffs' claim*, she, or anyone else, has destroyed or deleted *relevant* evidence.

Defendants have not spoiled or destroyed any relevant evidence in the instant case.  We submit to the Court, however, that Plaintiffs' broad notion of "relevance," is utterly foreign to that which is contained in Rule 26(b).[3]  This is evidenced by Plaintiff's own conduct and deposition testimony, as well as her counsels' resistance to responding to inquiries regarding the same in the context of a Rule 26(b).  This, coupled with the Amended Complaint's stereotyped and conclusory allegations of discrimination and formulaic recitations devoid of factual enhancement, makes it extremely difficult to put Defendants' on notice of  the scope of plaintiffs' allegations of discrimination in order to ensure relevant documents, electronic or otherwise, are adequately preserved (at least from plaintiffs' broad perspective).

---

[3]In the context of discovery, to be "relevant," information need not be admissible at trial, so long as it appears reasonably calculated to lead to the discovery of admissible evidence.  See Fed. R. Civ. P. 26(b)(1).  While the scope is broad, it is far from unlimited. See White v. Honda of America Mfg., Inc.,  No. 2:07-CV-216, 2008 WL 5431160, at *5 (S.D.Ohio,2008); Meléndez v. Greiner, No. 01 Civ.07888 SAS DF, 2003 WL 22434101 * 1 (S.D.N.Y.2003).

As way of example, we submit to the Court that in light of the allegations contained in the Complaint, it is virtually impossible for Defendants to know of the relevance placed by plaintiffs on the document upon which they base their allegations of spoliation. <u>See</u> Motion in Connection to Request for Preservation Order, Exhibit C, Dkt. No. 136. Unfortunately, this kind of unnecessary and costly disjunction is what comes of poorly plead complaints. <u>Cf.</u> <u>Ashcroft v. Iqbal</u>, -- U.S. --, 129 S.Ct. 1937, 1949 (2009). Plaintiffs' accusations are nothing but a distraction tactic, meant to divert the parties' and the Court's attention away from issues of relevance, a concept plaintiffs appear to be unable, or unwilling, to grasp.

Defendants and the undersigned are prepared to present and discuss with this Court the efforts expended in connection to their obligations to preserve relevant evidence. Insofar as these communications are attorney-client privileged, any disclosure regarding the same should be made to the Court alone. We submit to the Court, however, that the issue is not whether the information is available, but rather, whether Plaintiffs, in the balance of things are entitled to this discovery. As is further discussed below, the GDB submits to the Court that Plaintiffs' utter failure to articulate the relevance of the electronic discovery sought, particularly when Defendants have already complied with their duty to respond by producing documents in hard-copy format, weighs in favor of Defendants.

**B.      Plaintiffs' "Electronic Discovery" and Defendants' Request for Second Protective Order**

Rule 26 (a) of the Federal Rules of Civil Procedures generally regulates initial disclosures. As is relevant herein, the Rule provides that parties must provide, "without awaiting a discovery request, . . . (ii) a copy - or a description by category or location - of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or

control and may use to support its claims or defenses. . . ." Fed. R. Civ. P. 26(a)(1)(A)(ii).  Once

discovery has commenced, electronic discovery of documents is regulated by Rule 34 of the Federal

Rules of Civil Procedure which, in its relevant part, provides

> (E)    Producing the Documents or Electronically Stored Information.  Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> > (i)    A party must produce documents *as they are kept in the usual course of business* or must organize and label them to correspond to the categories in the request;
> > (ii)   If a request *does not specify a form* for producing electronically stored information, a party must produce it in a form in which it is ordinarily maintained or in a reasonably usable form or forms;
> > (iii)  A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E) (emphasis ours).

In this case, Plaintiffs have made a generalized request for documents in "native format", with

"all of its original metadata," however, they did so *after* having received Defendants' responses to

their written discovery.  It should be noted that "Metadata is not addressed directly in the Federal

Rules of Civil Procedure but is subject to the general rules of discovery."  Aguilar v. Immigration

& Customs Enforcement Div. of U.S. Dep't of Homeland Sec., 255 F.R.D. 350, 355, 2008 WL

5062700 (S.D.N.Y Nov. 21, 2008).  Therefore, the production of this type of information is

discoverable if it is relevant to the claim or defense of any party and is not privileged.  See

Fed.R.Civ.P. 26(b)(1).  Because this type of discovery is subject to general rules of discovery,

discovery requests are also subject to the classic objections related to relevance, burden, vagueness,

and overbreadth.  Thus, upon a party's objection to such discovery requests, a court must, as it would

for any other objected discovery, engage in the balancing test provided by the Federal Rules of Civil

Procedure, and weigh the probative value of the proposed discovery against its potential burden.  See

Fed. R. Civ. P. 26(b)(2)(C).

Several courts have had the opportunity to examine electronic discovery requests, and

specifically requests for metadata.  In Aguilar, the Southern District Court of New York engaged in

a detailed analysis, not only of the application of the Rules of Civil Procedure on the production of

metadata and native format documents, but also thoroughly discussed the *different types* of metadata

and its relative probative value, depending on the type of document for which the electronic

discovery is sought.  After providing the general definitions of the terms "native format"[4] and

"metadata"[5], the court differentiated between "substantive" or "application" metadata[6], "system"

metadata[7], and "embedded" metadata[8].  Also, the court indicated that, depending on whether the

document for which electronic discovery was sought (i.e., whether it is email, spreadsheets, tables

---

[4] "Native format is the 'default format of a file,' access to which is 'typically provided through the software program on which it was created.'"  Aguilar, 255 F.R.D. at 353, quoting In re Priceline.com Inc. Sec. Litig., 233 F.R.D. 88, 89 (D.Conn.2005).

[5] "Metadata, frequently referred to as 'data about data,' is electronically-stored evidence that describes the 'history, tracking, or management of an electronic document.'"  Aguilar, 255 F.R.D. at 354, quoting Williams v. Sprint/United Mgmt. Co., 230 F.R.D. 640, 646 (D.Kan.2005).

[6] This type of metadata is "'created as a function of the application software used to create the document or file'" and reflects substantive changes made by the user. . .  This category of metadata reflects modifications to a document, such as prior edits or editorial comments, and includes data that instructs the computer how to display the fonts and spacing in a document. . . . Substantive metadata is embedded in the document it describes and remains with the document when it is moved or copied."  Aguilar, 255 F.R.D. at 354,  quoting Sedona Principles 2d Cmt. 12a; Md. Protocol 26 (internal citations omitted).

[7] " System metadata ' reflects information created by the user or by the organization's information management system.' . . . This data may not be embedded within the file it describes, but can usually be easily retrieved from whatever operating system is in use. . . . Examples of system metadata include data concerning ' the author, date and time of creation, and the date a document was modified.'"  Aguilar, 255 F.R.D. at 354,  quoting Sedona Principles 2d Cmt. 12a; Md. Protocol 26 (internal citations omitted).

[8] "Embedded metadata consists of 'text, numbers, content, data, or other information that is directly or indirectly inputted into a [n]ative [f]ile by a user and which is not typically visible to the user viewing the output display' of the native file. Examples include spreadsheet formulas, hidden columns, externally or internally linked files (such as sound files), hyperlinks, references and fields, and database information."  Aguilar, 255 F.R.D. at 354-55,  quoting Md. Protocol 27

or word processing documents), the discovery of different types of metadata may be more or less relevant.  For example, the court indicated that "most system (and substantive) metadata lacks evidentiary value because it is not relevant. . . . System metadata is relevant, however, *if the authenticity of a document is questioned* or if establishing 'who received what information and when' is important to the claims or defenses of a party."  Aguilar 255 F.R.D. at 534, quoting Mich. First Credit Union v. Cumis Ins. Soc'y, Inc., No. Civ. 05-74423, 2007 WL 4098213, at *2 (E.D.Mich. Nov.16, 2007); Ky. Speedway, LLC v. Nat'l Assoc. of Stock Car Auto Racing, No. Civ. 05-138, 2006 WL 5097354, at *8 (E.D.Ky. Dec.18, 2006); Wyeth v. Impax Labs., Inc., 248 F.R.D. 169, 170 (D.Del.2006); Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L., No. 04 Civ. 3109, 2006 WL 665005, at *3 (N.D.Ill. Mar.8, 2006) (internal citations omitted).

Aguilar also addressed electronic discovery objections from the perspective of the timeliness of the request.  As a result, the Court did not allow most of the electronic discovery sought by Plaintiffs as to documents previously produced, inasmuch as the production of metadata had not been discussed in the Rule 26(f) conference between the parties and only mentioned it "in passing" before the defendant had completed its document collection.  Subsequently, the Plaintiffs requested  that defendants produce metadata from emails and electronic documents, and production of spreadsheets and databases in native format.  The defendants objected on relevance and burden grounds.  The court concluded that, although timely requests for *relevant* and accessible metadata are routinely granted, courts are reluctant to order a *second* production if metadata was not originally requested, not will courts order the production of metadata or production in native format unless the metadata or format are relevant or will aide in search for relevant information. See Aguilar, 255 F.R.D. 350. See also Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc., 288 F.R.D. 556 (N.D. Ill. 2008) (unpublished) (declining to allow discovery because defendant had failed to request the document

in native format in its original document request, and it had failed to demonstrate that the paper and

.pdf forms of production were not "reasonably usable" within the meaning of Rule 34(b)).

Moreover, several courts have upheld objections on the grounds that requests for metadata

are overbroad and/or imposed an undue burden, and some courts have narrowed the scope of the

overbroad discovery.  See, e.g., In re Subpoena Duces Tecum to AOL, LLC, No. 1:07mc34 (GBL),

2008 WL 1956266 (E.D. Va. April 18, 2008) (request was overbroad and imposed a due burden

inasmuch as it called for electronic production of all e-mails of the witnesses for a six week period);

DaimlerTruck North America LLC v. Younessi, No. 08-MC-5011RBL, 2008 WL 2519845 at *5

(W.D. Wash. June 20, 2008) (unpublished) (narrowing scope of overbroad electronic discovery to

particular emails from a particular person regarding a specific topic for a limited period of time);

Flying J Inc. v. TA Operating Corp., No. 1:06cv00030 TC, 2008 WL 2003764 (D. Utah May 7, 2008)

(unpublished) (narrowing scope of electronic discovery).

In light of the above discussion, it is respectfully asserted that Defendants have valid grounds

to object the electronic discovery sought by Plaintiffs in the case at bar, as it relates to the request

for re-production of **all** the electronically generated documents previously produced in their "native

format", as well as **all** of its metadata.  First, as established above, Plaintiffs had full knowledge that

most of the documents prepared at the GDB are generated with electronic programs and systems, yet

made no mention of discovering metadata or "native format" documents at the Rule 26(f) discovery

conference.  Moreover, even after receiving copies of such documents as part of Defendants' initial

disclosures, Plaintiffs did not request any metadata or native format documents as part of their First

Set of Interrogatories and Request for Production of Documents.  It was not until Defendants had

searched for, and produced, the documents requested by Plaintiffs, as well as the documents

necessary for their initial disclosures, that Plaintiffs came forward and requested metadata and native format documents.  Worse yet, they did not even do so as part of the Supplementary Request for Production of Documents they presented to this Honorable Court when they requested leave to serve electronic discovery, but informally, through a letter not disclosed to this Honorable Court.

Second, and in the face of valid and timely objections, Plaintiffs have not established how it is that the reproduction, in native format with all of its metadata, of **all** of the documents already produced on paper by Defendants, will aid their claims.  Plaintiffs have not narrowly tailored their request to those documents for which native format and metadata is actually useful to discover evidence relevant to the claims.  Instead, they expect Defendants to go back and once again search for all the documents previously produced, and do the production once again electronically, without any justification whatsoever, and with the concomitant costs and fees associated with said exercise. It is respectfully asserted, therefore, that until such time as Plaintiffs justify the need for such discovery from an evidentiary perspective and properly narrow its scope, the fact that their request is exceedingly broad and, on top of that, untimely, should tilt the balance in favor of this Honorable Court's upholding Defendants' objections.

At any rate, at this juncture, and after a futile attempt at resolving the controversy on a Local Rule 26(b) conference, Plaintiffs' request is unwarranted, unreasonably cumulative, and pertains to information already in their possession.  Moreover, in light of the fact that the Bank has already produced this evidence in hard format, the burden and expense of this additional discovery outweighs its likely benefit after considering the needs of the case, the amounts in controversy and the minimal importance of the discovery sought to resolving the issues at stake.  Accordingly the GDB

respectfully requests a Protective order under Rule 26(b)(2)(C) against Plaintiffs' discovery regarding

this matter.

**C.    Plaintiff's Mendacity, Failure to Comply with the Court's Order to Compel and other Discovery Abuses and further Request for Protective Order and/or Imposition of Sanctions against Plaintiffs**

**1.    Evasive, Unresponsive and Incomplete Answers to Interrogatories**

On August 7, 2009 Defendants filed an Urgent Motion to Compel in connection to Plaintiffs'

evasive and incomplete answers to written discovery. See Dkt. No. 101. The Motion was granted

by the Court that same date. See Dkt. No. 102. Presumably pursuant to this order, on August 10,

2009, Plaintiffs provided further supplementation to their initial responses. We note to the Court,

however, that as of today, Defendants have four separate responses to its interrogatories: the initial

response and first, second and third supplements to the same, see Exhibits 4-7, yet during the course

of Plaintiff's deposition and through Defendants' subsequent discovery efforts, it has become clear

that Plaintiff has repeatedly lied under oath.

Defendants' interrogatory number 12 required Plaintiff to state if she had ever undergone or

received any treatment for any mental or emotional condition and, if so, to state, among other things,

the names and addresses of each doctor, psychiatrist, psychologist, practitioner, hospital, clinic or

institution that treated. Defendants further requested that Plaintiff execute medical releases in order

to obtain the pertinent records. See Exhibit 3. In response to this interrogatory Rodríguez initially

limited herself to referring Defendants to her ISC Memorandum and provided to specific responses.

Thereafter, on June 29, 2009 Plaintiff provided medical authorizations for Defendants' to obtain

copies of her medical records with the following providers: Dr. Nelsón Colón - Physiatrist, Dr.

Suzette Rivera McMurray - Gastroenterologist, Dr. Ivonne Fraga - Neurologist and *Dr. Jorge A.*

*Sánchez- Psychiatrist.*

-13-

After an attempt to resolve the matter pursuant to Local Rule 26(b) and the Court's subsequent Motion to Compel, Plaintiff's disclosure regarding psychiatric and/or psychological treatment was limited to Dr. Jorge Sánchez. No additional names were provided. See Exhibits 5-6.

In preparation for Plaintiff's deposition, however, Defendants came across information contained in the medical records Plaintiff herself had produced which suggested she had received psychiatric and/or psychological treatment from two additional providers not previously disclosed: Dr. Lucy López Roig, psychiatrist and Dr. Ruth Prevor psychologist. Defendants confronted Rodríguez during her deposition with this fact and she admitted to having received treatment from them. Defendants once again inquired of Plaintiff whether she had received treatment from *any other psychiatrists or psychologists*, to which she answered in the negative.

Nevertheless, and subsequent to Plaintiff's deposition, upon review of her medical insurance records, Defendants have discovered that during 2003 and 2004 Plaintiff also received psychiatric and/or psychological treatment from Dr. Dayra Fernández Demorizi, Dr. María Sánchez Bonilla and Dr. Carmen Alvarez, physicians not previously disclosed to Defendants notwithstanding repeated requests for this information and multiple answers under oath.

Another example of Plaintiff's mendacity relates to Defendants' Interrogatory No. 11 which required Plaintiff to state if prior or subsequent to the present Complaint she had filed any other complaint claiming damages for employment related conduct *or any other type of claim*. See Exhibit 3. Rodríguez' answer to this interrogatory was only that she had filed an action identical to the present one in the state court.[9] Through diligent discovery Defendants discovered Plaintiff had also filed extrajudicial claims against Walgreens and her former employer Banco de Comercio and that

---

[9]No service of process was ever effectuated against Defendants in that action.

-14-

she was also a co-plaintiff in her husband's lawsuit against *his* former employer, Eurobank currently pending before the Puerto Rico Court of First Instance. Plaintiff was asked during deposition about the two extrajudicial claims, and she refused to provide answers on the basis of the existence of confidential settlement agreement. The undersigned, gave Plaintiff one last opportunity for candor in connection to other claims and asked Rodríguez whether there she had filed *any other claims*. Plaintiff answered with a blatant "no." When confronted with her participation as co-plaintiff in her husband's lawsuit and the fact that she was lying under oath, Plaintiff answered that she understood that fact was "confidential."

### 2.    Failure to Respond to Requests for Production of Documents

In its Order granting Defendants' Motion to Compel, Plaintiffs were ordered to provide specific responses to Defendants' Requests for Production of Documents as requested in Defendants' Motion to Compel. See Dkt. No. 102. This, insofar as it was impossible for Defendants to determine which documents responded to which requests for production insofar as the same were not labeled to correspond to the categories in the requests. See Dkt. No. 101. To this date, while Plaintiffs produced a second copy of documents with bates-numbers, *they have not provided a response to specific requests for production of documents nor provided anything which corresponds the numbered documents with each category of documents requested.* We submit to the Court Plaintiffs have not fully complied with the August 7 Order. While Defendants have received a total of 2,065 documents from Plaintiffs, it remains in the dark as to how Plaintiffs understand they correspond the each category included in Defendants' request for production of documents.

We would also like to highlight to the Court that the Plaintiff in this case took it upon herself to redact some of the documents produced to Defendants by covering certain portions of the same.

-15-

This without noting or explaining the reason for the redaction. When confronted with this in her deposition, Plaintiff initially stated she did not know why that was covered, and later on stated she had covered it so that undersigned would not be able to see who had forwarded a particular e-mail to her attention. Insofar as the redacted information was not attorney-client privileged, Plaintiffs' actions required that Defendants request from Plaintiff that she produce an un-redacted version of the document.

3.    **Irregularities with Plaintiffs' Expert Witness, Dr. Franceschini**

As the case record demonstrates, Plaintiffs requested and were denied an enlargement of time to submit the expert report. See Dkt. Nos. 105, 106, 107 and 110. Accordingly, on August 12, 2009, Plaintiffs submitted a report identified as "preliminary." See Dkt. No. 111. Thereafter, on August 25, 2009, Defendants' filed a Motion to Strike which was opposed by Plaintiffs on September 2, 2009. See Dkt. Nos. 118 and 133. In said opposition, Plaintiffs argued to the Court, among other things, that their expert's use of the moniker "preliminary" when referring to his report was but an inconsequential technicality. During the deposition of Plaintiffs' expert, taken on September 4, 2009 in compliance with the Court's Scheduling Order, Dr. Franceschini presented the undersigned with a new and "final" report, different from the one filed with the Court. It appears Dr. Franceschini examined Plaintiff Rodriguez after having rendered the *preliminary* report. In compliance with the Court's order of September 3, 2009, however, Defendants limited their examination of Dr. Franceschini to what was contained in his Preliminary Report. At any rate, and notwithstanding Plaintiffs' counsel's representations to this Court in their Opposition to the Motion to Strike that the use of the term "preliminary" was nothing but a technicality, Dr. Franceschini's stated during his deposition that his preliminary report was incomplete since had been unable to follow and comply with forensic methodology required for this type of exercise before rendering the same. Moroever,

-16-

he admitted to the undersigned that he had not been advised of the August 12, 2009 deadline to submit his expert report and that he had to finish it in a rush without having had the opportunity to fully examine Plaintiff. We submit to the Court compliance with the methodology standards set forth in <u>Daubert v. Merrel Dow Pharmaceuticals</u>, 509 U.S. 579 (1993), is not just a "technicality."

### 4.    Unfounded Claims Against the Individual Defendants

The present Complaint was filed against the GDB and eight of its officers[10] in both their individual and official capacities. The Court may recall that during the ISC conference, the undersigned expressly asked Plaintiffs' counsel whether Plaintiffs' claims against the individual Defendants were *respondeat superior* claims which were more properly classified as official capacity suits, rather than personal capacity allegations. <u>Cf. Ashcroft v. Iqbal</u>, -- U.S. --, 129 S.Ct. 1937, 1552 (2009) (explaining plaintiff's obligations to establish that the individual Defendants themselves acted on account of a constitutionally protected characteristic). Opposing counsel stated that the individual Defendants had, themselves, engaged in discriminatory conduct and reiterated their intent to proceed against them in both their personal and official capacities.

Rule 11 imposes upon attorneys, among other things, the duty to ensure that "factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation and discovery." Fed. R. Civ. P. 11(b)(3). We submit to the Court that Plaintiffs' attorneys had the legal obligation to ensure that their claims against Defendants had evidentiary support. Specifically as it relates to the personal capacity Defendants, by moving forward with the claims against them, counsel represented to this Court that to the best of their knowledge, the claims against them were warranted by the facts of the case and existing law. The

---

[10]One of which, Jorge Irizarry, has never been served with process.

fact that Plaintiffs moved against state officials who are charged with responsibilities related to the financial well-being of our Island in this time of economic crisis, should have weighed heavily in their minds.  As noted by the United States Supreme Court, "[i]f a Government official is to devote time to his her or duties, and to the formulation of sound and reasonable policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed." Ascroft, 129 S.Ct. At 1953.  The fact is, however, that the discovery conducted to date and Plaintiff's  testimony during deposition make evident that, there is not a shred of colorable evidence that the individual Defendants took adverse action against Rodríguez, harassed her, or otherwise acted on account of constitutionally protected characteristics.  If opposing counsel failed to conduct the pertinent pre-filing inquiry in connection to these individual capacity claims, the issue should have become evident after Plaintiff's deposition. To this date, however, the continue to press forward against these public officers, forcing them to defend against unfounded and stereotyped claims, not to mention putting up with Plaintiffs' vexatious litigation tactics.

### 5.    Harassing and Vexatious Discovery Conduct

Through its Motion in Connection to Plaintiffs' Motion for Preservation Order, Defendants detailed Plaintiffs' counsel's lack of candor in connection to their Local Rule 26(b) efforts and included the letters exchanged in connection to this effort.  See Dkt. No. 136.  Plaintiffs' counsels ultimatums, demanding same-day written responses are improper and unaligned to the standards of practice in this jurisdiction.  Yesterday, we informed the Court of the morning's failed Local Rule 26(b) conference and opposing counsel's uncooperative conduct.  See Dkt. No. 144.  Yesterday afternoon we received a cryptic letter from attorney Meléndez which we were unable to understand. We include said letter as Exhibit 8 to this motion, and invite the Court to review it.  In all honesty,

the undersigned, and several other Firm attorneys which were consulted, was unable to understand what counsel meant with his letter or what he was requesting from Defendants. Notably, had not brought the matter up during the morning's Local Rule 26(b) telephone conference.

This morning, the undersigned arrived at the office to find yet another letter, once again, demanding a response by 5:00 pm. See Exhibit 9. The undersigned answered attorney Meléndez' letter explaining she could not understand what he meant, inviting him to prepare a more concise letter or, in the alternative, to simply give the undersigned a call to resolve the matter. See Exhibit 10. Attorney Meléndez' response is included as Exhibit 11 to this motion, and speaks for itself. We submit to the Court this kind of practice is completely untenable and should be immediately curtailed by the Court.

These are but a few of the numerous instances of Plaintiffs' abuses of process. Others include substandard electronic formatting of digital production of documents and having requiring that the undersigned cope with the simultaneous demands of three different attorneys located in different physical offices and their understanding that notification to one does not constitute notification to all. The sheer number of docket entries in this case evidences the resources that have had to be expended and are a testament of Plaintiffs' untenable litigation tactics. We pray that the Court issue a protective Defendants against Plaintiffs' counsel's harassing behavior and that it schedule a discovery hearing as soon as possible in order to address the multiple discovery issues and abuses of process that have arisen in this case.

WHEREFORE, it is respectfully requested that this Honorable Court take notice of the above, (1) deny Plaintiffs' Motion Requesting Preservation Order, (2) issue a protective order against Plaintiffs' attempts at electronic discovery, (3) issue a protective order against Plaintiffs' and their

counsel's harassing and vexatious litigation tactics, (4) sanctions Plaintiffs and their counsel as appropriate, and (5) schedule a status conference regarding discovery as soon as possible.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 11th day of September, 2009.

WE HEREBY CERTIFY that on, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties.  Parties may access this filing through the Court's system.

**SCHUSTER AGUILÓ LLP**
Attorneys for Defendant
PO Box 363128
San Juan, Puerto Rico 00936-3128
Telephone: (787) 765-4646
Telefax: (787) 765-4611


**s/Mariela Rexach-Rexach**
**Mariela Rexach-Rexach**
USDC PR No. 214110
mrexach@salawpr.com

H:\ATTY\MRX\GDB\Vicky Rodríguez\opp'n preservation order and for protective order.wpd

-20-