**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| VICKY RODRÍGUEZ TORRES, et al.<br><br>Plaintiffs<br><br>v.<br><br>Government Development Bank P.R., et al.<br>Defendants | **CIVIL No. 09-01151-JP**<br><br>TITLE VII AGE & GENDER DISCRIMINATION, TORTS<br><br>TRIAL BY JURY |

**MOTION IN OPPOSITION TO DOC.# 145**

**TO THE HONORABLE COURT**:

Come now all plaintiffs through the undersigned counsel, and state as follows:

**1.** This Honorable Court issued ORDER (**Doc.# 137**) on September 4th 2009, granting Defendant's leave to respond to Plaintiff's motion requesting order of preservation (**Doc.# 135**). Defendants responded on September 11th 2009, **Doc.# 145**, with twenty (20) pages of which twelve (12) fell within the scope of the ORDER, **Doc.# 137**. Accordingly, this present motion in opposition to **Doc.# 145** will be limited to the parts where it discusses any matter at issue or of consequence to **Doc.# 135**.

**2.** **Doc.# 145** puts Plaintiffs in the inherently difficult position of having to argue the obvious, therefore this opposition will need to set the stage with some relevant facts about co-defendant GDB, and their self-portrayal as victims of a "big bad" 60 year-old lady suing them for Employment Discrimination.

**I.   GDB'S TECHNOLOGICAL CAPABILITIES**

**3.** GDB is much like any Goliath-sized corporation, in that it has massive technological capabilities, with a significantly large volume of Electronically Stored Information (ESI) in their possession that is relevant to this litigation. E-mail messages, diaries, journals, memos, and correspondence regarding Plaintiff Vicky Rodriguez reside on GDB servers, as is all information

regarding the reasons and motivation for all employment actions at issue. GDB also maintains personnel databases with discoverable information regarding the age and gender of its workforce, from which discriminatory conduct and animus can be corroborated. Also at issue in this case is the confidentiality and privacy of GDB ESI, which forms the basis of formal charges which have been leveled against Plaintiff, in a disciplinary action currently underway. Whether said documents are confidential and private or not, and whether such confidentiality has been waived or not, are material and relevant to the determination of whether the disciplinary action is justified, or if it is a retaliatory employment action from which a intentional discrimination can be inferred (**Doc.# 126** – MOTION for Preliminary Injunction). Such information is not only relevant to this case, but also for additional actionable conduct against GDB in favor of Plaintiff: <u>Retaliation against Plaintiff because she complained of discrimination is intentional discrimination</u>. <u>*Gomez v. Potter*</u>*, 128 S.Ct. 1931, 1937 (2008)*.

**4.**  GDB is in exclusive control of all relevant personnel records, aggregated employment data, and e-mail communications regarding relevant topics, all sitting and being hosted by co-defendants computers, and all flowing through this employer's data-communications network. Now, with co-defendant Nancy López-López's own admission that she routinely destroys her electronic records, other relevant and responsive ESI is only recoverable by GDB owned and controlled recovery and back-up systems. For this litigation to be objectively and fairly decided on the facts and on the merits, all of the above relevant information cannot just remain solely available to GDB, and withheld from Plaintiff. Otherwise, an injustice and unfair leverage and advantage would ensue precisely in favor of the most powerful party in this litigation, over the one with the most modest means. "*As large companies increasingly move to entirely paper-free environments . . . will have the effect of* ***<u>crippling discovery in discrimination and retaliation cases</u>***. *Both undermine the* ***<u>strong public policy in resolving disputes on their merits</u>*** *. . .* ". <u>*Zubulake v. UBS Warburg LLC*</u> *217 F.R.D. 309, 317 (S.D.N.Y., 2003)*.

**5.** Co-defendant GDB is funded by a massive IT budget to procure external services and infrastructure, according to the contract registry held at the Office of the Comptroller or "*Contralor*", at URL address: **http://www.ocpr.gov.pr/**, last visited on September 4th, 2009. For the last 5 years, IT services contracts amount to **$5,690,986.31**, and include providers such as: International Business Machines, Advanced Computer Technology, Adtek Information Systems, Inc., and Lawson Software Americas, Inc.. Audit and assurance contracts, amount to **$4,990,021.82**, and include providers such as: Deloitte and Touche, and KPMG, LLP, both authors of industry leading publications and proprietary methodologies on the subjects of Information Technology security, audit, control, and data preservation. Technical services contracts, amount to **$66,512,500.84**, and include a monstrous **$47,200,000.00** contract with Evertec, Inc..

**6.** Co-defendants belatedly, unacceptably, and partially responded to interrogatories under ORDER **Doc.# 123**, under which they disclose, *inter alia*, that they are supported by the following technologies: 100 applications and software programs, desktop productivity tools, integrated ERPs, database management systems and applications for banking, investment and treasury operations; Microsoft Exchange Server Enterprise Edition;  40 Intel-based servers.

## II.  GDB'S DUTY TO PRESERVE AND PRODUCE

**7.**  " . . . *the Federal Rules of Civil Procedure will embrace the 21st Century world, where 95% of records are electronically created and stored and all discovery is now e-discovery* . . .". [emphasis added] Federal Judge Shira A. Scheindlin, S.D.N.Y., ***In Camera***, ***Federal Judges Association Newsletter***, http://www.fjc.gov, November 29, 2006 (last visited September 4th 2009).

**8. Federal Rule of Civil Procedure 16(c)(1)** directs that at pretrial and management conferences, attorneys make stipulations about *all matters that can reasonably be anticipated for discussion*, which includes, as it should, the requirement that there be a discussion of *ESI*

_discovery_, if such discovery is contemplated in the action. **Federal Rule of Civil Procedure 26(g)**

further imposes on counsel the duty to supervise ESI discovery.

**9.** "_Litigators who ignore the fact that more than 90 percent of potentially discoverable_

_information is generated and stored electronically risk facing_ dissatisfied clients, accusations of

ethical violations, malpractice suits, and _judicial sanctions for failure to comply with electronic_

_evidence obligations_. As technology advances and clients' and opponents' systems become more

complex, _lawyers' duties in discovery also evolve rapidly_.". [emphasis added] Christopher D.

Wall, Ethics in the Era of Electronic Evidence, 41-OCT Association of Trial Lawyers of America 56

(2005),  http://www.atla.org, last visited on September 12th 2009.

**10.** As to co-defendants contention that they do not have a duty to preserve, Plaintiffs suggest

they take a look at _Broccoli v. Echostar Communications Corp. 229 F.R.D. 506 (D.Md., 2005)_,

where the court held that the employer was on notice of the pending litigation and therefore,

had a duty to preserve, beginning when the plaintiff first complained internally to his

supervisors. The court stated that given defendants status as a large public corporation – much

as GDB - with ample financial and technological resources, and personnel management know-

how, it was indefensible that data preservation policies, procedures and related documentation

were lacking. _Broccoli_ further suggests that even one employee complaining to supervisors

about his treatment can put the entire corporation on sufficient notice to require preservation

of potentially relevant ESI. GDB has certainly had other complaining employees, well before

Plaintiffs filed **Doc.# 135**, that put co-defendant on sufficient notice to preserve ESI.

**11.** _Quinby v. West LB AG 245 F.R.D. 94 (S.D.N.Y. 2006)_, is a case with a similar fact pattern to

the present case: A gender discrimination plaintiff was granted access to several employees and

former  employees' email accounts for references to the plaintiff specifically, and to sexist and

derogatory content generally. This is precisely the type of behavior on which Plaintiff Rodríguez

bases her complaint. The court granted the request to the  e-mail accounts, because they

involved employees on or around times relevant to the complaint, and accordingly imposed on defendant preservation obligations over such accounts, **in an accessible electronic native format** once it reasonably anticipated litigation.

**12.** Co-defendants as the non-responsive party bears the burden of establishing why it should not be ordered to preserve ESI. Their refusal to preserve ESI mainly circles around the unrealistic perception that as imposed on them, such imposition is oppressive, burdensome, overbroad, vexatious, and any number of other equivalent empty "canned and boilerplate" expressions and synonyms. Plaintiffs contend that this wholesale refusal by co-defendant – a computer-savvy and sophisticated litigant - is designed to take unfair advantage of its privileged position relative to Plaintiffs, and make discoverable documents intentionally difficult to discover.

### III. PLAINTIFF'S RIGHT TO COMPLETE PRESERVATION AND PRODUCTION

**13.** Effective ESI discovery includes  assurances of the **integrity and the completeness** of the information, which will require at times  compliance with discovery requests that include deleted information from e-mail and other computer programs. [emphasis added] Toby Brown, _Electronic Discovery Basics_, _52 R.I BAR J. 7, 7 (July/Aug. 2003)_. The Information Systems Audit and Control Association (ISACA) – an international professional association regulating IT Governance - defines the "**information integrity framework**", and identifies as key attributes and enablers of information integrity: **completeness, accuracy and validity, consistency, dependability, verifiability and credibility.** [emphasis added] (http://isaca.org, last visited on September 13th 2009).

**14.** It is simply unacceptable under the law and the evolution and importance of ESI discovery, that, in addition to failing to preserve ESI, GDB be allowed to produce a mere fragment of the total relevant information in paper format. Co-defendant, by its adamant refusal to preserve in

effect would be destroying ESI, making from it a self-serving selection, removing from it all indexing, searching, and labeling capabilities and information, mixing it up, and then printing it, assigning it a sequential number and delivering a stack of paper to Plaintiffs.

### IV. OPPOSITION TO DOC.# 145 BY PARRAGRAPH

**I. Introduction ¶ 1**:

**15.** As to Plaintiffs "*suggesting, without foundation, that Defendants have been engaging in spoliation of evidence*", Plaintiffs submit that Enid López- López's statement under oath that she regularly deletes e-mail messages is a pretty definitive and solid foundation on which to make such an assertion. Plaintiffs in fact would be so bold as to consider the issue adjudicated, with the support of co-defendant's own pleadings in **Doc.# 136 ¶** 4: " . . . *Ms. Enid López' testimony that **she has to delete e-mail messages** from her in-box in order to prevent it from becoming full. Plaintiffs similarly failed to disclose to the Court how the fact that Ms. López **might not have retained, to this date, an electronic copy of an e-mail** regarding a schedule of training sessions . . . Ms. López **has produced to plaintiffs numerous copies of e-mails and notes** which are of consequence to the case . . .*".

**16.** Plaintiffs contend that as noted above in **Doc.# 136 ¶** 4, statements to the effect that: "**she has to delete e-mail messages**", and "**might not have retained, to this date, an electronic copy of an e-mail**", makes Plaintiffs allegations of destruction and failure to preserve ESI, and a cavalier attitude towards such behavior, undisputed facts. Statements to the effect that: "**has produced to plaintiffs numerous copies of e-mails and notes**", accuses a complete disregard towards plaintiffs' right, and co-defendants' obligation, to preserve their ESI in original, "native" electronic file format. The risk that already dynamic and mutable ESI evidence becomes permanently destroyed, unrecoverable and unavailable for discovery in this litigation is dangerously imminent.

**17.** Even ignoring for the moment – without conceding – that GDB is not the financial and technological behemoth that it is, and that co-defendant López has been left stranded and unchecked to her own device in managing her Outlook e-mail application, assertions that she had no other option than to delete messages to keep her Inbox from getting full, at best, suggest a naive misunderstanding of her day-to-day productivity tools. For instance, in barely under one (1) minute, López could visit internet search engine http://www.google.com, type in "**outlook inbox size customizable**", and find in the first four results the following document: "**Manage Your Outlook Don't Let It Manage You**". Within another minute, she could figure out that Inbox sizes are fully customizable, and that she didn't have, after all, to engage in the destruction of ESI.

**18.** Lastly, communication in the twenty-first century is electronic, stored electronically and routine written communication is done by e-mail. These **electronic documents in their native electronic format** are as significant today as printed format letters once were. Despite the profound difference between the typewriter and the computer, co-defendant proposes that Plaintiffs should take printed documents as functional equivalents of ESI in native electronic format. This proposition is equally naive and a questionable exercise of the duty to supervise under ***Fed.R.Civ.P. 26(g)***. E-mail applications are sophisticated messaging systems, not expensive typewriters, and e-mail communication is rarely created with the expectation that it will be utilized as an authoritative document in printed format. Take for instance opposing Counsel's invitation to protect the environment in her e-mail signature, urging us to not print e-mail communications:



Mariela Rexach-Rexach
mrexach@salawpr.com
Switchboard: (787) 765-4646
Direct Dial: (787) 250-4909
Fax: (787) 765-4611
◆ my v-card ◆ my bio ◆ http://www.salawpr.com

Before printing this email, think about our collective responsibility to protect the environment

**I. Introduction ¶'s 2 though 4 and 6:**
**19.** These paragraphs do not address **Doc.# 135**, but are directed instead at both: co-defendants refusal to comply with their discovery obligations, and co-defendants position regarding discovery requests served on Plaintiffs. These issues are being handled in other discussion threads, and consequently this is an improper place in which to bring them up. Plaintiffs will therefore ignore these paragraphs here, for the time being, and pick up their discussion in their proper place. These paragraphs also fall outside the scope of **Doc.# 137.**

**20.** As to co-defendants "*Plaintiffs unnecessarily increase the cost of litigation*" ploy, co-defendant is painfully on notice that in this Court and in this Circuit, bare claims of cost of litigation will not be taken seriously, but rather as borderline frivolous, and unquestionably hopeless. *Aristud v. Government Development Bank 501 F.3d 24, 28 (1st Cir., Puerto Rico, 2007).*

**I. Introduction ¶ 5:**
**21.** Plaintiffs are admittedly bewildered by co-defendant's contention on spoliation of evidence. They stunningly and simultaneously state, on the one hand, that they delete messages to keep the inbox from getting full, and on the other hand, are appalled and outraged by Plaintiffs' bringing it to the attention of the Court. See also Plaintiffs' own ¶'s 15 through 18, above.

**II. Discussion A. Plaintiffs' Allegations of Spoliation of Evidence**
**22.** Co-defendant here sets forth a definition of spoliation of evidence, and cites some legal authority, to support the notion that unless Plaintiffs identify what was destroyed, its

relevance, co-defendants knowledge regarding said relevance, and articulate any particular intent or bad faith, any contention of spoliation of evidence would fail. Co-defendants also argue that Plaintiffs are required to make a showing that it was reasonably foreseeable that the destroyed evidence would later be discoverable. Reliance on this argument, and on the cited cases, is hopelessly inadequate.

**23.** _Chapman v. Bernard's, Inc.,_ _167 F.Supp.2d 406, 413 (D. Mass. 2001),_ is a products liability case, where the piece of evidence at issue – a child's daybed ostensible causing injury and death to plaintiff's daughter - was **destroyed by plaintiff** in the heat of the moment as a reaction his daughter's death. Plaintiff had not yet established if the daybed had been manufactured by defendant. **Defendant then moved to exclude** police photographs of the daybed and an expert report, as a sanction against plaintiff for destroying the evidence that purportedly supported his claim.

**24.** Co-defendants also rely on an unpublished decision, _Wong v. Thomas,_ 2008 WL 4224923, where plaintiff requested e-mail discovery, **received substantial e-mail discovery from defendant**, but sought sanctions for spoliation for a number of e-mails that were not recoverable and produced by defendant. Plaintiff motion was denied because the court determined that the loss of the **unrecoverable e-mails was due to a mechanized, periodic "purging"** process, not by an express, deliberate human intervention.

**25.** _Jimenez-Sánchez v. Caribbean Rest., LLC,_ _483 F.Supp.2d 140, 143 (D.P.R 2007),_ is also a products liability case where plaintiff suffered an injury from a water bottle provided by defendant. **Defendant destroyed the evidence** (the water bottle), **plaintiff introduced evidence of spoliation**, and **defendant moved to exclude evidence** of spoliation, which was denied by the court.

**26.** How co-defendant finds support in the cited legal authority, stretches past the boundaries of Plaintiffs' imagination, and is in violation of Model Rule of Professional Conduct 3.3, Duty of

Candor Toward The Tribunal. Quoting from and citing a published and unpublished opinions, co-defendant distorted what the opinions stated by leaving out significant portions of the underlying fact patterns, and cropping new ones. Cited legal authority are no legal authority at all, they are, instead, co-defendant's unfounded arguments in co-defendant's own words, masquerading as legal authority.

**27.** The present case is distinguishable from any of the above fact patterns, and from how co-defendant self-servingly chooses to characterize it. It is also at a very different stage of the litigation process. Cases cited by co-defendants present instances where certain evidence was not available at trial, and the party moving for a finding of spoliation was doing so to move the court to issue "adverse inference instructions" to the jury. Plaintiffs here are **moving to preserve the evidence** that has been denied to them, and which has been impossible for them to identify absent production by co-defendant; **co-defendant is refusing to produce** evidence; **co-defendant has admitted to the deliberate destruction** of evidence. Co-defendant brazenly maintains that a failure to preserve ESI is inconsequential and immaterial, because only irrelevant data is contained within its systems (**Doc.# 144**).

**WHEREBY**, for all of the above, Plaintiffs pray this Honorable Court: **Take NOTICE** of all of the above, and **GRANT Doc.# 135** - Motion in Request for Order of Preservation and Litigation Hold.

Respectfully submitted in New York, this 13th day of September, 2009.

S/William Meléndez Menéndez<br>
William Meléndez Menéndez<br>
USDC-PR No. 226902

William E. Meléndez │ We.Melendez@e-Lex.us<br>
Cuadros & Cuadros │ 701 Ponce de León Ave. Suite 215 │ San Juan, Puerto Rico 00907

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for defendants and all other parties of interest.

S/William Meléndez Menéndez