**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| VICKY RODRÍGUEZ TORRES, et al.<br>Plaintiffs<br>v.<br>Government Development Bank P.R., et al.<br>Defendants | **CIVIL No. 09-01151-JP**<br><br>TITLE VII AGE & GENDER DISCRIMINATION,<br>TORTS<br>TRIAL BY JURY |

<u>**JOINT INFORMATIVE MOTION IN COMPLIANCE WITH ORDER AS SET FORTH IN DOC.# 179**</u>

**TO THE HONORABLE COURT:**

**COME NOW** the parties in the captioned case through the undersigned counsel and respectfully state as follows**:**

In compliance with Order as set forth in **Doc.# 179**, the parties include in the current informative motion: **1)** Plaintiffs' pending ESI discovery requests; **2)** Co-defendant GDB's objections to the requests; **3)** Plaintiffs' explanation and showing of relevance of the requests; **4)** GDB's explanation for their objections; **5)** Plaintiffs' explanation of what they expect to find in the ESI produced by the requests. A separate ESI Cost and effort prepared by an independent ESI specialist is included as **Appendix 1**, regarding the production of the ESI requests in the format requested by Plaintiffs.

<u>(1) PLAINTIFFS REQUESTS</u>

Plaintiffs identify requests "**1.**" through "**4.**", below, as readily obtainable through the Lawson Human Resources software standard reporting, or its data-extraction tool (Structured Query Language), an accordingly request production in PDF report. Plaintiffs identify request "**5.**" as readily obtainable in native electronic file format with its corresponding metadata, and accordingly request production in such format. Plaintiffs are agreeable to production of the remaining request, "**6.**" in PDF format.

**1. <u>Interrogatory 8</u>:** As of January 1, for each year 2007, 2008, 2009, state with reference to the persons employed by co-defendant GDB: a) total number of employees; b) number of female employees; c) number of employees over 40; d) number of female employees over 40.

**2. <u>Interrogatory 9</u>:** As of January 1, for each year 2007, 2008, 2009, state with reference to the persons employed by co-defendant GDB, in each job title or job category: a) the average salary; b) total number of employees; c) number of female employees; d) number of employees over 40; e) number of female employees over 40 (redrafted to include a sub-set of the elements requested in both Interrogatories 9 and 10, as they were originally drafted).

**3. <u>Interrogatory 17</u>:** For each year 2007, 2008, 2009, list for each GDB employee who has been promoted: a) name, gender, age, date of promotion; b) job promoted from, with its corresponding salary grade and department; c) job promoted into, with its corresponding job description and criteria, selection devices and procedures, salary grade and department; d) justifications and reasons for selection over others; e) date and position of initial hire, with its corresponding salary grade and department; f) other positions held with employer, with their corresponding salary grade and department; g) the supervisors and officials involved with promotion and the nature of their involvement; h) copy of personnel file and all documents related to promotion.

**4. <u>Interrogatory 24</u>:** For each year 2007, 2008, 2009, identify each job vacancy which has occurred and state: a) the date the job became available; b) the work experience, educational accreditation, or other qualifications required of job applicants; c) the name, sex, and age of the person who filled the vacancy.

**5. <u>Request for Production of Documents 12</u>:** For each year 2007, 2008, 2009, produce in native electronic format with its original metadata all e-mail communications and calendar entries  describing, relating or referring to plaintiff Vicky Rodríguez, both inbound and outbound from co-defendant GDB's messaging system servers. Particular attention to the following definition of extract key-words needs to be exercised: a) identification of Rodríguez by different variations of her name; b) designation of pejorative and derogatory terms typically used to demean persons according to their age and gender (including but not limited to phrases such as: vieja, nena, arrugas, años, edad, etc.); c) designation of phrases which could be referring to the current and past litigations, and which could suggest retaliatory animus or activities (including but not limited to phrases such as: demanda, caso, testigos, demandada, plaintiff, etc.); d) designation of record custodians to include all co-defendants, and other unnamed GDB employees known to tease,  insult and taunt Rodríguez based on her physical appearance and age (a description of the process is further detailed in the ESI Specialist Report).

**6. <u>Request for Production of Documents 15</u>:** The personnel files of each employee who has been assigned permanently or administratively to work in any of the same departments as plaintiff Rodríguez for each year 2007, 2008, 2009, and until the present date.

<u>(2) RESPONSE PROVIDED BY DEFENDANTS TO EACH REQUEST</u>

**Preliminary Statement:**

The Lawson Human Resources Software has the capability of outputting raw data regarding

employee composition and certain characteristics such as gender, age, salary, etc. However, the nature

and scope of the reports requested at items 1-4 requires interpretation of said raw data. Thus,

independently of any objections regarding the relevance of this data, as more specifically indicated below, the reports are not available as requested but rather, require interpretation and review of the raw data provided by Lawson.

**1. Redrafted Interrogatory Number 8:**

This interrogatory seeks information regarding the composition of the entire GDB workforce for the years 2007, 2008, and 2009. The GDB, accordingly objects the request as irrelevant and overbroad. The instant action presents allegations of *disparate treatment*, not *disparate impact*. Hence, the gender and age composition of the GDB workforce is not relevant to the allegations of the Complaint and is not reasonably calculated to the discovery of admissible evidence.

The request is also overbroad with respect to the time periods requested. Plaintiff's claims relate to events transpired during 2008. Accordingly information regarding 2007 and 2009 are irrelevant to the claims or defenses raised in the Complaint.

**2. Redrafted Interrogatory Number 9:**

We note, at the outset that some of the requests are repetitive of those in redrafted interrogatory number 8. The GDB objects to plaintiff's request as overbroad and irrelevant to plaintiff's claims averred in the Complaint. Please refer to the objections raised with respect to interrogatory 8. Additionally, we note that at all times relevant to the Complaint plaintiff has occupied the position of Account Executive. Information regarding the average salaries or composition of other job categories within the GDB is, therefore, irrelevant to her claims for hostile work environment, failure to promote or wage discrimination. Furthermore, responding to such a broad request results in an undue burden to the GDB. The GDB also objects to scope of the request in terms of years as irrelevant to the claims raised in the Complaint.

**3. Interrogatory Number 17:**

The GDB objects to this request as irrelevant, overbroad and unduly burdensome. The interrogatory is extremely broad and seeks information which is irrelevant to plaintiff's claims. Insofar as the present case presents allegations of disparate treatment, the relevant discovery relates to the positions which

plaintiff in fact applied for. See Vélez v. Janssen Ortho LLC, 467 F.3d 802 (1 Cir. 2006). Such discovery

has already been provided to plaintiffs, even as to positions for which any discrimination claim would

be time-barred. The promotion of other individuals, unrelated to the specific instances where plaintiff

applied for job-postings, and was rejected are irrelevant to her claims and not reasonably calculated to

lead to the discovery of admissible evidence. The request is also irrelevant and overbroad in terms of

the years requested. Finally, compiling the information requested with respect to each and every

promotion made at the GDB for any one of the requested years results in an undue burden to de

defendants. Contrary to plaintiffs' suggestion, while the raw date is available in Lawson, responding to

the request will require compiling and interpreting a substantial amount of raw data. Conducting such

a process is unduly burdensome upon the Bank, particularly in light of the lack of relevance of the

request.

**4. Interrogatory Number 24:**

The GDB objects to this interrogatory as irrelevant, overbroad and unduly burdensome. This

interrogatory requests information regarding each job vacancy (and its requirements) which occurred

in the Bank, regardless of whether plaintiff applied for the same. Such a broad request is not relevant

to plaintiff's claims and not reasonably calculated to lead to the discovery of admissible evidence.

When a plaintiff makes a failure to hire/promote claim, the First Circuit Court of Appeals has held that

the "adverse employment action" element of the prima facie case requires a showing that "(1)

[plaintiff] applied for a particular position (2) which was vacant and (3) for which she was qualified. In

addition, of course, she must show that she was not hired for that position." Vélez v. Janssen Ortho

LLC, 467 F.3d 802 (1 Cir. 2006). Defendant has already produced all pertinent documents regarding the

positions to which plaintiff applied for. The fact that other positions, to which she did not apply were

vacant during any given point in time is not relevant to the instant case. The interrogatory is also

overbroad in terms of the years for which it requests the information.

**5. Redrafted request for Production of Documents 12:**

As re-drafted by plaintiffs in their motion to the Court, plaintiffs are requesting an electronic search within the GDB's Outlook accounts of 24 current and former employees for communications which make reference to any combination of the listed words or phrases (See **Appendix 2**, Scope document at parameters section). The GDB, opposes the proposed search as irrelevant, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence. During the course of her deposition plaintiff identified those e-mail communications she had received which she felt were discriminatory. Moreover, only one of the objected e-mails was originated by one of the defendants, Angel Pérez, and it had nothing to do with age or gender. We submit to the Court this discovery effort is nothing but a fishing expedition. See Fennel v. First Step Designs, LTD, 83 F.3d 526, 533 (1st Cir. 1996). Before being compelled to open this particularly wide door of discovery, plaintiff should at the very least be required to articulate what is it that she believes this search will uncover. At this stage of the exercise, plaintiffs have not yet identified to the GDB what it is that they expect to discover with this search or any particularized likelihood of discovering appropriate information. Generalized allegations regarding the existence of evidence, the nature and purpose of which remains undisclosed, is simply insufficient. See Mia Mazza, In Pursuit of FRCP1: Creative Approches to Cutting and Shifting the Costs of Discovery of Electronically Stored Information, 13 Rich. J.L. & Tech. 11, at *5-6 (noting the high costs of responding to this type of electronic discovery). Moreover the broadness of the search will generate an inordinate amount of electronic correspondence, the great majority of which is irrelevant to plaintiff's claims or the issue of discrimination. Rather than being tailored to the specific allegations in the complaint, "these requests cast a much wider net, encompassing much information irrelevant to that stated purpose, of a potentially personal nature, or protected by attorney-client privilege." Regan-Touhy v. Walgreen Co., 526 F.3d 641, 649 (10th Cir., 2008). " [P]arties to civil litigation are given broad discovery privileges. But with those privileges come certain modest obligations, one of which is the duty to state discovery requests with 'reasonable particularity.' All-encompassing demands of this kind take little account of that responsibility." Id. (quoting Fed. R. Civ.

P. 43(b)(1)(A)).  <u>See also Professional Recovery Services, Inc. v. General Elec. Capital Corp.</u>  Civil No. 06-2829 (JBS), 2009 WL 137326, * 4 (D.N.J., Jan. 15. 2009) ("To cast a wide net for discovery of information in the hopes that something of use may come back is the essence of a fishing expedition precluded by the rule of proportionality." ).

As to the specific search terms, the time spans requested by plaintiff are overbroad.  The events subject of the Complaint occurred during 2008.  And even then, she was in different departments at different points in time during this year.  Finally,  unclear why communications during 2007 and 2009 at all are relevant.  We, accordingly, object.

The user list proposed by plaintiff is overbroad.  While defendant recognizes the potential relevance of searching within the Outlook accounts of the individual defendants (individuals " a" to " h"--although with a much more limited scope that than suggested by plaintiffs and appropriately tailored to the allegations in the Amended Complaint), the relevance of a search for information with the accounts of the individuals listed at items "i" through "x" eludes us.  For example:  Guillermo Camba is the current Human Resources Director, he was not at the GDB at the time of the events that gave rise to the allegations in the Amended Complaint.  Gloryvette Balaguer Estrada and Lynette Lugo are members of the Human Resources department who have had no involvement with the facts alleged in the Amended Complaint.  Importantly, plaintiff's allegations of discrimination against the defendants is premised on intentional acts allegedly perpetrated by these very named defendants ("a" through "h").  Whether or not the individuals listed at items "i" through "x" (most of whom do not hold supervisory positions) generated electronic correspondence containing the referenced words does not establish that the *individual defendants* discriminated against plaintiff  because of age or gender.  Moreover, insofar as plaintiff herself is unaware of whether or not these co-workers generated any correspondence using these words, any such e-mails cannot form the basis of a claim for hostile work environment.

The search terms as proposed by plaintiff are overbroad.  Not only will they produce hundred, if not thousands of documents, they are guaranteed to snare irrelevant, confidential and potentially privileged information.  See Kolenc v. Bellizzi, No. 95 CIV. 4494 (LMM KNF), 1999 WL 92604, *1 (S.D.N.Y.) (S.D.N.Y., Feb. 22,1999).   To be relevant "the information "must be limited in scope in accordance with Fed.R.Civ.P. 26(b)(1) and tied to the allegations of plaintiff's complaint."  Kresefky v. Panasonic Communications and Systems Co., 169 F.R.D. 54, 66 (D.N.J.,1996).  The GDB objects to the over-inclusive extraction parameters suggested by plaintiffs, at once simplistic and contrived.  Most, if not all, the proposed terms listed lack ageist or sexists connotations.  The terms "quinceañera,""nena" and "peluca" have no relation to plaintiff's allegations of discrimination on the basis of age or sex. Plaintiff's allegations nor her depositions testimony have stated anything as to anyone, let alone the defendants, having harassed her with these words.   As to the different variations of the work "alzheimer's", the present case is not one for disability discrimination, plaintiff does not suffer from this condition and she nowhere has alleged that anyone at work use this term when referring to her. Once again, we fail to see the relevance of this request to plaintiff's allegations of discrimination on the basis of gender or age.    Finally, plaintiff's attempt to include search terms referring to "demanda" "caso," "testigo" or "demandante are equally  irrelevant to the causes action alleged in the Complaint. Plaintiff's Amended Complaint does not include allegations of retaliation.

Plaintiffs' search parameters regarding different combination of individuals in the "To", "cc or "bc" are also irrelevant and overbroad.  Notably, there is no limitation regarding content or subject matter. Why is it relevant to plaintiff's claims all the e-mails that these individuals (who are not the individual defendants) might have received?  How will production of these e-mails help her establish intentional discrimination on the basis of age or gender?  This is the same situation with respect to the search parameters proposed with respect  to the Outlook calendars.  What is the relevance to this case of a search of the invitations sent out to the different combinations of individuals?  Relating to what? When?  Where is the showing that plaintiff was entitled to be invited in the first place?  How does it

help establish plaintiff's claim of discrimination on the basis of gender or age? How has plaintiff

tailored these requests to the claims before the Court?

**6. Redrafted request for Production of Documents 15:**

This request has been redrafted to request the personnel files of *each* employee who has been

assigned permanently or administratively to work in any of the departments that plaintiff worked for

the years 2007, 2008 and 2009. This basically means the Private Financing and Municipal Financing

Departments. The GDB continues to object to the request as irrelevant and overbroad. The personnel

files of other employees contain highly confidential information regarding third parties not involved in

this action, relative to matters and time-period unrelated to the present action. We fail to see how

such a production is relevant to plaintiff's contentions, how it will make the issue of discrimination

more or less probable, or how the request is reasonably calculated to lead to the discovery of

admissible evidence.

**(3) PLAINTIFFS' EXPLANATION FOR EACH INDIVIDUAL REQUEST INCLUDING ITS RELEVANCE**
**Interrogatory 8**, **Interrogatory 9**, **Interrogatory 17**, and **Interrogatory 24**

The present case is a discrimination in employment claim, under **29 U. S. C. § 626**, **42 U. S. C. §1983**,

and **42 U. S. C. §2000**, where plaintiffs only need to prove that they are an individual with protected

traits as defined by these statutes, and that because of the protected traits, they are subject to stricter

requirements and suffer unfavorable treatment, when they are compared to other employees, or

prospective employees, who do not exhibit protected traits. In employment discrimination cases the

litigation power and sophistication between plaintiffs and defendants is abhorrently asymmetrical:

defendants will almost always have virtually unlimited funding to meet the cost of litigation - as well

as, and invariably - ownership and control of all relevant and material evidence that would support a

finding of discrimination. Defendants will also have a distinctive advantage in their readiness to meet

the challenges of litigation, in so far as they continuously educate the individuals through which

discriminatory acts are carried out with training and educational activities and events, and by

publishing formal policies and procedures proscribing discriminatory conduct. Consequently,

discriminatory behavior and attitudes are not frequently displayed through overt, unconcealed acts that would make discrimination obvious, which severely limits any availability of direct evidence available to plaintiffs to prove their case.

In the absence of direct evidence, employment discrimination plaintiffs often need to rely exclusively on circumstantial evidence, from which a fact finder can reasonably infer that, more likely than not, adverse employment actions giving rise to the causes of action were motivated or influenced, in every respect or in part, by discriminatory animus or intent. Instances where courts have inferred through circumstantial evidence that adverse employment actions have been triggered by intentional discrimination, include the following: an extended period of time of satisfactory performance by the plaintiff, eventually met by an adverse employment action. *Crimm v. Missouri Pac. R.R.*, 750 F.2d 703, 711 (8th Cir. 1984); *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1282–83 (7th Cir. 1977); departure from general policies usually followed by the employer, when applied in relation to plaintiff. *Moore v. City of Charlotte*, 754 F.2d 1100, 1105–06 (4th Cir.), cert. denied, 472 U.S. 1021 (1985); *EEOC v. Brown & Root, Inc.*, 688 F.2d 338, 340–41 (5th Cir. 1982); different treatment of plaintiff, when compared to individuals outside of the protected group. *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142–43 (11th Cir. 1983). Conversely, where there might be only circumstantial evidence available to support an employment discrimination claim, a finding of defendant's liability, regardless of the context in which the decision making process leading to the adverse employment action took place, could depend on the fact finder making a reasonable inference that, more likely than not, the plaintiff's protected traits actually motivated, played a role, and had a determinative influence on triggering the decision leading to the adverse employment action. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). The connection between the circumstantial evidence from which the inference is drawn and the underlying discriminatory intent giving rise to liability can be even rather tenuous: courts have routinely determined employer liability by inferring discriminatory motivation through only what amounts to

circumstantial evidence of a causal relationship between apparently suspicious conduct, and an adverse employment action. _Slack v. Havens_, _522 F.2d 1091 (9th Cir. 1975)_.

An employment discrimination plaintiff stills has the burden of producing evidence that is demonstrative of their statutorily protected trait, of the qualifications for the job or opportunity denied, and that notwithstanding their qualifications and fitness for the job, they still suffered an adverse employment action in the form of denied access to the opportunities and benefits entailed by holding the job. _McDonnell Douglas Corp. v. Green_, _411 U.S. 792 (1973)_. Absent any direct evidence of discriminatory intent influencing the adverse employment action, a fact finder can reasonably infer such an animus by comparing how other similarly situated individuals are treated, as compared to a plaintiff. One sure way of establishing the comparison is evaluating what factors – and in what measure -  others and plaintiffs are "similarly situated", and what factors make them different. At the crux of the issue in employment discrimination are the statutorily protected traits.

Here, Plaintiff Rodríguez is alleging that: she is qualified to perform the jobs she has been denied access to, while others outside of her statutorily protected class have been granted access to the same; she has been treated unfavorably within a job class or category, as compared to others without her statutorily protected traits. The discovery requests at issue precisely are the only available evidence through which plaintiff and others "similarly situated" can be aggregated and compared as to how they are treated, by the presence or absence of statutorily protected traits. The requests at issue would presumably support how Plaintiff Rodríguez was treated, against the above reference groups, and form a definitive basis of comparison on which to make a distinction on which an inference can be derived as to whether or not there is a justification for said differences, or alternatively, if they are motivated by discriminatory animus.

As to whether or not employment discrimination plaintiffs need to characterize their claims as being either "_disparate treatment_" , or "_disparate impact_", Plaintiffs prefer to exercise their full right as owners and "masters of their own complaint", by doing neither. _Grable & Sons Metal Prods. v. Darue_

*Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). And even if Plaintiffs did choose one of the two classifications offered by the above GDB proposed nomenclature, that would be of no consequence. Plaintiffs here are exercising causes of action arising under U.S. Congressional acts - **29 U. S. C. § 626**, **42 U. S. C. §1983**, and **42 U. S. C. §2000** - and none of the statutes are dependant, or give or take away rights, based on if one chooses to characterize them as "*disparate treatment*", "*disparate impact*", one or the other, neither one, both, or none of the above. In fact, not one of the statutes mentions either term. "*Disparate treatment*" and "*disparate impact*" are recognized merely as jurisprudentially developed terms-of-art, utilized to more easily illustrate different discrimination theories, based on their distinctive methods of proof and of establishing liability. "**Disparate treatment**" could be the most easily understood way of discriminating, because it involves people being treated less favorably than others, based on statutorily protected traits, involves motive, and can be proven by direct evidence or inferred from the mere fact of differences in treatment. *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265-266 (1977). "**Disparate impact**", on the other hand, involves employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity, and where, therefore, proof of discriminatory motive is not required. *Griggs v. Duke Power Co.*, 401 U.S. 424, 430-432(1971).

It is true that the pleadings in the present case do in fact raise claims of intentional discrimination, and do not involve Plaintiffs attacking the effects on them of a facially neutral GDB policy, but the evidence here sought could form the basis from which discriminatory intent could at least be inferred, if those with protected traits are treated differently from those without them, it would suggest that not only plaintiff Rodríguez is discriminated against, but others as well. In any event, if the composition of the GDB workforce were such that a clear and pervasive difference exists between protected and non-protected individuals, Plaintiffs here could even not have to prove discriminatory intent, and

recover under a "*disparate impact*" theory, and would therefore be able to, without difficulty, amend their complaint with the evidence returned by complying with this request.

The time periods requested are also sufficiently narrowly tailored to support the present cause of action. The claim was filed early in the year 2009, which would extend the relevant time period to a full year, under the "Tort" causes of action, to early 2008. Evidence from an additional year back is also sufficiently narrowly tailored, in order to provide a basis of comparison and trends with which to evaluate the mostly circumstantial evidence available to Plaintiffs.

*Vélez v. Janssen Ortho LLC, 467 F.3d 802 (1ST Cir. 2006)*, is a legal precedent which does not exactly support GDB in the above objections, as it is clearly distinguishable from the present case. *Vélez* is  an appeal from a summary judgment entered against plaintiff, in  a retaliation for refusing to re-hire case, where plaintiff had failed to make a *prima facie* showing of retaliation. To prove the protected adverse employment action against her, and therefore her *prima facie* case, plaintiff needed to establish that: the position was available, she was qualified for the position; she applied for the job; she was refused the position; another person was selected who was not within the statutory protection. In *Vélez*, therefore it was central to her *prima facie* showing that the position she applied for be available at the time she applied for it. Plaintiff in *Vélez* wasn't making claims of "*disparate treatment*", or "*disparate impact*", for that matter, and she didn't have to, all she needed to show was a retaliatory act against her for performing a protected activity. Under such circumstances, it is reasonable to deny discovery of positions available outside of the time period within which the plaintiff submitted her employment applications. That is not the case here.

And in any event, Plaintiffs here are not limited to discovery of evidence which would support their *prima facie* case, nor do they have to make out a *prima facie* showing at all.  Plaintiffs could very well present a direct evidence case, without having previously made a *prima facie* showing. *Prima facie* showings are only made by plaintiffs in opposing motions for summary judgment, which is also not the stage at which this case is at.

**12**

5. **Request for Production of Documents 12**:

   Plaintiffs incorporate by reference their explanation and showing of relevance as detailed above

under "**Interrogatory 8**, **Interrogatory 9**, **Interrogatory 17**,  and **Interrogatory 24**". Additionally,

individuals included in this request are those who: Plaintiffs charge discriminated against Rodríguez,

created a hostile work environment for her, or where proposed by Plaintiffs as their witnesses. The

search terms defined are those which would reasonably return any communications where

discriminatory acts contained in the complaint could have occurred. Consequently, they are both

sufficiently narrowly tailored to lead to discoverable, relevant and admissible evidence.

   It is a matter of record in the present case that discovery was produced by cursory, off-line, manual

searches of each individual's files,  and that GDB expects that somehow their turning over of those

documents to Counsel, solely by operation of **Fed. R. Civ. P. 11**, cured them of all suspicion of

unreliability, and set them on the path of admissibility. Nearly all the data to be presented at trial by

either party is owned and controlled by GDB, and has either been originated within GDB's Information

Technology infrastructure, or been processed through it at some point in time. Under this scenario, it

will be nearly impossible for GDB to authenticate a single piece of evidence, if it continues to move

forward under the unrealistic expectation that it will be allowed to produce only paper-based

documents, and that Plaintiffs have no other option than to take the probative worth of such

documents at face-value.

   Metadata and native electronic file format of documents differ greatly from their hard, paper,

photocopy production versions, and cannot be considered equivalent in any way, neither in technical

effect, nor in cost. The embedded data contained in the metadata of each piece of e-mail that cannot

be seen in a hard copy print-out, affords this format of production distinct advantages as far as

reliability, chain of custody and authenticity.

   Besides from what can be seen by the naked eye in a paper document, metadata also reveals

origination, author, tracking and authentication information, together with the extent of the entirety

of a string or chain of e-mails. This greatly minimizes the opportunity for GDB, whether inadvertently or otherwise, to separate pieces of e-mail chains or strings, or to separate the attachments from the transmitting e-mail, or to put the wrong attachment with an e-mail print-out, or to leave out part of a reply or chain of e-mail communications, or to omit an attachment. Production in native format results in an entirely accurate reproduction of documents, e-mails, and any attachments (also in native format), which OCR scanning of hard copies cannot and do not guarantee. Native format also allows viewing and ascertainment of who received "BCC" or blind copies of e-mails. By contrast, the printing out of e-mails off an addressee's ("To" or "CC") computer (instead of the Author's computer) does not show "BCC" or blind copy recipients.

Courts have refused to consider paper printouts as equivalents of electronic records, unless they are capable of reliably containing and displaying all significant material contained in the electronic format. " . . . *the two documents cannot accurately be termed "copies"-identical twins-but are, at most, "kissing cousins." . . . perhaps distant ones . . ."*. *Armstrong v. Executive Office of the President, 1 F.3d 1274, 1283 (1993)*. Courts have also held that e-mail embedded metadata is a far more reliable way of authenticating documents. "*The full email "header" contains technical information that more accurately reveals the sender of the email than the more easily manipulated "from" field, which simply recites an email address associated with the sender.*" *Air-Products and Chemicals, Inc. v. Inter-Chemical, Ltd., 2005 WL 196543, at *4, n.3 (E.D.Pa.)*.

**6. Request for Production of Documents 15:**

See Plaintiffs' explanation and showing of relevance for requests: **Interrogatory 8**, **Interrogatory 9**, **Interrogatory 17,** and **Interrogatory 24**, above. Plaintiffs are also agreeable to review of the requested documents through an *in camera* proceeding, with "masking" of personal identifiers or other personal sensitive information of the documents reviewed.

### (4) DEFENDANTS' SPECIFIC REASONS FOR WHY THEY ARE OBJECTING
**Reaction to Plaintiffs' Articulation of Relevance**[1]

---

[1] The Court ordered plaintiffs to specify why each request was relevant to this case. Instead of addressing each request

## 1. Interrogatories 8 and 9:

Plaintiffs do not limit these requests to the departments in which Rodríguez worked or the time period of the alleged discriminatory actions and they have been unable to establish a particularized need for the information requested and the relevance to their claims as alleged in the Amended Complaint. See Prouty v. National RR Passenger Corp., 99 F.R.D. 545 (D.D.C. 1983) (finding that a request for information for all company departments was overbroad and unduly burdensome inasmuch as the case involved "an individual suit rather than a class action and plaintiff has not shown a sufficiently particularized need for this information . . . "); Marshall v. Westinghouse Electric Corporation, 576 F.2d 588, 592 (5th Cir.1978) ("in the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination-the employing unit or work unit . . . . To move beyond that focus the plaintiff . . . must show a more particularized need and relevance."). See also Earley v. Champion Int'l Corp., 907 F.2d 1077, 1084 (11th Cir. 1990).

Plaintiffs aver that they need not characterize their claims as either "disparate treatment" or "disparate impact" and that such characterization would be inconsequential. Whether plaintiffs' claims are disparate treatment or disparate impact claims, however, is significant both for the affirmative defenses that have to be raised and precisely for the type of evidence relevant to establish the discrimination. Plaintiffs admit that the pleadings raise only claims of *intentional* discrimination, an element not present in disparate impact cases. In fact, they have not identified a facially neutral policy that falls more harshly on one group than another group. They did not do so in the Complaint, Amended Complaint or ISC Memorandum. Accordingly, no disparate impact challenge is possible. See Raytheon Co. v. Hernández, 540 U.S. 44 (2003) ("[b]ecause 'the factual issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminatory impact on protected classes,' courts must be careful to distinguish between these theories" (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252, n. 5 (1981));

separately, plaintiffs include one generalized discussion, leaving defendants the task of guessing what part of the discussion applies to which interrogatory.

Healey v. Southwood Psychiatric Hospital, 78 F.3d 128, 131 (3d Cir. 1996) (noting that "[a]nalysis under [adverse] impact is not appropriate where plaintiff claims injury based on a facially discriminatory policy."); Robbins v. Camden Citiy Bd. of Educ., 105 F.R.D. 49, 56 (D. N.J. 1985)("[s]ince the disparate impact theory of recovery does not apply, discovery in this matter must be tailored to meet plaintiff's reasonable needs in the disparate treatment setting"); Bramble v. American Postal Workers, 135 F.3d 21, 26 (1st Cir. 1998).

**2.      Interrogatories 17 and 24:**

Plaintiffs have failed to articulate how the information requested in these interrogatories would lead to evidence supporting their discrimination claims. Plaintiffs claim that they are not limited to discovery of evidence which would support their *prima facie* case of discrimination and that they could "very well present a direct evidence case." This, even though there has been no mention whatsoever in any of the pleadings before this Court of any direct evidence of discrimination. Direct evidence is evidence which, if believed, proves the fact without inference or presumption. See Fernandes v. Costa Brothers Masonry, Inc., 199 F.3d 572, 581-83 (1st Cir.1999). In the discrimination context, it comprises *statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision*. See Febres v. Challenger Caribbean Corp., 214 F.3d 57, 60 (1st Cir.2000). It is difficult to even imagine that any such direct evidence of discrimination could be found in the documents and information sought in these requests regarding other positions for which plaintiff did not apply, at different times and presumably involving different decision-makers.

In further support for their request, plaintiffs state that the information sought could suggest that not only plaintiff Rodríguez was discriminated against, but others as well. We reiterate that this is an individual disparate treatment case, not a disparate impact case nor a pattern and practice allegation. Pattern and practice claims, by definition, sweep more broadly than individual disparate treatment claims. "Pattern and practice suits, by their very nature, involve claims of *class-wide* discrimination. Such claims involve an allegation that the defendant's actions constitute a pattern of

conduct in which the defendant intentionally has discrimination against the plaintiff's protected *class*."

See I Barbara Lindemann & Paul Grossman, Employment Discrimination Law 44 & n. 168 (emphasis added). To this effect, the pattern and practice theory of recovery is limited to class or government actions. A private pattern and practice suit, would also have to comply with the procedural requirements of Rule 23 of the Federal Rules of Civil Procedure inasmuch as it seeks recovery for class-wide violations. Since plaintiffs' allegations in this case are limited to the discriminatory treatment to which Rodríguez was allegedly subject at the GDB, a pattern and practice claim is unavailable to her. Therefore, any evidence requested for such purposes is irrelevant to this case.

Plaintiffs also state that the discovery requests are the only available evidence through which plaintiff and others "similarly situated" can be aggregated and compared as to how they are treated based on whether they are part of a protected group or not. Plaintiffs, however, have failed to show how the broad requests regarding *all* promotions and *all* vacancies in the GDB in a period of 3 years, regardless of the position or decision-makers involved, would provide information of employees "similarly situated" to Rodríguez. In this regard, the Court of Appeals for the First Circuit has repeatedly recognized that, "[a]s with all such comparative evidence, it is the plaintiff's burden to demonstrate that she is comparing apples to apples." Rathbun v. AutoZone, Inc., 361 F.3d 62, 76 (1st Cir. 2004). Thus, Rodríguez would have to "provide a suitable provenance for the evidence by showing that others similarly situated to h[er] in all relevant respects were treated differently by the employer." Conward v. Cambridge Sch. Comm, 171 F.3d 12, 20 (1st Cir.1999). See also Rodríguez- Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21 (1st Cir.1999). Plaintiffs' request, as stated, does not provide a sufficient basis to determine that the evidence that could be uncovered would be probative of anything, let alone of discrimination against her based on age or sex. See Hillstrom v. Best Wester TLC Hotel, 354 F.3d at 32 ("absent evidence of the characteristics of the universe of employees . . . figures are not probative."). See also International Bhd. of Teamsters v. United States, 431 U.S. 324, 335-36 n. 15 (1977); EEOC v. Federal Reserve Bank of Richmond, 698 F.2d 633, 646-47 (4th Cir. 1983), rev'd on other grounds sub

nom,  Cooper v. Federal Reserve Bank of Richmond, 467 U.S.867 (1984); Bilingual Bicultural Coalition v.

FCC, 595 F.2d 621, 629 n.33 (D.C. Cir. 1978); Arce v. Aramark Corp., 239 F.Supp 2d 153, 163 (DPR 2003).

**3.  Request for production of documents 12:**

Plaintiffs only address the issue of metadata yet fail to articulate the relevance of the information

requested or how the proposed parameters have been tailored to the case or are reasonably

calculated to lead to the discovery of admissible evidence. In order to avoid repetition, please refer to

the discussion regarding this request in Part (2) of this motion.

**4.  Request for production of documents 15:**

Plaintiffs' generalized discussion of relevance fails to identify what documents from the employee

files specifically they would like to obtain and why they would be relevant to their contentions. Nor

have they articulated what information it is that they expect to find in those employees files and how

they would be relevant to this case. Plaintiffs simply do not know what they are searching for and are,

in essence, engaging in a fishing expedition in the hopes of finding something that would help their

case. This is simply not enough to permit this discovery. See Aponte-Torres v. University of P.R., 445

F.3d 50, 59 (1st Cir. 2006)("[t]he discovery rules are not intended as a broad license to mount serial

fishing expeditions"); Marshall v. Westinghouse Electric Corporation, 576 F.2d 588, 592 (5th Cir.1978)

(rule that allows plaintiff to discovery information to establish discrimination claim "does not . . .

permit plaintiff to 'go fishing' and a trial court retains discretion to determine  that a discovery request

is too broad and oppressive").

Moreover, in the absence of a showing of relevance, plaintiffs have failed to counter the privacy

interest of the non-parties whose files they seek. As other Courts have held:

> personnel files often contain sensitive personal information . . . and it is not
> unreasonable to be cautious about ordering their entire contents disclosed willy-nilly.
> Indeed, the Supreme Court has underscored that "the requirement of Rule 26(b)(1) that
> the material sought in discovery be 'relevant' should be firmly applied, and the district
> courts should not neglect their power to restrict discovery [to protect] 'a party or
> person from annoyance, embarrassment, [or] oppression . . . .'"

<u>Regan-Touhy v. Walgreen Company</u>, 526 F.3d 641, 648-49 (10th Cir. 2008). <u>See also</u> <u>Gehring v. Case</u>

<u>Corp.</u>, 43 F.3d 340, 342 (7th Cir.1994) (no abuse of discretion where "privacy interests, coupled with

[the district court's] determination to keep the trial focused ..., justified limiting [plaintiff's discovery of]

personnel files"). Viewing other employees' files in camera only *partly* addresses the privacy issues

raised herein but it certainly does not serve to establish the relevancy of the documents.

### PLAINTIFFS' EXPLANATION OF WHAT INFORMATION THEY ANTICIPATE FINDING IN THE NATIVE FORMAT
**<u>Interrogatory 8</u>, <u>Interrogatory 9</u>, <u>Interrogatory 17</u>,  and <u>Interrogatory 24</u>**

   Below are paraphrased excerpts - the original documents were made part of the record as exhibits

to the motion to compel at issue -  of the information that can be easily obtained from the Lawson

Human Resources Software, and which fall squarely within the scope of  these discovery requests

(obtained from http://www.lawson.com):

- Reporting Personnel Administration provides a wealth of standard reports that let you view and analyze employee information, such as wage analysis reports that simplify compensation planning. It even helps you create special reports for government reporting. Whether you need a simple listing of employee information or comprehensive data analysis, Personnel Administration provides the reporting capability to generate the information you need: Recruiting, Payroll, Workforce Analytics, Other Analytical Solutions, Headcount and Turnover Data Mart.
- View, update and verify a variety of data, including date of birth, dependents, education, certifications and other competencies. Define training tracks, courses, sessions. Updates competencies, where appropriate. View key milestones such as hire dates, adjusted hire dates, length of service and birthdays.
- View open job requisitions and the attributes or detail of each requisition. Enter a request to fill an open position, in compliance with position or job rules. View direct reports' salary histories, including point-in-time details. Initiate personnel actions in accordance with organization-defined standard processes.
- Track and update competencies, explore careers, define goals and action plans, manage certifications, register for training and navigate to related links. View professional profile of competencies. View attributes of a position, employee/position specific data and job postings applied for.
- Ranks and scores candidates, manages relationships with promising applicants and submits job offers, giving you a single point of entry for all critical data. Providing a preliminary assessment and interview of each applicant to determine the degree to which the skill set matches the position requirements. Identifying only those applicants who are qualified for the position.

### 5. <u>Request for Production of Documents 12</u>:

   Plaintiffs expect to receive from this request a greater margin of success rate in finding relevant

documents under the control of GDB by ESI retrieval, than the dated method under which their

disclosures and production was made. Also, just by its informal nature, e-mail has encouraged senders to write unguarded, unwise and often inappropriate comments they would never say to a person directly to their face, or write in a printed letter. Historically, these unguarded comments have found their way into litigation as smoking guns and admissions of liability. *Dewey Partner's E-Mail Causes Upset Over Racial Insensitivity*, N.Y. L.J,  1/28/2004; *Inappropriate use of e-mail and the Internet in the workplace: the arbitration picture*, 59 Disp. Resol. J. 26 (2004); *The Lewinsky Story Is a Tale Spun Out of Cyberspace: And Therein Lies a Drawback of E-Mail: It's Difficult to Ever Really Delete It*, The Wall Street Journal, Sept. 22, 1998, at A1.

Plaintiffs therefore expect to find in the communications a pervasive showing of discriminatory animus against plaintiff Rodríguez, in the form of derogatory and demeaning references, exclusion from meetings, communications and work activities, and general disregard for her capabilities and willingness to  make a professional contribution to GDB.

**WHEREFORE**, the parties respectfully request that this Honorable Court take notice of the above.

**RESPECTFULLY SUBMITTED**,  In San Juan, Puerto Rico, this 2nd day of November, 2009.

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

| | |
|---|---|
| **CUADROS & CUADROS**<br>Attorneys for Plaintiffs | **SCHUSTER AGUILÓ LLP**<br>Attorneys for Defendants |
| 701 Ponce de León Ave., Suite 215 | PO Box 363128 |
| San Juan, Puerto Rico 00907 | San Juan, Puerto Rico 00936-3128 |
| Tel. (787) 725-2652; (718) 725-7387 | Tel: (787) 765-4646; Fax: (787) 765-4611 |
| **S/William Meléndez Menéndez**<br>**William Meléndez Menéndez**<br>USDC PR No. 226902<br>We.Melendez@e-Lex.us | **s/Mariela Rexach-Rexach**<br>**Mariela Rexach-Rexach**<br>USDC PR No. 214110<br>mrexach@salawpr.com |