**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| VICKY RODRÍGUEZ TORRES, et al. | **CIVIL No. 09-01151-JP** |
| Plaintiffs | |
| v. | TITLE VII AGE & GENDER DISCRIMINATION, TORTS |
| Government Development Bank P.R., et al. Defendants | TRIAL BY JURY |

**Opposition to URGENT MOTION FOR PROTECTIVE ORDER, re: Doc.# 200**

**TO THE HONORABLE COURT**:

Come now all plaintiffs through the undersigned counsel, in compliance with Order as set forth in **Doc.# 201**, on November 4th 2009, and respond to Defendants' urgent motion for a protective order - **Doc.# 200** - as follows:

**1.** In **¶ 2** co-defendant GDB asserts that subpoenas served on third parties by Plaintiffs, and notified to the Court and all parties of interest through **Doc.# 194**,  is in violation of this Court's Order as set forth in **Doc.# 191**, *Amended Initial Scheduling Conference Memorandum*. GDB does not point specifically to the language containing an applicable prohibition against issuing third-party subpoenas, but for purposes of this discussion, Plaintiffs will have the courtesy  of surmising  that GDB refers to section "*VII. DOCUMENTARY EVIDENCE*", at page 18, where it states that: "*No other documents, including documents intended to be used solely for impeachment purposes, will be admitted without leave of Court.*".

**2.** GDB over-reads this language. Plaintiffs, on the other hand, read the language in the context of the whole Order, and propose a much narrower interpretation, as a ***prohibition from presenting yet unidentified documents solely at trial, and without prior leave of Court***.

Plaintiffs also find that the cited text also fails to establish a strict discovery cut-off date, or a blanket prohibition from procuring documents for any other alternative purpose. Further, the very next sentence in the Order, sets November 23rd 2009 as the deadline until which parties may file a motion requesting leave of court to have yet unidentified documents admitted at trial. All this would tend to contradict GDB's assertion that **Doc.# 191** effectively terminated all discovery in the present case.

3. Here, Plaintiffs merely served subpoenas on third parties, and still have ample time to move the Court to admit any documentation at trial that is so produced in their compliance. Plaintiffs also preserve and have full discretion to utilize such documentation for any other motive, even if yet undisclosed, and yet undetermined, without giving any attention or consideration as to how ulterior or underhanded GDB chooses to characterize Plaintiffs' intentions as.

4. In **¶ 5** GDB asserts that the Court through **Doc.# 179**, by "*holding in abeyance pending discovery issues*", effectively precluded further discovery of information potentially obtainable through the subpoenas served by Plaintiffs.

5. GDB both miss-reads and over-reads **Doc.# 179**. Plaintiffs, on the other hand, read **Doc.# 179** more specifically, and propose a much narrower interpretation for it, as holding in abeyance **Plaintiffs' motion to compel discovery**, and not a blanket stay on consideration of any and all pending discovery issues, and closing-off completely the discovery phase in the present case.

6. Here, Plaintiffs merely served subpoenas on third parties, and are still awaiting the Court's resolution of the *Joint Informative Motion* (**Doc.# 198**), filed in compliance of **Doc.# 179**. It is still undetermined what pending discovery requests will be granted by the Court, and within those requests, which ones GDB will ultimately choose to comply with. Plaintiffs still have

ample time to move the Court to admit any documentation at trial that is produced via the subpoenas at issue. They also preserve and have full discretion to utilize such documentation for any other motive, even if yet undisclosed, and yet undetermined, without affording any attention to how ulterior or underhanded GDB chooses to characterize such intentions as.

7. In **¶ 5** GDB asserts that Plaintiffs – through the *Joint Informative Motion* (**Doc.# 198**) – renounced, or surrendered, their rights to obtain the full discovery due to them, in the process of reaching some agreements as to the contents of such joint motion.

8. GDB would do well to be more cautious not to over-read the extent of what they perceive as Plaintiffs' generosity in **Doc.# 198**. **Doc.# 179 o**rdered the parties to ***agree as to the selection of the ESI Specialist who would prepare a cost and time estimate*** of producing Plaintiffs' ESI discovery requests. Period. The rest of **Doc.# 179** ordered: (1) Plaintiffs to articulate pending discovery requests; (2) Defendants to present their objections as they previously stated them in broad, canned, pro-forma pleadings; (3) Plaintiffs to make a showing of their requests' relevance; (4) Defendants to explain their original objections, beyond making blanket "burdensome" assertions; (5) Plaintiffs to explain what they expected to find in the requested discovery of ESI.

9. **Doc.# 179** did not order, and the parties made no further agreements whatsoever, regarding other discovery requests, or any further pending discovery efforts. GDB's assertions that **Doc.# 198** put to rest all pending discovery is belied by the "*Scope Definition Document*", also jointly filed, and made part of the record in that very same **Doc.# 198,** which ***addresses only ESI discovery requests of evidence under the control of GDB***. Period.

10. Even the most cursory glance at **Doc.# 198** 's "*Scope Definition Document*" reveals that it is a re-arrangement of the same ESI discovery requests contained in Plaintiffs' motions to

compel discovery, **Doc.# 160** and **Doc.# 164**, with somewhat more specificity in regards to the "key-word" search and retrieval definitions. Period. This was not a result of a deliberative process between the parties - of "*discussion*", and "*agreement*", as GDB suggests in its ¶ **5**, above, nor was there any "give-and-take" between the parties. If anything, Plaintiffs did all the "*giving*" – reducing or consolidating discovery requests from twenty-two (22), to a meager five (5), and agreeing to GDB's appointment of an ESI Specialist with whom a truly independent and arms-length relationship they do not preserve. GDB, consequently, did all the "*taking*", by failing even to make the most minimal concession or compromise with regards to their original and recalcitrant stance of adamantly refusing to comply with Plaintiffs' discovery requests.

11. Here, Plaintiffs merely served subpoenas on third parties, and GDB's continued stance, much as it has been previously to any discovery efforts made by Plaintiffs, is to issue blanket, canned, pro-forma statements of startling language akin to ever-developing, poor-man's soap-operatic proportions, like "*impermissible*", "*improper*", "*troubling*", but wholly unsupported by legal authority.

12. In ¶ **6** GDB invokes the protection of **Fed. R. Civ. P. 26(c)(1)**.

13. GDB seriously over-reads the coverage of this rule, in what represents their most unfortunate choice of legal authority.

14. Here, Plaintiffs merely ***served subpoenas on third parties***, and consequently the document production is to be made by such third parties, not GDB. Further, **26(c)(1)**, above, is ***available to persons from whom discovery is sought***, which is therefore not extensible to GDB. Additionally, once again GDB shows its cavalier attitude towards the cited rule and Local Rule 26(b) requirement of certification of good-faith attempt to confer, which was not filed with **Doc.# 200**.

## II. DISCUSSION

15. Plaintiffs have sufficiently set forth their contentions to boilerplate, canned objections, devoid of any specificity in **Doc.# 160** and **Doc.# 164**, and have made adequate showings of relevance in **Doc.# 192** and **Doc.# 198**, and therefore need not go any further here in that regard.

### *Joint Informative Motion* - **Doc.# 198**

16. Plaintiffs are, however, urged to react to GDB's continued misleading assertions in **Doc.# 200**, at page 3, that somehow, " . . . *information requested by subpoenas was renounced . . .* ", and that Plaintiffs were, " . . . *leading Defendants to believe that plaintiffs had desisted from these particular, irrelevant requests, . . .* ", as to somehow suggest that Plaintiffs had all of the sudden been bedazzled by GDB's legal argumentation in support of their opposition to comply with discovery requests. Nothing further from the truth.

17. GDB presents in support of the above, **Exhibit 1** to **Doc.# 200**, a letter where Plaintiffs state the "***requests we intend to pursue***". No serious reading of said letter, read within the context of **Doc.# 179**,  can lead anyone to the conclusion – not even under the "*moron in a hurry test*" common to Intellectual Property litigation (See: *20 Intellectual Property Journal 177, 232 (2007)*) -  that Plaintiffs were giving away all their discovery rights, in exchange for nothing.

18. As discussed above, it was Plaintiffs who yielded to GDB's unreasonable stances, in order to streamline the process of complying with **Doc.# 179**, and its twenty (20) page limit to be shared amongst the parties. As the litigants with the scarcest resources, it was Plaintiffs who could not withstand the sanctioning provisions as laid-out in **Doc.# 179**, and who were effectively under the gun to expeditiously file the resulting **Doc.# 198**. Notwithstanding the above, Plaintiffs did not do so at the expense of "*renouncing*" to or "*desisting*" from anything.

19. GDB's recalcitrant and adamant refusal to compromise as to anything is best evidenced by the first draft of the "*Scope Document*" proposed by Plaintiffs, **Exhibit 1** - DRAFT SCOPE DOCUMENT, how it was marked up during the meeting, and how it compares to what was finally filed with **Doc.# 198**.

20. GDB also refused to follow for the production of ESI what are considered the industry's "best practices" in electronic discovery as proposed by Plaintiffs, and as laid out by the Electronic Discovery Reference Model (http://www.edrm.net), and the "staged discovery" principle under **Fed. R. Civ. P. 26(b)(2)(B)**, *Manual for Complex Litigation, Fourth*, and *O'Bar v. Lowe's Home Centers, Inc*, 2007 WL 1299180, at *7. GDB also adamantly refused to have the "*Scope Document*" make any mention of their refusal to follow established ESI protocol.

21. In the meeting between the parties to discuss the above draft, Plaintiffs were assured by GDB that ESI discovery requests, if so ordered by the Court, would be produced under the following anomalies:

    a.  that GDB lacks any "Records Management Program";

    b.  that GDB has no formal backup and restore policy;

    c.  that ESI custodians under the scope of the examination randomly and continuously destroy relevant evidence, and that no provisions were going to be made for recovery of deleted data;

    d.  that GDB would refuse to appoint and make available a **Fed. R. Civ. P. 30(b)(6)** IT professional as a witness to attest as to any of the above, or assist in the designation of who would at trial be able to authenticate any proposed pieces of evidence from an ESI origin.

22. Plaintiffs were  further warned at the above meeting, that the only assurance GDB would furnish as to the reliability and completeness of any ESI was attorney certification

under **Fed. R. Civ. P. 11**. To Plaintiffs, this was, and continues to be, unacceptable, and the equivalent of only a "*hall-pass from their mother*". Indeed, taken to its logical conclusion, GDB's pretentiousness and argument that their **Fed. R. Civ. P. 11** certification is to be taken at face value encourages their continued, arbitrary and capricious, acute moral hazard behavior in the discovery process, that is ultimately promoting GDB's defiance to their procedural obligations.

23. Having said all of the above, Plaintiffs will refrain from emulating GDB's propensity to engage in "scope creep", or their unconstrained expansion of the discussion of **Doc.# 179** and **Doc.# 198**, beyond those filings' initially anticipated constraints and boundaries. Plaintiffs reserve their right to further challenge GDB's ESI production, if any ever is tendered, at the proper time: once the Court rules on **Doc.# 179** and GDB, if they are finally compelled to produce, complies with such an order.

24. Getting back to the strict scope and requirements as set forth by the Order in **Doc.# 179**, Plaintiffs' cooperation leading to the filing of **Doc.# 198** was barely meant to smooth the progress of only that, putting together the *Joint Informative Motion*. If there is any procedural uncertainty, or lingering doubt whatsoever, as to what Plaintiffs actually committed to in the process of complying with **Doc.# 179**, it must be put to rest immediately by virtue of the following:

    a. Plaintiffs' cooperation does not stand for the proposition that they have waived any procedural rights;

    b. Plaintiffs intent to use all discovery mechanisms available until the Court establishes a firm and certain and reasonable discovery cut-off date;

    c. Plaintiffs reserve their right to use any evidence so discovered for any purpose they determine to be fit, including, but not limited to:

    i.   Move the Court to admit it at trial;

    ii.   Oppose dispositive motions;

    iii.   Support dispositive motions;

    iv.   Support motions *In Limine*;

    v.   Support motions for default judgment;

    vi.   Support motions for sanctions for discovery abuse;

    vii.   Support any and all other pre-trial motions that might become necessary in the remainder of this litigation.

    d.   Plaintiffs intent to exercise their right under **Doc.# 191** to move the Court to admit additional witnesses and documents at trial until the established due date of November 23rd 2009.

25. GDB continuously makes reference in **Doc.# 200** to Plaintiffs' alleged "*agreement*" of "*renunciation*", but fail to identify what GDB ever gave in return to support such a "*contract*". If any attention is given to the most basic form of contract formation under common law (offer, acceptance and consideration), GDB gave no consideration in exchange for Plaintiffs' "*offer of renunciation*", and therefore such an "*agreement*" would necessarily fail for the absence of GDB's consideration to support it. The "*agreement*" would also necessarily fail for its illegality and for being against public policy, let alone its unconscionability, both Procedural and Substantive. How could mentally competent Plaintiffs, in their right mind, opt for giving away their right to discover evidence, in exchange for nothing?

## GDB LACKS STANDING TO OPPOSE SUBPOENAS

26. The subpoenas at issue were served by Plaintiffs on public entities, requesting the production of public documents. GDB, having refused to produce such documents as

part of their initial disclosures or in complying with Plaintiffs' discovery requests, have no duty to comply with the subpoenas, and therefore have no burden of production.

27. **Fed. R. Civ. P. 45(c)** governs the protection of those on whom subpoenas have been served, and lays-out the procedural mechanisms to oppose them, yet GDB fails to even mention *45(c)* in **Doc.# 200**. The Rule provides an important and articulated inclusion of a number of protections, *only for the person served with a subpoena*. GDB, predictably, makes the boilerplate, canned objections of "*burdensome*", but these, even if and when available, are only actionable by the person served, not by GDB. A motion to quash, or for a protective order, should be made by the person from whom the documents or things are requested. *Vogue Instrument Corp. v. Lem Instruments Corp., 41 F.R.D. 346, 348 (S.D.N.Y., 1967)*.

28. GDB, therefore, even as a party to the current action, has no standing to seek a protective order to invalidate a subpoena issued to someone who is a third party, and who is not part of the current litigation. *In re Seagate Technology II Securities Litigation, Fed. Sec. L. Rep. P 97,633 (1993)*.

29. GDB, having failed to meet the minimum constitutionally required element of standing, should therefore be denied the prayed for relief in **Doc.# 200**.

**WHEREFORE**, for all of the above, Plaintiffs pray this Honorable Court:

**Take NOTICE** of all of the above;

**DENY** GDB'S prayer of relief in **Doc.# 200**.

**Submitted today, November 6th 2009, in New York, New York.**

**S/William Meléndez Menéndez**
William Meléndez Menéndez
USDC-PR No. 226902

**CERTIFICATE OF SERVICE**

9

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for defendants and all other parties of interest.

<u>**S/William Meléndez Menéndez**</u>
William Meléndez Menéndez
USDC-PR No. 226902

William E. Meléndez **|** We.Melendez@e-Lex.us **|**718.725.7387
410 Park Avenue **|** New York, NY 10022
Cuadros & Cuadros **|** 701 Ponce de León Ave. Suite 215 **|** San Juan, Puerto Rico 00907