IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| VICKY RODRÍGUEZ TORRES, ET AL. | CASE NO.: 09-CV-01151-JP |
| Plaintiff | SUBJECT MATTER: TITLE VII VIOLATIONS, AGE & SEX |
| vs. | DISCRIMINATATION, TORTS |
| GOVERNMENT DEVELOPMENT BANK FOR PR, ET AL | PLAINTIFF DEMANDS TRIAL BY JURY |
| Defendants | |

## CODEFENDANT CHARTIS'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

**TO THE HONORABLE COURT:**

**COMES NOW,** Codefendant Chartis Insurance Company – Puerto Rico (hereinafter "Chartis" or "The Insurer") through the undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, very respectfully moves for partial summary judgment. In support thereof, the appearing party states and prays as follows:

### I.    PRELIMINARY STATEMENT

This is an action for alleged employment discrimination and related violations of the constitutional rights of Plaintiff Vicky Rodríguez Torres, an employee of codefendant Government Development Bank for Puerto Rico ("GDB"), the Insured. Mrs. Vicky Rodriguez Torres (hereinafter "Plaintiff") filed the

Motion Requesting Partial Summary Judgment
Civil Case No. 09-1151 (JP)
Page 2 of 21

present case naming as co-plaintiff her husband Luis Rafael
Maldonado Vaillant and their conjugal partnership.[1]

Plaintiff filed causes of action against GDB, its officers
and the Insurer of alleged age and gender discrimination under
the provisions of the Age Discrimination and Employment Act
(ADEA), 29 U.S.C. § 626, The Lilly Ledbetter Fair Pay Act of
January 29, 2009, Title VII of the Civil Rights Act of 1964
(Title VII), 42 U.S.C. § 2000e, the Local Law 100 of June 30,
1959, 29 L.P.R.A. § 146 and Local Law 69 of July 6, 1985, 29
L.P.R.A. § 1321. Plaintiff also filed a claim under 42 U.S.C. §
1983, for the alleged violation of her constitutional rights
under the United States Constitution and the Constitution of the
Commonwealth of Puerto Rico. Plaintiffs also requested
compensatory damages pursuant to Articles 1802 and 1803 of the
Civil Code of Puerto Rico. Supplemental jurisdiction was invoked
pursuant 28 U.S.C. §§ 1367.

Chartis submits this Memorandum of Law in Support of its
Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P.
56 and Local Rule 56. Looking at the pleadings and additional
evidence in the light most favorable to Plaintiffs, there is no
genuine issue of material facts, and the Insurer is entitled to

---

[1] The conjugal partnership is named in the caption of the Amended Complaint as
a co-plaintiff but it is not identified as a party in Section III. Parties,
nor any damages are identified as suffered by the conjugal partnership in the
body of the pleading.

Motion Requesting Partial Summary Judgment
Civil Case No. 09-1151 (JP)
Page 3 of 21

a judgment as a matter of law.  The applicable policy does not provide coverage for some remedies requested and claims instituted by Plaintiffs against GDB, the Insured, and Chartis, the Insurer.

## II.  **SUMMARY OF MATERIAL FACTS**

Plaintiffs' prayer for relief in the *Amended Complaint* includes, among others, the following: (1) That this Court award the plaintiff unpaid wages and other compensation to date, as well as the corresponding sum for unpaid wages and other compensations for each day that elapses until the plaintiff is properly promoted to the above job classification; (2) That this Court award the plaintiff damages in the form of compensatory damages in the amount of $600,000.00 for medical expenses and physical pain and suffering, and $800,000.00 for psychological pain and anguishes; (3) That this Court award the plaintiff liquidated damages as provided by the ADEA; (4) That this Court award plaintiff back pay, and other damages, including, but not limited to, costs, disbursements; and (5) the award of punitive and exemplary damages. (See SUMF at ¶ 1).

Chartis, then American International Insurance Company of Puerto Rico, Inc. ("AIICO") issued policy number 025-001000988 a *Financial Lines Employment Practices Liability Insurance Policy* (hereinafter "the Policy") to codefendant Government Development

Motion Requesting Partial Summary Judgment
Civil Case No. 09-1151 (JP)
Page 4 of 21

Bank for Puerto Rico (hereinafter "GDB") for the period of July 30th, 2008 to June 30th, 2009 (Policy Period). (See SUMF at ¶ 2).

Pursuant to the terms of the Policy an "Employee" is defined as "any past, present or future employee, whether such employee is in supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary Employee in his or her capacity as such.  An individual who is leased to the Company shall also be an Employee, but only if the Company provides indemnification to such leased individual in the  same manner as is provided to the Company's employees.  Any other individual who is contracted to perform work for the Company, or who is an independent contractor for the Company shall also be an Employee, but only if the Company provides indemnification to such  individual in the same manner as that provided to the Company's employees, and such individual is scheduled by written endorsement attached hereto and the Company pays any additional premium required by the Insurer relating to such individual. (See SUMF at ¶ 3). The allegations of "Employment Practices Violations" covered by the Policy are the ones that relate to an Employee(s) or applicants for employment. (See SUMF at ¶ 4).

The definition of "Loss" under the Policy excludes from coverage the imposition of civil or criminal fines or penalties

Motion Requesting Partial Summary Judgment
Civil Case No. 09-1151 (JP)
Page 5 of 21

imposed by law; punitive or exemplary damages; the multiplied portion of multiplied damages; "Employment Related Benefits", stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation.(See SUMF at ¶ 5). The Policy establishes that the term "Employment Related Benefits" means any type of compensation (other than wages, salary, back and front pay, or bonus) provided by virtue of employment, including but not limited to stock options, perquisites, pension and welfare plan benefits, deferred compensation, and severance payments equal to three months salary of any claimant which shall be presumed. (See SUMF at ¶ 6).

Finally, under Section 4, the Policy establishes that "The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

   (h) for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof" (See SUMF at ¶ 7).

### III. **THE SUMMARY JUDGMENT STANDARD**

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 324-25
(1986); Byrd v. Ronayne, 61 F.3d 1026 (1st Cir. 1995); Pagano v.
Frank, 983 F.2d 343, 347 (1st Cir. 1993). The moving party bears
the initial burden of proof to show that the nonmoving party
lacks the evidence to support their case. See Celotex Corp., 477
U.S. at 325. It is a well settled norm that "[s]ummary judgment
is appropriate where, after drawing all reasonable inferences in
favor of the nonmoving party, there is no genuine issue of
material fact for trial." Astoria Jewelry v. N. Barquet, Inc.,
291 F. Supp. 2d 16, 21 (D.P.R. 2003) (*citing* Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 249 (1986)).

When the moving party satisfies its initial burden of
proof, the burden shifts to the nonmoving party to "show that
sufficient evidence supporting the claimed factual dispute
exists to require a jury or judge to resolve the parties
differing versions of truth at trial." Astoria Jewelry, 291 F.
Supp. 2d at 21 (*citing* First Nat'l Bank of Ariz. v. Cities Serv.
Co., 391 U.S. 253, 288-89 (1968)). See also Maldondado-Denis v.
Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Febus-
Rodríguez v. Betancourt-Lebrón, 14 F.3d 87, 90-91 (1st Cir.
1994). It is also a well settled rule in this Court that a

party opposing summary judgment "may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial." Id. See also Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1992).

As recognized by the First Circuit, "the party to whom the motion is directed can shut down the machinery only by showing that a trial worthy issue exists." McCarthy v. Northwest Airlines, 56 F.3d 313, 315 (1st Cir. 1995). See also National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). In order to "block" summary judgment, neither conclusory allegations, improbable inferences, insufficient speculation, brash conjectures nor earnest hope is sufficient.  See McCarthy, 56 F.3d at 315.  See also Crawford v. Lamantia, 34 F.3d 28, 31 (1st Cir. 1995).

The Statement of Uncontested Material Facts and the Present Memorandum of Law will show that there are no genuine issues of material facts in controversy, and that Chartis, the Insurer, is entitled to a partial summary judgment regarding the terms of its policy.

## IV.  **LEGAL ARGUMENT**

Chartis moves for partial summary judgment against Plaintiffs because the Policy issued to GDB, the Insured, does

Motion Requesting Partial Summary Judgment
Civil Case No. 09-1151 (JP)
Page 8 of 21

not provide coverage for several of the claims made and remedies
requested by Plaintiffs in the *Amended Complaint*.  Chartis is
entitled to summary judgment based on the following contractual
clauses, conditions and exclusions;

1.   The Policy issued to the Insured does not provide
     coverage for several of the damages claimed by
     Plaintiff based upon the terms in the contractual
     clauses entitled Definitions and Exclusions and;

2.   The Policy issued to the Insured does not provide
     coverage for the claims asserted by co-plaintiff Luis
     Rafael Maldonado Vaillant and the conjugal partnership
     between Plaintiff and her spouse.

The application of these contractual clauses to the facts
and remedies asserted in the *Amended Complaint* clearly and
unambiguously voids coverage under the Policy.  Therefore,
partial summary judgment should be entered in favor of Chartis
based upon the Policy's provisions discussed in the following
sections.

## A.   Interpretation Rules Applicable to Insurance Policies in Puerto Rico

In Puerto Rico, insurance policies are contracts governed
by the Insurance Code of Puerto Rico, 26 Laws of P.R. Ann. §§
101-8051.   When the Insurance Code of Puerto Rico does not
provide an interpretative approach for a particular situation,
the Civil Code of Puerto Rico is used as a supplemental source
of law in interpreting the insurance contract.   See Banco De La

Vivienda de Puerto Rico v. Pagán Insurance Underwriters, 111 D.P.R. 1, 6 (1981); González v. John Hancock Mutual Life Insurance Co., 927 F.2d 659, 660 (1st Cir. 1991).

Under the Puerto Rico Insurance Code, an insurance contract is "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached to the policy". 26 Laws of P.R. Ann § 1125; PFZ Properties, Inc. v. General Accident Ins. Co., 136 D.P.R. 881, 902 (1994). When engaging in contract interpretation, contract clauses and provisions should be read in relation to one another, giving to those that are unclear the meaning which arises from considering all the clauses together. 31 Laws of P.R. Ann. § 3475. Terms should be assigned their common meanings, and any term having multiple meanings should be read in the sense that is most suitable to give it effect. 31 Laws of P.O. Ann. § 3474.

Also, it is a well established doctrine that when construing the terms of an insurance policy contract, the policy's language shall be interpreted according to its common and general usage. See In re Reinforced Earth, Co., 925 F. Supp. 913 at n.21 (D.P.R. 1996) (citing Morales-Garay v. Roldán-Coss, 110 D.P.R. 701 (1981)). Article 1233 of the Puerto Rico

Civil Code provides that "if the terms of a contract are clear
and leave no doubt as to the intentions of the contracting
parties, the literal sense of its stipulations should be
observed." See 31 Laws of P.R. Ann. § 3471.

Furthermore, such treatment is also given to the exclusions
contained within an insurance policy. Exclusions have to be
clear and unambiguous and shall be interpreted in accordance
with their function within the policy. If "an exclusion clause
is clear and unambiguous and applicable, then it does not afford
coverage despite whatever inferences may arise from the other
clauses of the contract. Each exclusion clause shall be read
independently from the others and according to its functions in
the policy's general agreement. Such construction shall be
seriatim, not accumulative." See Meléndez Piñero v. Levitt &
Sons, 129 D.P.R. 521, 521 (1991).

Nevertheless, Puerto Rico law requires that the exclusion
clauses of an insurance policy be interpreted restrictively,
generally favoring coverage to the insured. See Guerrido-García
v. U.C.B., 143 D.P.R. 337, 348 (1997). See also Nahan v. Pan
Am. Grain Mfg. Co., Inc., 62 F. Supp. 2d 419 at n.5 (D.P.R.
1999). "However, this praxis does not compel or require courts
to interpret a clear, unambiguous clause that favors the insurer
in a manner that would benefit the insured." Metlife Capital

Corp. v. Westchester Fire Ins. Co., 224 F. Supp. 2d 374, 382
(D.P.R. 2002) (citing Quiñones-López v. Manzano-Pozas, 141
D.P.R. 139, 155 (1996)).  See also, Nahan, 62 F. Supp. 2d at n.5
(citing Marín v. American Int'l Ins. Co., 137 D.P.R. 356 (1994).

The determination of whether the subject Policy's clauses,
conditions and exclusions are unambiguous is a matter of law.
Hence, it is capable of being decided by way of summary
judgment.  The First Circuit has held accordingly by recognizing
that, "[m]ore importantly, where a policy provision is
unambiguous and the contracting parties' intent is thus clearly
manifested in the plain language of that provision, resort to
canons of interpretation is simply unwarranted."  Littlefield v.
Acadia Ins. Co., 392 F.3d 1 at 10 (citing Eric Mills Holmes &
Marsh S. Rhodes, Holmes's Appleman on Insurance § 5.1 (2d Ed.
1996)).

It is also well settled that when an insurance policy's
language is clear and unambiguous, extrinsic evidence is
inadmissible to prove the parties' intent.  See, e.g., Andover
Newton, 930 F.2d at n.5 See also Eagle-Picher Indus., Inc. v.
Liberty Mut. Ins. Co., 682 F.2d 12, 17 (1st Cir. 1982).  The
United States Court of Appeals for the First Circuit recognized
the following well settled norm:

> When the terms of an insurance policy are found to
> be clear and unambiguous, judicial construction is

at an end.  The contract terms must be applied as written and the parties bound by them.

See St. Paul Fire & Marine Ins. Co. v. Warwick Dyeing Corp., 26 F.3d 1195, 1199 (1st Cir. 1994).

Similarly, this Honorable Court has held that:

**In sum, under Puerto Rico law, when the terms, conditions, and exclusions listed in a policy are clear and give no margin for ambiguities or differences in interpretation, they must be enforced in accordance with the will of the parties.**

See Metlife Capital Corp., 224 F. Supp. 2d at 382 (citing Quiñones-López, 141 D.P.R. at 156).

Hence, when the court can determine the meaning of a written contract without any guide other than knowledge of the simple facts on which, from the nature of language in general, its meaning depends, the terms of the contract will be deemed unambiguous.  Williston on Contracts, Fourth Edition, Richard A. Lord, 30:4, See Smalls v. State Farm, 678 A.2d 32 (D.C. 1996).

We emphasize, that obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations.  31 Laws of P.R. Ann. § 2994.  Thus, courts cannot relieve a contracting party of the fulfillment of their contractual obligations, when said contract is legal and valid.  Mercado v. U.C.P.R., 143 D.P.R. 610, 627 (1997).

Motion Requesting Partial Summary Judgment
Civil Case No. 09-1151 (JP)
Page 13 of 21

The wording of the clauses, conditions and exclusions of the Policy issued by Chartis to the Insured (GDB) are undisputedly clear and unambiguous. Hence, this Honorable Court does not need to apply the rules of construction to the Policy and its provisions must be enforced as written. See Couch on Insurance, § 21:11 (3rd ed. 2004) (noting that "it is a well settled rule that the question of construction can only arise where the language of a policy is susceptible to more than one meaning, and that clear and unambiguous clauses must be accepted as the expression of the intent of the parties, and enforced by the courts as written."). Chartis asserts that the clauses, conditions and exclusions which will be discussed in the following sections must be enforced as provided in the Policy, since their clear and unambiguous language leaves no room for differences of interpretation.

**(1) The Policy issued to the Insured does not provide coverage for all the damages claimed by Plaintiffs due to the contractual clauses entitled "DEFINITIONS §§ (i) and (m)" and "EXCLUSION § (h)".**

As stated above, Plaintiffs' prayer for relief in the *Amended Complaint* includes, among others, the following: (1) That this Court award the plaintiff unpaid wages and other compensation to date, as well as the corresponding sum for unpaid wages and other compensations for each day that elapses

Motion Requesting Partial Summary Judgment
Civil Case No. 09-1151 (JP)
Page 14 of 21

until the plaintiff is properly promoted to the above job classification; (2) That this Court award the plaintiff damages in the form of compensatory damages in the amount of $600,000.00 for medical expenses and physical pain and suffering, and $800,000.00 for psychological pain and anguishes; (3) That this Court award the plaintiff liquidated damages as provided by the ADEA; (4) That this Court award plaintiff back pay, and other damages, including, but not limited to, costs, disbursements; and (5) the award of punitive and exemplary damages. Our Emphasis (See SUMF ¶ 1).

Pursuant to the terms of the Policy "Loss" means damages (including back pay and front pay), judgments, settlements, pre and post-judgment interest, and Defense Costs. (See SUMF ¶ 3). However, Loss shall not include civil or criminal fines or penalties imposed by law; punitive or exemplary damages; the multiplied portion of multiplied damages; "Employment Related Benefits", stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation. Our emphasis. (See SUMF at ¶ 5). The term "Employment Related Benefits" means any type of compensation (other than wages, salary, back and front pay, or bonus) provided by virtue of employment, including but not limited to stock options, perquisites, pension and welfare plan benefits,

deferred compensation, and severance payments equal to three months salary of any claimant which shall be presumed. (See SUMF at ¶ 6).

Furthermore, under Section 4, the Policy establishes that "The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

> (h) for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof" (See SUMF at ¶ 7).

The aforementioned coverage definition and exclusions are clear and unambiguous.  Hence, such Policy coverage definition and exclusions must be strictly enforced.   See Nahan v. Pan American Grain Mfg. co., Inc., 62 F. Supp. 2d 419, 423 (D.P.R. 1999).   Citing the Puerto Rico Supreme Court opinion in Meléndez-Piñero v. Levitt & Sons of P.R., Inc., 129 D.P.R. 521 (1991), this Honorable Court has recognized, on numerous occasions, that:

> **If an exclusion clause is clear and unambiguous and applicable, then it does not afford coverage despite whatever inferences may arise from the other clauses in the contract.**   Each exclusion clause should read independently from the others and according to its functions in the policy's general agreement.  Such construction shall be seriatim, not accumulative.

In re Reinforced Earth, Co., 925 F. Supp. At n.21 (Emphasis Added).  See also Nahan, 62 F. Supp. 2d at 423-24.

The "Loss" and "Employment Related Benefits" definitions
and the Exclusion (h) of the Policy cited above are clear and
unambiguous.  Hence, this Honorable Court does not need to apply
the rules of construction to the Policy.  As stated in Couch on
Insurance, "it is a well settled rule that the question of
construction can only arise where the language of a policy is
susceptible to more than one meaning, and that clear and
unambiguous clauses must be accepted as the expression of the
intent of the parties, and enforced by the courts as written."
Couch on Insurance, § 21:11 (3rd ed. 2004).  See also Couch on
Insurance § 22:15 (3rd ed. 2004) ("The rule of construction
against the insurer does not apply where the meaning and
intention of the contract are clear as expressed in the
policy").

Evidently, the Policy does not provide coverage for the
following remedies asserted by Plaintiffs and/or provided by the
claims brought by the Plaintiffs in the present action:  (1)
other compensation related to the terms and conditions of
employment with GDB that is not unpaid wages;  (2) Employment
Related Benefits;  (3) punitive, exemplary or the multiplied
portion of multiplied damages;  (4) civil penalties imposed by
law;  (5) liquidated damages under ADEA;  and (6) damages for
bodily injury (other than emotional distress or mental anguish),

sickness and disease. Thus, this Honorable Court must enter summary judgment in favor of Chartis providing that as a matter of law, the Policy- the insurance contract- does not provide coverage for such remedies, if imposed in the instant action.

**(2) The Policy issued to the Insured does not provide coverage for the claims asserted by co-plaintiff Luis Rafael Maldonado Vaillant and the conjugal partnership between Plaintiff and her spouse.**

Because of the potential obstacles to coverage under traditional insurance policies, in the early 1990s the insurance industry introduced an insurance policy specifically tailored to employment practices claims, which has been referred to as the Employment Practices Liability Insurance ("EPLI") policy. See Leitner, Simpson and Bjorkman (2009) Law and Practice of Insurance Coverage Litigation, 5 Law and Prac. of Ins. Coverage Litig. § 56:1.

Employment practices liability insurance (EPLI) policies are specifically designed to provide insurance coverage for claims of wrongful discharge, sexual harassment, and other forms of employment discrimination, as well as retaliation, employment related defamation or slander, and failure to grant tenure. See Anne L. Lewis, 2001 American Bar Association: Litigating the Emp. Tort Case § 10.05.

In the instant case, Chartis issued a "Financial Lines Employment Practices Liability Insurance" to codefendant GDB.

Motion Requesting Partial Summary Judgment
Civil Case No. 09-1151 (JP)
Page 18 of 21

(See SUMF at ¶ 2). As provided in the policy's Insuring Agreement, the policy shall pay the Loss of each and every Insured arising from a Claim first made against such Insured during the Policy period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of the Policy for any actual or alleged Employment Practices Violations. (See **Exhibit 1** at page 3). Specifically, the Policy provides coverage for Loss arising out of "Employment Practices Violations" committed by an Insured. (See **Exhibit 1** at pages 4-5). What constitutes these violations is specifically defined in the Policy. (See SUMF at ¶ 4).

However, it is specified that coverage for such losses will **only** be provided if the Employment Practice Violation "relates to an Employee, or applicants for employment, with the Company or an Outside Entity, whether direct, indirect, intentional or unintentional." (See SUMF at ¶ 4). Nowhere does this clause mention that coverage will be provided to a person other than the employee, i.e. his/her spouse or conjugal partnership.

The proper construing of this clause must take into consideration how the Policy expressly defines the term "employee". (See SUMF at ¶ 3). The "definitions" section of the Policy specifically indicates:

"Employee(s) mean any past, present or future employee, whether such employee is supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary Employee in his or her capacity as such. An individual who is leased to the Company shall also be an Employee, but only if the Company provides indemnification to such leased individual in the same manner as is provided to the Company's employees. Any other individual who is contracted to perform work for the Company, or who is an independent contractor for the Company shall also be an Employee, but only if the Company provides indemnification to such individual in the same manner as that provided to the Company's employees, and such individual is scheduled by written endorsement attached hereto and the Company pays any additional premium required by the Insurer relating to such individual". (See SUMF at ¶ 4).

Accordingly, it must be reasonably concluded that any employee, as previously defined, who suffers a loss as a result of discrimination, wrongful dismissal, harassment, etc. can claim coverage under an EPL Policy.

This Honorable Court should make particular notice that nowhere in the definition of the term employee does the language of the policy suggest that a spouse or a conjugal partnership can fit into the definition of the term employee, and hence, claim coverage for a loss under the mentioned circumstances. This is because EPL policies were designed to provide coverage for losses suffered by employees arising out of the relationship with the employer. Coverage under this kind of policies is not intended for third parties. Ordinarily, complaints requesting coverage under an EPL policy are addressed to the employer and

his insurer solely by the injured employee. See for example San Miguel v. Nesco Redondo, S.E., 394 F.Supp.2d 416 D.Puerto Rico (2005) and O'Bannon v. Friedman's, Inc., 437 F.Supp.2d 490 D.Md. (2006)."

Subsequently, this Honorable Court must enter summary judgment in favor of Chartis providing that as a matter of law, the Policy does not provide coverage for the claims brought by Plaintiff's husband and co-plaintiff, Luis Rafael Maldonado Vaillant and their conjugal partnership in the present action.

The summary dismissal of such claims is appropriate because the question relates to the interpretation of an insurance policy contract which "lies within the province of the court and not the jury." Nahan, 62 F. Supp. 2d at 424 (citing In re San Juan Dupont Plaza Hotel Fire Litig., 802 F. Supp. 624, 637 (D.P.R. 1992)).

**V. CONCLUSION**

In sum, there are no controverted material facts that could prevent this Honorable Court from granting partial summary judgment in favor of Chartis. The Policy's clauses, conditions, exclusions and endorsements discussed above clearly and unambiguously preclude coverage for the mentioned claims and asserted remedies.

Motion Requesting Partial Summary Judgment
Civil Case No. 09-1151 (JP)
Page 21 of 21

**WHEREFORE,** for the reasons presented above, codefendant Chartis Insurance Company – Puerto Rico, very respectfully requests that this Honorable Court enters partial summary judgment, dismissing with prejudice the specified claims against Chartis and other remedies it may deem just and appropriate.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on January 21, 2010.

**I HEREBY CERTIFY** that on this same date, 01/21/2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties on record.

> ***s/Frances R. Colón Rivera***
> Frances R. Colón Rivera
> Bar Number 211514
> Attorney for Codefendant Chartis
> **SALDAÑA & CARVAJAL, P.S.C.**
> 166 de la Constitución Ave.
> San Juan, Puerto Rico 00901
> Tel. 787-289-9250
> Fax. 787-289-9253
> E-mail: fcolon@saldanacarvajal.com