IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

VICKY RODRÍGUEZ-TORRES, et al.,

        Plaintiffs

        v.

GOVERNMENT DEVELOPMENT BANK OF
PUERTO RICO, et al.,

        Defendants

CIVIL NO. 09-1151 (JP)

## OPINION AND ORDER

Before the Court are Defendants Marine Comas-Torres, Naphis Torres-Padró, Edgardo Rodríguez-Nieves, Javier Ramos-Luiña, Ángel Pérez-Díaz, Enid López-López, and Luis Alfaro-Martínez's (collectively known as "individual Defendants") motion for summary judgment (**No. 243**) and Defendant Government Development Bank of Puerto Rico's ("GDB") motion for summary judgment (**No. 245**).[1] Also before the Court is Plaintiffs' opposition to Defendant GDB's motion for summary judgment (No. 259). No opposition was filed to the individual Defendants' motion for summary judgment. Plaintiffs brought the instant action alleging age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*,

---

1.    Defendant Chartis Insurance Company ("Chartis") has joined the motions for summary judgment introduced by the other Defendants (No. 247 and 248). In their motion for summary judgment, individual Defendants incorporated by reference the arguments raised by GDB in its motion for summary judgment. Also before the Court is Chartis' motion for partial summary judgment (**No. 240**). In light of the Court's decision in this Opinion and Order, said motion is **MOOT**.

CIVIL NO. 09-1151 (JP)          -2-

and Puerto Rico Law 100 ("Law 100") of June 30, 1959, as amended, P.R. Laws Ann. tit. 29, § 151 *et seq.*; sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, Law 100, and Puerto Rico Law 69 ("Law 69") of July 6, 1985, P.R. Laws Ann. tit. 29, § 1321 *et seq.*; discrimination under the Lilly Ledbetter Fair Pay Act of January 29, 2009 ("Lilly Ledbetter"); and deprivation of rights under 42 U.S.C. § 1983.  Plaintiffs also claim compensation pursuant to Article 1802 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31, § 5141 and violation of Plaintiff Vicky Rodríguez's ("Rodríguez") rights to privacy and dignity under the provision of Article II, sections 1, 8, and 16 of the Constitution of the Commonwealth of Puerto Rico.  For the reasons stated herein, Defendants' motions for summary judgment are hereby **GRANTED.**

I.    **MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE**

     The following facts are deemed uncontested ("UMF") by the Court because they were included in the motion for summary judgment and opposition and were agreed upon, or they were properly supported by evidence and not genuinely opposed.[2]

---

2.    Also included in these facts are the material facts agreed to at the Initial Scheduling Conference held on June 29, 2009 (No. 191).  The Court has combined the facts to avoid repetitiveness.

CIVIL NO. 09-1151 (JP)          -3-

## FACTS REGARDING INDIVIDUAL DEFENDANTS

1.  Javier Ramos ("Ramos") was, at all times relevant to the complaint, the Director of the Tourism Development Fund, and Principal Financing Officer of the GDB.

2.  Ramos never made any comment about Plaintiff's age or gender.

3.  Plaintiff's only contact with Luis Alfaro ("Alfaro") was during a meeting held on April 4, 2008.

4.  Alfaro never made an inappropriate, improper or discriminatory comment to Plaintiff on the basis of age or gender.

5.  Enid López ("López") was at all times relevant to the complaint the Director of the Municipal Financing Department.

6.  When she was transferred to the Municipal Financing Department, Plaintiff remained in her work station at the Private Financing Department because there were space limitations in the Municipal Financing Department.  These departments are on the same floor and relatively close to each other.

7.  On April 18, 2008, early on after Plaintiff arrived to the Municipal Financing Department, some employees from the Municipal Financing Department participated in a training session regarding governmental accounting.  López informed

CIVIL NO. 09-1151 (JP)          -4-

Rodríguez that she was not invited to participate because the spaces were limited and because it was directed to accounting personnel.

8.   Plaintiff did not have any accounting responsibilities.

9.   López assigned Plaintiff to collaborate with the analyst workload, among other tasks.

10.  On or around August 5, 2008, the Union of GDB Employees presented a grievance under Article IX of the Collective Bargaining Agreement complaining that management employees at the Municipal Financing Department were performing functions which belonged to the Union.  In light of these developments, on September 12, 2008, López informed Human Resources that there was very little work in the Department to assign to Plaintiff, as a management employee, which would not trigger complaints by the union.

11.  Ángel Pérez ("Pérez") was, at all times relevant to the complaint, the GDB's Private Financing Department Director, but on February 8, 2007, he was administratively transferred to the Puerto Rico Tourism Company, and Ramos stayed in charge of the Private Financing Department.

12.  On August 14, 2003, Pérez sent an e-mail to Javier Ramos, Camille Toro, Vicky Rodríguez and Vivian Mercado, with a "brain exercise".  Men and people younger than Plaintiff were also copied on the e-mail.

CIVIL NO. 09-1151 (JP)          -5-

13. Marine Comas ("Comas") did not do anything that Plaintiff considered discriminatory.

14. Plaintiff admits that Comas pre-qualified her for all but one of the positions Plaintiff applied for.

15. Plaintiff admits that Comas was not the one who made the hiring decisions at the GDB.

16. Plaintiff admits that she never expressed her concern regarding her transfer to the Municipal Financing Department to Comas, and that she merely supposes Comas knew.

17. Comas never made a statement to Plaintiff regarding age or gender.

18. From November 17, 2008 to December 15, 2008, Rodríguez took a vacation leave.

19. Plaintiff made a claim of discrimination before Naphis Torres ("Torres") on November 7, 2008, and he said he would follow up on her claims.

20. On December 2, 2008, Torres informed Plaintiff that upon her return to work from her vacation, she would return to the Private Financing Department, as per her request.

21. Plaintiff did not have any contact with Edgardo Rodríguez.

22. Edgardo Rodríguez did not make any discriminatory comment regarding Plaintiff's age or gender.

CIVIL NO. 09-1151 (JP)          -6-

## FACTS REGARDING DEFENDANT GDB

23. On September 12, 2002, Rodríguez was transferred to the role of Account Executive in the Private Financing Department.

24. When Rodríguez was transferred to the Private Financing Department, Harry de Jesús ("de Jesús"), a Senior Account Executive, was her immediate supervisor.

25. When Rodríguez was transferred to the Private Financing Department she did not have any person under her supervision.

26. On October 5, 2004, Roberto Rodríguez was transferred to the Private Financing Department under Plaintiff's supervision.

27. Towards the end of 2005, the Private Financing Department's Loan Portfolio was sold to the Puerto Rico Economic Development Bank ("EDB").

28. On September 22, 2006, Plaintiff Rodríguez and de Jesús were offered an administrative transfer to the EDB to work with the administration of the portfolio that was recently sold. Neither accepted the offer at the time.

29. Because of the sale of the loan portfolio, from 2006 until the filing of the present Complaint a substantial portion of the work that Rodríguez was assigned at the Private Financing Department was from the Tourism Development Fund

CIVIL NO. 09-1151 (JP)            -7-

("TDF"), a GDB subsidiary which was also under Javier Ramos-Luiña's ("Ramos") supervision as its Director.

30. Because of the diminished GDB workload of the Private Financing Account Executives, Ramos decided to have them assist with this subsidiary's work instead of hiring new personnel through the subsidiary.

31. During this time Ángel Pérez was the GDB's Private Financing Department Director but on February 8, 2007, he was administratively transferred to the Puerto Rico Tourism Company and Ramos stayed in charge of the Private Financing Department.

32. In early 2008, the Municipal Financing Department experienced immediate and pressing personnel needs which arose after the first wave of Act 188's Early Retirement Plan took place.

33. When the first wave of retirees under the Early Retirement Plan effectively retired, the Municipal Financing Department lost more than half of it personnel, at the same time that its workload increased because of Bank activity directly involving the Department.

34. On April 2, 2008, Ramos met with the Private Financing Department staff and announced that Roberto Rodríguez and Plaintiff would be transferred to the Municipal Financing Department.

CIVIL NO. 09-1151 (JP)          -8-

35.  Insofar as the Private Financing Department's workload was very light and the Account Executives were performing TDF rather than GDB work, Alfaro and Comas determined that the Bank's resources would be more effectively used at the Municipal Financing Department.  Thus, Plaintiff and Roberto Rodríguez, Analyst, as the least senior employees, were selected for the transfer.  Only de Jesús remained at the Private Financing Department to assist Ramos.

36.  On April 4, 2008, Rodríguez received a letter from Comas, former Human Resources Director, regarding her administrative transfer to the Municipal Financing Department, effective on April 7, 2008.

37.  Plaintiff was informed that her administrative transfer was on a temporary basis.  She also was advised that she would be collaborating on different matters depending on the demands of the Department and the needs of its Director, Enid López.

38.  Once in the Municipal Financing Department, Plaintiff retained her position as Account Executive in the Private Financing Department and her salary and benefits.  During 2008, Plaintiff received a salary increase.

39.  On Friday April 4, 2008, Comas, José Cháves ("Cháves"), López and Luis Alfaro ("Alfaro"), met with Plaintiff. During the meeting they emphasized once again that

CIVIL NO. 09-1151 (JP)          -9-

Plaintiff's transfer to the Municipal Financing Department was temporary.

40.  Plaintiff took sick leave on April 7 and 8, 2008 (Monday and Tuesday) and reported to the Municipal Financing Department on April 9, 2008.

41.  Once in the Municipal Financing Department, Plaintiff was assigned to collaborate in various matters as needed.  As things began to settle, it became evident to López that the Department Analysts needed support and asked Plaintiff to assist in that area.

42.  When Plaintiff was transferred to the Municipal Financing Department all the offices in this department were occupied.

43.  Therefore, Plaintiff remained in her work station at the Private Financing Department because there were space limitations in the Municipal Financing Department.  These departments are on the same floor and relatively close to each other.

44.  On April 18, 2008, early on after Plaintiff arrived to the Municipal Financing Department, some employees from the Municipal Financing Department participated in a training regarding governmental accounting.  López informed Rodríguez that she was not invited to participate because

CIVIL NO. 09-1151 (JP)              -10-

> the spaces were limited and that it was directed to
> accounting personnel.

45. Plaintiff did not have any accounting responsibilities.

46. On April 23, 2008, Plaintiff requested access to the systems that the Municipal Financing Department Analysts used. On that same date, López requested that the GDB's Security Department grant the access as requested. On April 24, 2008 the requested access was granted. Plaintiff did not have access to this system before because she did not require it for the work she had been performing.

47. On or around August 5, 2008, the Union of GDB Employees presented a grievance under Article IX of the Collective Bargaining Agreement, complaining that management employees at the Municipal Financing Department were performing functions which belonged to the Union.

48. In light of these developments, on September 12, 2008, Enid López informed Human Resources that there was very little work in the Department to assign to Plaintiff, as a management employee, which would not trigger complaints by the union.

49. From September 12, 2008 through November 14, 2008, Enid López followed up with the Human Resources staff regarding Plaintiff's status at the Municipal Financing Department.

CIVIL NO. 09-1151 (JP)            -11-

50.   Because of the preexisting low volume of private financing work (as opposed to TDF work), human resources was working with Alfaro and other management to determine if Rodríguez would be more beneficial elsewhere in the Bank.

51.   In addition, Naphis Torres, former Human Resources Director, was evaluating whether the transfer could be effectuated during the electoral prohibition period.

52.   On November 7, 2008, Plaintiff and Naphis Torres, Human Resources Director at the time, met in his office to discuss her concerns regarding her employment situation. During the meeting, Plaintiff stated that she did not have any work assignments at the Municipal Financing Department and that she would like to return to the Private Financing Department or be assigned to another position.

53.   Naphis Torres informed Plaintiff that they were going to evaluate and investigate her situation and would keep her informed about any decision concerning the same.

54.   On November 18, 2008, Rodríguez filed a claim for discrimination on the basis of age and sex with the Puerto Rico Office of Equal Employment Opportunity ("EEOC").

55.   From November 17, 2008 to December 15, 2008, Rodríguez enjoyed vacation leave.

CIVIL NO. 09-1151 (JP)            -12-

56. On December 2, 2008, Torres informed Plaintiff that, upon her return to work from her vacation, she would return to the Private Financing Department.

57. On December 9, 2008, Plaintiff requested that her vacation time be extended up to and including December 12, 2008.

58. On December 15, 2008, Plaintiff received a letter from Naphis Torres confirming that her administrative transfer to the Municipal Financing Department had ended on December 12, 2008, and notifying her that she would be returned to her position in the Private Financing Department on December 15, 2008.

59. GDB has strong policies prohibiting discrimination in the workplace on the basis of sex, age and all other legally protected criteria.

60. The only three positions that Plaintiff applied for in 2008 were Special Programs Director, Special Projects Executive, and Control and Fiscal Expert.  The first one was given to Cajigas, the second one was given to Deynes and the third one was withdrawn before Plaintiff submitted her application.

61. The other positions that Plaintiff applied for were in 2004 and earlier.

CIVIL NO. 09-1151 (JP)            -13-

62. Miguel Deynes' position, Special Projects Executive, is a different position with different responsibilities from the Account Executive position.

63. All the documents related to the clients were filed in the Private Financing Department files. Plaintiff had access to these files and she was responsible for filing them and/or reviewing them in order to be updated with the accounts developments.

64. The following projects: PMO Hotel, LLC; PMO Condohotel and the JW Marriot Coco Beach Resort & Spa, (all belonging to TDF), have not been closed or settled and they are still under negotiation.

65. Miguel Deynes' position, Special Projects Executive, Madelyne Cajigas' position, Special Programs Director, Elizabeth de la Cruz's position, Credit and Compliance Administrator, and Ángel Pérez's position, Private Financing Director, are different positions, with different responsibilities from Plaintiff's position of Account Executive.

66. The PR Credit Conference was held only from February 28 through March 1, 2007. This activity its related to the Public Financing Department and not to the Private Financing Department. This is an activity whereby the Government of Puerto Rico presents its credit and

CIVIL NO. 09-1151 (JP)          -14-

financial highlights to the National Rating Agencies and the Institutional Investors that purchase the bonds issued by the Government.

67. Rodríguez applied for the following positions: (a) Special Programs Director - June 5, 2008; (b) Special Projects Executive - August 2008; (c) Credit and Control Administrator - July 3, 2001; (d) Finance Manager - February 20, 2003; (e) Treasury Accounts Executive - September 4, 2002; (f) Director of Private Financing - July 28, 2004.

68. On April 30, 2008, the GDB invited applicants to apply for position number 0370, Account Executive for the Municipal Financing Department, with an annual salary of $28,800 and scale 9.  The application deadline for this position was May 13, 2008.

69. Rodríguez did not apply for position number 0370, Account Executive for the Municipal Financing Department.  This position was granted to José Feijóo ("Feijóo").  As of November 2007, Feijóo had been assigned to work at the Municipal Financing Department performing several duties, with particular attention to the issue of the Municipal Finance Agency bonds ("MFA").

70. On May 23, 2008, the GDB invited applicants to apply for position number 0355, Director of Special Programs, with

CIVIL NO. 09-1151 (JP)            -15-

an annual salary of $51,400 and in pay Scale 13.   The
application deadline for this position was June 6, 2008.
The position required close work with the "Special
Communities Program."

71.   This "Special Communities Program" is a government
      initiative to develop Puerto Rico's poorest sectors by
      substituting the traditional paternalistic model for one
      which involves the very community, empowering it as a
      change-agent towards a better quality of life.   In order
      to achieve this goal, Puerto Rico's stated public policy
      requires that public corporations, agencies and
      municipalities work in an integrated manner, employing a
      systematic and interdisciplinary approach.

72.   On June 5, 2008, Plaintiff applied for position
      number 0355, Director of Special Programs, whose
      qualifications and requirements Plaintiff met.

73.   Alfaro was the hiring director who would be interviewing
      the candidates and deciding who would be hired for the
      Special Programs Executive position.

74.   Rodríguez' application was accidentally misplaced by the
      Human Resources evaluation committee. When it was
      recovered, the application was submitted for Alfaro's
      consideration but Cajigas had already been selected for
      the position of Specials Programs Director.

CIVIL NO. 09-1151 (JP)          -16-

75.   Cajigas joined the GDB on March 3, 2003 as a President's Assistant.

76.   From May 2000 through June 2008, Cajigas worked directly with the Special Communities Program in several positions.

77.   Plaintiff has never worked with the Special Communities Programs.

78.   On August 6, 2008, the GDB invited applicants to apply for position number 4000, Control and Fiscal Expert, with an annual salary of $32,000, and scale 10.

79.   On August 18, 2008 Rodríguez applied for position number 4000, Control and Fiscal Expert, whose qualifications and requirements she met.  No one was interviewed or hired.

80.   On August 18, 2008, Elsy Alvarado-Cabrera, GDB employee, informed Rodríguez the position number 4000, Control and Fiscal Expert, was left without effect.

81.   On August 19, 2008 GDB invited applicants for position number 4000, Executive for Specials Projects.

82.   On August 29, 2008, Rodríguez applied for position number 4000, Executive for Special Projects.

83.   The position required close work with municipalities, their financial and socioeconomic projects and macroeconomic analysis.

CIVIL NO. 09-1151 (JP)          -17-

84. Enid López López was the hiring director who interviewed the candidates for the Executive Special Projects position and decided who would be hired.

85. Rodríguez was interviewed by Enid López López for position number 4000, Executive for Special Projects.

86. On September 4, 2008, Miguel Deynes, was selected to fill position number 4000, Executive of Special Projects.

87. Deynes had experience with complex socioeconomic studies, municipal finance and macroeconomic analysis.  He had joined the GDB in June 1985 as an Economic Studies' Analyst.

88. Plaintiff does not have experience in macroeconomic analysis.

89. As to the Municipal Congress of 2008, it was an activity organized by the Governor of Puerto Rico to which some of the Municipal Financing Department employees were invited by the Governor.  Therefore, the GDB did not have any control regarding the people invited to participate in it.

## II.   LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Summary judgment serves to assess the proof to determine if there is a genuine need for trial.  Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to

CIVIL NO. 09-1151 (JP)          -18-

interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Zambrana-Marrero v. Suárez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993); Canal Ins. Co. v. Benner, 980 F.2d 23, 25 (1st Cir. 1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. See Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may

CIVIL NO. 09-1151 (JP)          -19-

not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. See Anderson, 477 U.S. at 248; Celotex, 477 U.S. at 324; Goldman, 985 F.2d at 1116.

III. **ANALYSIS**

Defendants argue that their summary judgment motions should be granted because: (1) the ADEA and Title VII do not provide for individual liability; (2) there is no material issue of fact on Plaintiffs' Title VII and ADEA claims; (3) there is no material issue of fact on Plaintiffs' 42 U.S.C. § 1983 claim and (4) all of Plaintiffs' claims against individual Defendants are barred by qualified immunity.[3]   The Court will now proceed to consider Defendants' arguments.

A.    **ADEA and Title VII Application to Individual Defendants**

In the complaint, Plaintiffs bring claims against Marine Comas-Torres, Naphis Torres-Padró, Edgardo Rodríguez-Nieves, Javier Ramos-Luiña, Ángel Pérez-Rivera, Enid López-López, and Luis Alfaro-Martínez. As stated in the uncontested facts, said Defendants are employees of Defendant GDB. Defendants argue that no liability attaches to these individual Defendants under the ADEA and Title VII.

---

3.    The Court will not address the qualified immunity arguments raised by Defendants as they are **MOOT** based on the decision reached by the Court on Defendants' other arguments.

CIVIL NO. 09-1151 (JP)          -20-

In ADEA claims, only the employer is liable for the acts of its agents and, therefore, individual liability does not apply in ADEA claims.   E.g., Díaz v. Antilles Conversion & Export, Inc., 62 F. Supp. 2d 463, 465 (D.P.R. 1999).  Also, individuals cannot be held liable under Title VII.   Fantini v. Salem State College, 557 F.3d 22, 30 (1st Cir. 2009).  Thus, the Title VII and ADEA claims against the individual Defendants will be dismissed with prejudice.

### B.   Title VII and ADEA Claims

The ADEA states that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1).  Under the ADEA, an employer will only be liable if age was the reason the employer took the adverse action.  Gross v. FBL Financial Services, --U.S.--, 129 S. Ct. 2343, 2350 (2009). As such, there are no mixed motive claims under the ADEA.  Id.

Title VII makes it an unlawful employment practice for an employer to discriminate against any individual because of such individual's sex, among other protected classes. 42 U.S.C. § 2000e-2(a)(1).

### 1.   Disparate Treatment Claims under Title VII and ADEA

Absent direct evidence of intentional discrimination, a Title VII and/or ADEA Plaintiff alleging disparate treatment must

CIVIL NO. 09-1151 (JP)          -21-

employ the burden shifting framework under <u>McDonnell Douglas Corp.</u> <u>v. Green</u>, 411 U.S. 792 (1973). Under said framework, Plaintiff bears the initial burden of establishing a *prima facie* case of Title VII and/or ADEA discrimination. <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802.

Traditionally, a Plaintiff alleging discrimination must establish that: (1) he/she belonged to a protected class; (2) he/she performed her job satisfactorily; (3) his/her employer took an adverse employment decision against the employee; and (4) his/her employer continued to have the employee's duties performed by a comparably qualified person. <u>Santiago-Ramos v. Centennial P.R.</u> <u>Wireless Corp.</u>, 217 F.3d 46, 54 (1st Cir. 2000). Once Plaintiff has met its burden, the burden shifts to Defendant to articulate non discriminatory reasons for its actions. <u>Id.</u> If Defendant meets its burden, then the burden shifts back to Plaintiff to show that the proffered reason is only a pretext for the discrimination. <u>Id.</u>

In the instant case, Plaintiffs have alleged violations of Title VII and the ADEA on the basis of: (1) failure to promote; (2) wage discrimination; (3) constructive demotion; (4) exclusion from meetings, emails, and communications; (5) exclusion from training and continued education; (6) exclusion from transportation to a site visit; and (7) denial of access to the Municipal Financing System. Defendants argue that Plaintiffs have failed to meet their burden for each of those alleged violations. After examining the evidence, the Court determines that there is no direct evidence of

CIVIL NO. 09-1151 (JP)            -22-

either sex or age discrimination and, accordingly, the Court will apply the <u>McDonnell Douglas</u> burden shifting framework.

### i.   Failure to Promote

Plaintiff Rodríguez claims that she has applied and not been hired for the following positions: (a) Special Programs Director - June 5, 2008; (b) Special Projects Executive - August 2008; (c) Credit and Control Administrator - July 3, 2001; (d) Finance Manager - February 20, 2003; (e) Treasury Accounts Executive - September 4, 2002; (f) Director of Private Financing - July 28, 2004; and Control and Fiscal Expert[4] - 2008.  UMF 60 and 67.  Defendants argue that: (1) the positions applied for prior to November 2007 are time-barred; and (2) with respect to the positions which are not time-barred, Plaintiffs have not met their *prima facie* burden.

### a.   Time-barred Claims

Title VII precludes recovery for discrete acts of discrimination that occur outside of the statutory period.  <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101, 114 (2002).  In <u>Morgan</u>, the Supreme Court explained that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  <u>Id.</u> at 113.  As

---

4.   The Court notes that throughout the record there seems to be confusion of whether the position Plaintiff Rodríguez applied for was as a Control and Fiscal Expert or as an Inspection and Control Specialist.  To avoid confusion, the Court will refer to it as a Control and Fiscal Expert.

CIVIL NO. 09-1151 (JP)          -23-

such, discrete acts such as failure to promote are a separate unlawful employment practices. Id. at 114.

In the instant case, each of the failure to promote claims are discrete acts and, as such, they must be filed within the limitations period. Since Puerto Rico is a deferral jurisdiction,[5] Plaintiffs had to file the charge of discrimination with the EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); Morgan, 536 U.S. at 108-10. Plaintiff Rodríguez filed her EEOC claim on November 18, 2008. UMF 54. As such, any of the failure to promote claims filed by Plaintiff Rodríguez that occurred prior to November 2007 are time-barred. Accordingly, the Court finds that the failure to promote claims for the positions of Credit and Control Administrator, Finance Manager, Treasury Accounts Executive, and Director of Private Financing are time-barred.

b.   Timely Filed Failure to Promote Claims

For Plaintiffs to meet the *prima facie* burden of Title VII failure to promote claims, Plaintiffs must show that: (1) Plaintiff Rodríguez is a member of a protected class; (2) Plaintiff Rodríguez was qualified for the promotion; (3) Plaintiff was rejected; and (4) that other similarly or less qualified employees, who were not members of the protected class, were promoted. Jackson v. City of

---

5.   Bonilla v. Muebles J.J. Álvarez, Inc., 194 F.3d 275, 278 n.4 (1st Cir. 1999) (stating that Puerto Rico is a deferral jurisdiction).

CIVIL NO. 09-1151 (JP)          -24-

Chicago, 552 F.3d 619, 622 (7th Cir. 2009).  In ADEA claims, the Plaintiff must also show that the person promoted instead of Plaintiff was significantly younger than Plaintiff and had similar qualifications.  O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996).

In the instant case, the positions that Plaintiff applied for, which are not time-barred, are the Special Programs Director, Special Projects Executive, and Control and Fiscal Expert.  Defendants argue that Plaintiffs' claims fail because they cannot establish a *prima facie* case.

### 1.    Special Programs Director

The Special Programs Director position was given to a woman, Madelyne Cajigas ("Cajigas").  UMF 65 and 74.  As such, Plaintiffs' sex discrimination claims fail because Plaintiffs cannot meet the fourth element of the *prima facie* case when the position was awarded to another member of the protected class, a woman.

Plaintiffs' age discrimination claims also fails because the undisputed evidence shows that Cajigas was more qualified for the position than Plaintiff Rodríguez.  The position required close work with the Special Communities Program.  UMF 70.  The undisputed facts show that Cajigas has years of experience working directly with the Special Communities Program, while Plaintiff Rodríguez had never worked with the Special Communities Program.  UMF 76 and 77.  As such, the Court concludes that the undisputed evidence shows that

CIVIL NO. 09-1151 (JP)          -25-

Cajigas was more qualified than Plaintiff Rodríguez.  Accordingly, Plaintiffs' failure to promote claim based on the Special Program Director position fails.

### 2.   Special Projects Executive

The Court also finds that Plaintiff was less qualified for the Special Projects Executive position than Miguel Deynes ("Deynes"). The position required close work with municipalities, their financial and socioeconomic projects, and macroeconomic analysis.  UMF 83. Plaintiff Rodríguez does not have any experience in macroeconomic analysis.  UMF 88.  On the other hand, Deynes has experience with complex socioeconomic studies, municipal finance, and macroeconomic analysis.  UMF 87.  Deynes actually joined GDB, in June of 1985, as an Economic Studies analyst.  UMF 87.  Accordingly, the Court finds that Plaintiffs' claims for failure to promote based on the Special Projects Executive position are subject to summary judgment because there is no genuine factual issue as to whether Plaintiff was as qualified as Deynes.

### 3.   Control and Fiscal Expert

GDB opened the position for Control and Fiscal Expert on August 6, 2008.  UMF 78.  Plaintiff Rodríguez applied for the position on August 18, 2008.  UMF 79.  However, GDB left the Control and Fiscal Expert position without effect and no one was interviewed or hired for the position.  UMF 79 and 80.  After considering the evidence, the Court determines that the uncontested facts show that

CIVIL NO. 09-1151 (JP)          -26-

Plaintiffs cannot prove the fourth element of a *prima facie* claim because no one was promoted to the position.  Accordingly, the Court will grant summary judgment in favor of Defendants on all of Plaintiffs' failure to promote claims under Title VII and the ADEA.

### ii.  Wage Discrimination

Plaintiffs also bring claims of wage discrimination.[6]  To make out a wage discrimination claim under Title VII and the ADEA, Plaintiff must show that Plaintiff was paid less than a younger employee or an employee of the opposite sex who was performing work substantially equal to that of Plaintiff.  See Rodríguez v. Smithkline Beecham, 224 F.3d 1, 8 (1st Cir. 2000); Lyoch v. Anheuser-Busch Companies, Inc., 139 F.3d 612, 616 (8th Cir. 1998); Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1529 (11th Cir. 1992).

In the instant case, Plaintiff Rodríguez stated, in her deposition, when questioned about the wage discrimination claim, that Deynes, Elizabeth de la Cruz ("Cruz"), Cajigas, and Ángel Pérez ("Pérez") earned more than she did.  After considering the evidence, the Court concludes that Plaintiff Rodríguez has failed to raise a genuine issue of material fact as to her wage discrimination claims

---

6.    In the complaint, Plaintiffs list the Lilly Ledbetter Fair Pay Act of 2009 ("the Act") as a cause of action. However, the Act does not create substantive rights, but instead clarifies the point of commencement of the statute of limitations in instances of wage discrimination. Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009).  Giving Plaintiffs the benefit of the doubt, the Court will assume that Plaintiffs were attempting to bring a wage discrimination cause of action when they mentioned the Act.

CIVIL NO. 09-1151 (JP)          -27-

because she did not have substantially the same position as said individuals.  It is uncontested that Deynes' position, Special Projects Executive, Cajigas' position, Special Programs Director, Cruz's position, Credit and Compliance Administrator, and Pérez's position, Private Financing Director, are all different positions with different responsibilities than those of an Account Executive such as Plaintiff Rodríguez.  UMF 65.  Based on said evidence and since Plaintiffs have not presented any evidence that the positions are substantially similar, the Court concludes that Plaintiffs have failed to raise a genuine factual issue as to a *prima facie* case of wage discrimination under Title VII and the ADEA.

### *iii. Constructive Demotion*

Plaintiffs also alleged that Rodríguez suffered from constructive demotion.  In support of said claim, Plaintiffs alleged that beginning in 2008, when she was transferred to a new department, she experienced a decreasing role within GDB in terms of the quality, quantity, and level of challenge.  Plaintiff also argues that during 2008 she was left without an office and not provided with any work.

After considering the evidence, the Court determines that the undisputed facts show that: (1) the transfer of Plaintiff Rodríguez did not constitute an adverse employment action; (2) the decision to leave Plaintiff Rodríguez without an office in the Municipal Finance Department was made for a non discriminatory reason; and (3) that Plaintiff was left with fewer duties for non discriminatory reasons.

CIVIL NO. 09-1151 (JP)          -28-

        a.   <u>Decrease in Role within GDB and Administrative Transfer</u>

The undisputed evidence shows that, during 2005, GDB sold the Private Financing Department's Loan Portfolio to the Puerto Rico Economic Development Bank.  UMF 27.  After the sale, the Private Financing Department suffered from a light workload.  UMF 27 - 35. The decrease in work impacted the workload of the Department's employees.  UMF 29 - 30.  Since 2006, a substantial portion of the work that Rodríguez was assigned in the Private Financing Department was from a subsidiary of GDB, the Tourism Development Fund ("TDF"). UMF 29.

In early 2008, the Municipal Financing Department experienced immediate and pressing personnel needs which arose after the first wave of Act 188's Early Retirement Plan took place.  UMF 32.  As a result of the first wave, the Municipal Financing Department lost more than half of its personnel at the same time its workload increased because of GDB activity directly involving said Department. UMF 33.

Because the Private Financing Department's workload was very light and Account Executives were performing TDF work rather than GDB work, GDB determined that GDB's resources would be more effectively used in the Municipal Financing Department.  UMF 35.  As such, Plaintiff Rodríguez and Roberto Rodríguez, as the least senior employees, were administratively transferred on a temporary basis to

CIVIL NO. 09-1151 (JP)          -29-

the Municipal Financing Department.   UMF 35, 37, 39 and 58. Throughout the temporary transfer, Plaintiff Rodríguez retained her position as Account Executive in the Private Financing Department, and her salary and benefits.   UMF 38.   Based on the uncontested facts, the Court determines that Plaintiffs have not raised a genuine issue of material fact on their *prima facie* burden because said temporary and administrative transfer does not constitute an adverse employment action.   <u>Santiago-Ramos</u>, 217 F.3d at 54.

b.   <u>Lack of Office Space and Duties</u>

For purposes of deciding the claims based on allegations of lack of office space and lack of duties, the Court will assume that Plaintiffs have met their *prima facie* burden under <u>McDonnell Douglas</u>. As such, the burden shifts to Defendants to show that the actions were taken for non discriminatory reasons.   <u>Santiago-Ramos</u>, 217 F.3d at 54.

The Court finds that Defendants have articulated a non discriminatory reason for the actions taken against Plaintiff Rodríguez.   In regards to Plaintiff Rodríguez's claims that she was left without an office in the Municipal Financing Department, the undisputed facts show that when Plaintiff was transferred to the Municipal Financing Department, all of the offices in the area were occupied.   UMF 42.   Because of these space limitations, Plaintiff remained in her work station at the Private Financing Department. UMF 43.   Accordingly, the Court determines that Defendants have met

CIVIL NO. 09-1151 (JP)          -30-

their burden in showing that the decision not to assign Plaintiff a work station in the Municipal Financing Department was because of space limitations and not based on her age or sex.

The Court also finds that Defendants have articulated a non discriminatory reason for reducing the work of Plaintiff while in the Municipal Financing Department.  The undisputed facts show that on or around August 5, 2008 and after Plaintiff was transferred to the Municipal Financing Department, the union of GDB employees presented a grievance under Article IX of the Collective Bargaining Agreement. UMF 47.   In said grievance, GDB's employees complained that management employees at the Municipal Financing Department were performing functions which belonged to the union.  UMF 47.

In light of these developments, Defendant Enid López informed Human Resources that there was very little work for Plaintiff Rodríguez, as a management employee, in the Municipal Financing Department that would not trigger complaints from the union.  UMF 48. Consequently, Plaintiff Rodríguez was transferred back to the Private Financing Department.  UMF 58.  In light of the uncontested evidence, the Court determines that Defendants have met their burden by demonstrating that the reason for Plaintiff Rodríguez's lack of duties was the complaints by the union and not her age or sex.

Since Defendants have met their burden, the burden then shifts to Plaintiffs to show that the proffered non discriminatory reasons advanced by Defendants are only a pretext for discrimination.

CIVIL NO. 09-1151 (JP)              -31-

*Santiago-Ramos*, 217 F.3d at 54.  In the instant case, Plaintiffs have failed to point to any evidence that would tend to show that the reasons advanced by Defendants are a pretext.  Accordingly, the Court determines that Plaintiffs' claims based on lack of office space and lack of duties shall be dismissed on summary judgment.

>                *iv. Exclusion    from    Meetings,    Emails,    and*
>                    *Communications*

Plaintiffs also allege that Plaintiff Rodríguez has been excluded, on the basis of her sex and age, from meetings, emails and communications in which she believes she ought to have been included. Defendants oppose Plaintiffs' allegations and argue that the documents on which Plaintiffs could rely do not provide evidence of discrimination based on Plaintiff's sex or age.

For purposes of deciding these claims, the Court will assume that Plaintiffs have met their *prima facie* burden under McDonnell Douglas.  As such, the burden shifts to Defendants to show that the actions were taken for non discriminatory reasons.  Santiago-Ramos, 217 F.3d at 54.

Defendants point to the evidence and state that the documents: (1) have nothing to do with Plaintiff's age or sex; (2) demonstrate, contrary to Plaintiffs' allegations, that Plaintiff Rodríguez was assigned significant tasks in her work; (3) show that Plaintiff was not copied on the documents because she was not working in the specific area, such as the Municipal Financing Department, at the

CIVIL NO. 09-1151 (JP)          -32-

time the documents were generated; (4) were provided to Plaintiff in hard copy on the same date the documents were sent; (5) are related to TDF projects which are still being negotiated and, thus, were not sent to Plaintiff because she was not involved in the negotiation process; and (6) were communications generated by Plaintiff's supervisors to external parties and which Plaintiff had access to since they were filed in the clients' files.

After considering Defendants' arguments, the Court determines that based upon the evidence in the record, a jury could only find that the exclusion from said meetings, emails, and communications was done for non discriminatory reasons. Since Plaintiffs have failed to point to any evidence that the reasons proffered by Defendants are a pretext and that Plaintiff was excluded on the basis of her sex and age, the Court determines that Plaintiffs' claims based on her exclusion from meetings, emails, and communications fail.

*v.    Exclusion from Training and Continued Education*

Plaintiffs allege that Plaintiff Rodríguez was discriminated against, on the basis of her sex and age, when she was excluded from: (1) a Government Accounting Seminar held on April 18, 2008; (2) a Municipal Congress held in 2008; and (3) several Puerto Rico Credit Conferences held in 2006, 2007, and 2008.

In the instant case, Defendants have again provided evidence showing that the reasons for which Plaintiff was not included in these activities were non discriminatory. As such, the Court will

CIVIL NO. 09-1151 (JP)          -33-

again assume that Plaintiffs have met their original burden under the underline McDonnell Douglas framework.  The Puerto Rico Credit Conference is an activity whereby the Government of Puerto Rico presents its credit and financial highlights to the National Rating Agencies and Institutional Investors that purchase bonds issued by the Government.  UMF 66.  Also, it is an activity related to the Public Financing Department and not the Private Financing Department.  UMF 66.  As such, Defendants state that the reason for not inviting Plaintiff was that she was not in the Public Financing Department.

Defendants state that the Government Accounting Seminar was held on April 18, 2008, which was shortly after Plaintiff arrived in the Municipal Financing Department.  UMF 36 and 44.  The uncontested facts show that the reason for not inviting Plaintiff to the seminar was that spaces were limited and because it was for accounting personnel.  UMF 44.  Plaintiff Rodríguez did not have any accounting responsibilities.  UMF 45.  As such, Defendants argue that the reason for not inviting Plaintiff was not related to her sex or age.

Lastly, the Municipal Congress of 2008 was an activity organized by the Governor of Puerto Rico.  UMF 89.  Some Municipal Financing Department employees were invited by the Governor and GDB did not have any control as to the people invited.  UMF 89.  Thus, Defendants argue that the reason for not inviting Plaintiff to said Congress was that the Governor, and not GDB, chose not to invite her.

CIVIL NO. 09-1151 (JP)          -34-

After considering the arguments, the Court concludes that the evidence shows, beyond genuine factual dispute, that Defendants have offered a non discriminatory reason for not inviting Plaintiff to said events.    As  such,  Defendants  have  met  their  burden. <u>Santiago-Ramos</u>, 217 F.3d at 54.   Since Plaintiffs have failed to point to any evidence that the non discriminatory reasons are merely a pretext, the Court concludes that Defendants are entitled to summary judgment on Plaintiffs' claims based on exclusion from training and continuing education.

*vi.  Exclusion from Transportation to Site Visit*

Plaintiffs alleged that Rodríguez had to ask for a car at GDB when she had a site visit because Javier Ramos did not invite her to travel with him in his car.   Defendants argue that this was not an adverse action.

The Court determines that Plaintiffs cannot meet their *prima facie* burden because said act was not an adverse action. <u>Santiago-Ramos</u>, 217 F.3d at 54.   Defendants have pointed to the record and shown that Plaintiff does not know the reason why Javier Ramos did not invite her to ride with him.   Moreover, Defendants point to the record to show that Plaintiff admitted that GDB provides her with transportation in a company car and a chauffeur.   Based on this evidence and on the fact that Plaintiffs have not presented any evidence, the Court determines that no reasonable jury could determine that said act was an adverse action.

CIVIL NO. 09-1151 (JP)          -35-

*vii. Lack of Access to Municipal Financing System*

Plaintiffs allege that, when Plaintiff Rodríguez was first assigned to the Municipal Financing Department, she was not given access to the systems that the analysts from the Municipal Financing Department used.

In response, Defendants argue that the reason why Plaintiff was not given access to the system was that, at that time, Plaintiff was not performing any tasks that required her having access to the system. UMF 46. Furthermore, within a day of Plaintiff requesting access to the system, the access was granted. UMF 46. The Court concludes that the record shows, beyond genuine dispute, that Defendants have provided a non discriminatory reason for Plaintiff not having access to the system. Since Plaintiff has not presented any evidence that the reason provided by Defendants was a pretext, the Court finds that Defendants are entitled to summary judgment on Plaintiffs' claim. Santiago-Ramos, 217 F.3d at 54.

**2.   Hostile Work Environment Claims under Title VII and ADEA**

Title VII and the ADEA apply the same standards for examining hostile work environment claims. Terry v. Ashcroft, 336 F.3d 128, 147-48 (2nd Cir. 2003). To succeed in their hostile work environment claims, Plaintiffs must show that: (1) Plaintiff Rodríguez is a member of a protected class; (2) Plaintiff Rodríguez was subjected to unwelcome harassment; (3) the harassment was based

CIVIL NO. 09-1151 (JP)          -36-

on her age or sex; (4) the harassment was sufficiently pervasive or severe so as to alter the conditions of Plaintiff's employment and create an abusive work environment; (5) the objectionable conduct was both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive and that Plaintiff did in fact perceive it to be so; and (6) some basis for employer liability has been established.   See O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001).

The fourth and fifth elements are typically the most important. Id. Said elements are normally determined by looking at the totality of the circumstances and some of the factors considered in making the determination are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 728-29 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)).

In the instant case, Defendants point to the statements that Plaintiff Rodríguez alleged were discriminatory.  Defendants then argue that said statements cannot meet elements three and four. Element four is not met because they are not pervasive or severe enough so as to alter the conditions of her employment and create an abusive work environment.  Defendants argue that element three is not met because the alleged harassing statements are not based on her sex or age.

CIVIL NO. 09-1151 (JP)          -37-

In her deposition, Plaintiff Rodríguez alleged that the following comments were discriminatory:[7]

(1)   that Enid López said "I don't want any more wrinkles" and "there are people here that are older than me but I have enough experience;"

(2)   that "somebody" called her "la nena" and "vieja;"

(3)   that during her birthday, José Narváez, an Analyst at the Municipal Financing Department, asked her "how old are you?" and then added "64" and everybody laughed including Enid López, then Roberto said, "No, 15" and everybody laughed again;

(4)   that one day she had a new hairdo and, when she passed by the lobby of the Municipal Financing Department, Roberto Rodríguez, a co-worker of Plaintiff and her subordinate, said to José Feijóo, another co-worker of Plaintiff, "she looks rejuvenated;"

(5)   that on June 30, 2008, several employees came to wish another employee happy birthday and joked "for being 50 you look very young", but the employee was a young employee;

---

7.   Plaintiffs also refer to an email sent by Ángel Rodríguez on August 14, 2003 as an example of the alleged harassment.  The Court will not consider that email because it was sent too long ago to be considered as relevant to the allegations included in the complaint.

CIVIL NO. 09-1151 (JP)          -38-

> (6)  that on October 9, 2008, Juan Carlos-Larruiz, a co-worker of Plaintiff, went to give an instruction to one of his employees that worked in front of her cubicle, and said something about having spoken with "la vieja;"

> (7)  that on October 29, Noel Aguiar, who was one of Plaintiff's co-workers, was at her cubicle and he was speaking with somebody on the phone and he said "well you know, she's 50 right now;"

> (8)  that on November 12th she received an e-mail from Vivian Mercado, a co-worker of Plaintiff, that was called "Stages of Life" which speaks about the stages of the trees, and that, as people age, young people will take their place and that "we have to go along;"

> (9)  that on October 14, 2009, Sheyla Dávila asked Plaintiff if she was going to retire soon;

> (10) that Javier Ramos is not very communicative and considers himself a more prepared person than Plaintiff;

> (11) that, when interns came to the GDB, Javier Ramos gave them things to do and participation;

> (12) that, during a meeting, Javier Ramos said that his kids made fun of him because he could not focus well on something that he was reading and told him "you look like a viejito" when he squinted his eyes; and

CIVIL NO. 09-1151 (JP)          -39-

> (13) that on May 19, 2009 a receptionist was entering to the
>      elevators and saw Plaintiff with some packages and offered
>      to help her because she was younger than Plaintiff.

The Court determines that comments (1), (5), (10), (11), and (12) do not support an inference of discrimination based on the age or sex of Plaintiff.  In fact, none of those comments even refers to Plaintiff Rodríguez.  Also, comments (6) and (7) do not support an inference of sex or age discrimination as the comments are merely statements overheard by Plaintiff Rodríguez and there is no evidence that the statements are even directed at Rodríguez.  The Court also concludes that comment (2) does not support an inference of discrimination since Plaintiff cannot even remember who made those comments.  As such, Plaintiffs allegations of harassment are based on comments (3), (4), (8), (9), and (13).

Even viewing the evidence in the light most favorable to Plaintiffs, the Court determines that comments (3), (4), (8), (9), and (13) are too mild to permit a reasonable jury to find that they rise to the level of creating a hostile work environment.  There is no indication that said conduct was physically threatening nor that it interfered with Plaintiff Rodríguez's work performance.  O'Rourke, 235 F.3d at 728-29.  At most, the comments are mere offensive utterances.  Id.  Also, these comments appear to be isolated incidents and not persistent comments.  Id.  Furthermore, the Court notes that more severe conduct than the actions alleged here has been

CIVIL NO. 09-1151 (JP)          -40-

found to not rise to the level of a hostile work environment.  See
Marrero v. Schindler Elevator Corp., 494 F. Supp. 2d 102,
110 (D.P.R. 2007) (finding that calling Plaintiff "viejo," "viejito,"
and "viejo pendejo" "on a daily basis[]" are not sufficient for a
hostile work environment claim).  Accordingly, the Court will grant
summary judgment on Plaintiffs' hostile work environment claims under
the ADEA and Title VII.

   **C.   42 U.S.C. § 1983**

   42 U.S.C. § 1983 ("Section 1983") creates a remedy for those who
are deprived of the rights, privileges, or immunities granted to them
by the Constitution or laws of the Unites States.  See Rodríquez
García v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004)
(citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  In order
to succeed in a Section 1983 claim, Plaintiffs must prove that
someone has deprived them of a right protected by the Constitution
or the laws of the United States and that the perpetrator acted under
color of state law.  Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 621
(1st Cir. 2000).

   In the instant case, Plaintiffs appear to argue that they bring
their Section 1983 claims based on violations of the Equal Protection
Clause and the Due Process Clause.  Defendants argue that Plaintiffs
have failed to provide sufficient facts which could form the basis
for either of the claims.

CIVIL NO. 09-1151 (JP)          -41-

### 1.   Equal Protection

To succeed on an Equal Protection Clause claim, Plaintiff must show that she was treated differently from others who are "similarly situated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Aponte-Torres v. University of Puerto Rico, 445 F.3d 50, 57 (1st Cir. 2006).  Upon consideration of Plaintiffs' complaint, the Court determines that the allegations suggest that Plaintiff Rodríguez claims to have been treated differently because of her age and sex.

The Court will not waste time on this issue.  As the Court has already decided above, the uncontested facts show that the actions taken against Plaintiff were not taken because of either her age or sex.  As such, Plaintiff cannot succeed on her Equal Protection Claim because, even if the Court assumes that Plaintiff was treated differently than others who are similarly situated, said treatment was not "based on impermissible considerations."  Aponte-Torres, 445 F.3d at 57.

### 2.   Due Process

To succeed on a procedural due process claim, Plaintiff must show that she was deprived of a life, liberty, or property interest without the requisite minimum measure of procedural protection warranted under the circumstances.  See Romero-Barceló v.

CIVIL NO. 09-1151 (JP)          -42-

Hernández-Agosto, 75 F.3d 23, 32 (1st Cir. 1996).  Property interests are not created by the Constitution, but instead are created by independent sources such as state law.  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).  To have a property interest a person must have more than an abstract need or desire for it and must have more than a unilateral expectation of it.  Id.

Upon examination of the complaint, the Court is not clear on what property interests are claimed by Plaintiffs.  However, in response to interrogatories, Plaintiff Rodríguez stated that the property interests that were affected are salary and benefits, increase in pay, increase in duties and responsibilities, and increase in job growth.  From this, the Court concludes that Plaintiff Rodríguez is alleging that she has a property right in her salary and benefits, and a property right in being promoted.[8]

The uncontested facts show that Plaintiff Rodríguez's salary and benefits remained the same when she was transferred to the Municipal Financing Department.  UMF 38.  As such, Plaintiff's property interest in her salary and benefits were not affected.

Also, the Court notes that "[o]rdinarily there is no 'property' right to a promotion[.]"  Ramos-Rodríguez v. Puerto Rico, 325 F. Supp. 2d 6, 13 (D.P.R. 2004).  In the instant case, the Court

---

8.   The Court reaches the conclusion that Plaintiff is claiming a property right in being promoted from her statements that she has a property right in an increase in pay, duties and job growth, all of which would presumably follow from a promotion.

CIVIL NO. 09-1151 (JP)          -43-

determines that Plaintiff Rodríguez had nothing more than a unilateral expectation of a promotion because nothing in the record suggests that GDB was required to promote Plaintiff Rodríguez. Id. The decision-maker had the discretion to consider subjective elements in selecting the candidate. Id. The undisputed facts support this conclusion because the decision-makers took into account the applicants' previous experience when deciding on which candidate to select. UMF 70-77 and 81-88. Thus, the Court concludes that Plaintiff Rodríguez has no property interest in a promotion. Accordingly, the Court concludes that summary judgment is appropriate on Plaintiffs' due process claim.

### D.   **Puerto Rico Law Claims**

Plaintiffs also bring claims arising under Puerto Rico law, specifically Puerto Rico Law 100 ("Law 100") of June 30, 1959, as amended, P.R. Laws Ann. tit. 29, § 146 *et seq.*; Puerto Rico Law 69 of July 6, 1985, P.R. Laws. Ann. tit. 29, § 1321 *et seq.*; Article 1802 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31, § 5141; and Article II, Sections 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico.

Dismissal of pending state law claims is proper because an independent jurisdictional basis is lacking. Exercising jurisdiction over pendent state law claims once the federal law claims are no longer present in the lawsuit is discretionary. See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991) (holding that "[t]he power

CIVIL NO. 09-1151 (JP)          -44-

of a federal court to hear and to determine state-law claims in nondiversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit . . . [and] the district court has considerable authority whether or not to exercise this power, in light of such considerations as judicial economy, convenience, fairness to litigants, and comity[]").

In the instant case, the Court chooses not to hear the state law claims brought by Plaintiffs.  Therefore, the Court will dismiss the state law claims without prejudice.

IV.  **CONCLUSION**

In conclusion, the Court **GRANTS** Defendants' motions for summary judgment.  The Court will enter a separate judgment dismissing the complaint.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of February, 2010.


                                  s/Jaime Pieras, Jr.
                                  JAIME PIERAS, JR.
                              U.S. SENIOR DISTRICT JUDGE